IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT

OF PENNSYLVANIA

* * * * * * * *

ROBERT LEE DEFOY,            *

    Petitioner            * C.A. No.

    vs.                   * 00-110 ERIE

Superintendent JOHN M.* District Judge

MCCULLOUGH, Att.         * McLaughlin

General D. MICHAEL       *

FISHER, PENNSYLVANIA     * Magistrate

BOARD OF PROBATION AND* Judge Baxter

PAROLE,                  *

    Respondents           *

* * * * * * * *

DEPOSITION OF

FREDERICK L. CUTLER

AUGUST 18, 2006



Any reproduction of this transcript
is prohibited without authorization
by the certifying agency.

Sargent's Court Reporting Service, Inc.
(814) 536-8908

1                    DEPOSITION

2                         OF

3    FREDERICK L. CUTLER, taken on behalf

4    of the Petitioner herein, pursuant to

5    the Rules of Civil Procedure, taken

6    before me, the undersigned, Lori A.

7    Behe, a Court Reporter and Notary

8    Public in and for the Commonwealth of

9    Pennsylvania, at the Keystone

10   Building, Office of Attorney General,

11   444 East College Avenue, Suite 440,

12   State College, Pennsylvania on

13   Wednesday, August 16, 2006 beginning

14   at 12:34 p.m.

15

16

17

18

19

20

21

22

23

24

25

3

1            A P P E A R A N C E S

2

3    THOMAS  W.  PATTON,  ESQUIRE

4    Assistant  Federal  Public  Defender

5    1001  State  Street

6    Erie,  PA   16501

7        COUNSEL  FOR  PETITIONER

8

9    SCOTT  A.  BRADLEY,  ESQUIRE

10   Office  of  Attorney  General

11   564  Forbes  Avenue

12   6th  Floor,  Manor  Complex

13   Pittsburgh,  PA   15219

14       COUNSEL  FOR  RESPONDENTS

15

16

17

18

19

20

21

22

23

24

25

4

1                          I N D E X

2

3   W I T N E S S :    FREDERICK L. CUTLER

4   EXAMINATION

5        by Attorney Patton              7 - 49

6   CERTIFICATE                            5 0

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Sargent's Court Reporting Service, Inc.
(814) 536-8908

5

1                      EXHIBIT PAGE

2

3                                              PAGE

4    NUMBER    DESCRIPTION              IDENTIFIED

5    Petitioner's

6    A         Summarization Report          17

7    B         Parole Decision Making

8              Guidelines                     24

9    C         April 10, 1997 Letter,

10             Re-parole Violent

11             Offender                       27

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6

# OBJECTION PAGE

ATTORNEY                                    PAGE

Bradley                                     31

7

1                P R O C E E D I N G S

2     - - - - - - - - - - - - - - - - - - - - - - - - - - -

3     FREDERICK L. CUTLER, HAVING FIRST

4     BEEN DULY SWORN, TESTIFIED AS

5     FOLLOWS:

6     - - - - - - - - - - - - - - - - - - - - - - - - - - -

7     EXAMINATION

8     BY ATTORNEY PATTON:

9     Q.        Sir, could you tell us your

10    name, please?

11    A.        Frederick L. Cutler,

12    C-U-T-L-E-R.

13    Q.        Mr. Cutler, are you currently

14    employed?

15    A.        Yes, sir.

16    Q.        Where do you work?

17    A.        I'm employed by the

18    Pennsylvania Board of Probation and

19    Parole at the Altoona Institutional

20    Unit as a parole agent II.  I'm

21    sorry.

22    Q.        How long have you worked for

23    the Board?

24    A.        A little over 15 years, sir.

25    Q.        Has all that time been spent

8

1  as institutional parole agent?

2  A.      Correct.

3  Q.      So is it accurate to say that

4  some parole agents are field agents

5  that work outside of the

6  institutions?

7  A.      The majority are, sir.

8  Q.      But you are a parole agent

9  that's assigned to a particular

10  correctional institution and you work

11  there?

12  A.      No, sir.  I'm with the Altoona

13  Institutional Unit.  I serve as ten-

14  county prisons and the Johnstown

15  Community Correction Center out of

16  the Altoona District office, sir.

17  Q.      In any of your time with the

18  Board were you ever assigned to any

19  state correctional institutions?

20  A.      Yes, sir.  I was first

21  assigned SCI Huntington.  And then

22  transferred to SCI Houtzdale.

23  Q.      Okay.  About how long were you

24  at Houtzdale?

25  A.      Approximately 18 months,

9

1   something like ---

2   Q.      No, I understand.

3   A.      --- approximately 18 months,

4   sir.

5   Q.      Could you just give me first

6   just like kind of a general

7   description of what your duties were

8   as the institutional parole agent

9   assigned to a particular state

10  correctional institution?

11  A.      Sure.  I did orientation for

12  new inmates.  I did parole education

13  classes for people who were coming

14  within eight or nine months of their

15  minimum dates.  Submitted parole

16  plans for pre-parole investigations

17  on behalf of the inmates at the

18  institution.  Prepared summarization

19  reports for the Parole Board, both

20  minimum, review, re-parole review,

21  such items of that nature.  And I

22  also signed people out.  In other

23  words, released them to the streets.

24  Q.      Okay.  With regard to, you

25  mentioned parole plans, could you

10

1  explain what a parole plan is?

2  A.      A parole plan is properly

3  called the pre-parole investigation.

4  We take information that's available

5  from the file, so the offender, his

6  name, details of the offense, social

7  history and whatever we have

8  available to us and we submit it to

9  the field office for investigation.

10  In other words the inmate or offender

11  gets a residency offering from his

12  mother, wife, girlfriend, father,

13  whoever it might be, and we submit

14  that to the most local field office

15  for an investigation.  The agent goes

16  to the home and makes sure that it's

17  adequate and suitable for the needs

18  of the offender.  And they either

19  approve or reject that.

20  Q.      During your time as an

21  institutional parole agent, with

22  regard to the parole plan, were there

23  certain instances under which you

24  were not required to actually have to

25  send a plan out to a field office for

11

1  investigation?

2  A.      The only time that we don't

3  submit a pre-parole investigation is

4  if the person has a state detainer

5  sent.   In other words, if he's going

6  to reenter to a new number, change

7  from like say for instance GH1450 to

8  whatever the new number might be, the

9  only time we probably would not

10  submit a parole plan is if we had a

11  green sheet that said refused at that

12  time, and maybe review eight months

13  or whatever down the road, there

14  would be no point in submitting that

15  parole plan out because that's for

16  that possible release.

17  Q.      Okay.  But if a person is in

18  as a convicted parole violator who

19  has another sentence that they are

20  going to have to serve once they ---

21  A.      Correct.

22  Q.      --- get released you would

23  sometimes not necessarily send a

24  parole plan out for everybody?

25  A.      Yeah.  We're supposed to get

12

1  an address as to where he might wish

2  to live and put that on that release

3  order in case something happened to

4  the detainer sent.  So that way we

5  could call the field office, notify

6  the field office that so and so is

7  being released to his --- he's been

8  re-paroled and he would be going ---

9  he's coming.  By the way what do you

10  want us to tell him to do when he

11  gets there?  That's the only time we

12  wouldn't submit a plan.  Does that

13  make any sense?

14  Q.    Yes.

15  A.    Okay.

16  Q.    If I could Mr. Cutler, ask you

17  to not start answering the question

18  until I finish.

19  A.    I'm sorry.  I'm very sorry.

20  Q.    No, that's okay.  It's just

21  that the court reporter can't get

22  down if both of us are talking at the

23  same time.  Okay.

24  A.    I apologize.

25  Q.    That's not a problem.

13

1        ATTORNEY BRADLEY:

2              If you could just slow

3        yourself down.

4    BY ATTORNEY PATTON:

5    Q.      It's no problem with the

6    answers you're giving, just it makes

7    it easier to get everything down if

8    we're not speaking at the same time.

9    A.      I'm sorry.

10   Q.      You had mentioned that part of

11   your duties as the institutional

12   parole agent was doing summarization

13   reports?

14   A.      Correct.

15   Q.      Can you give a little

16   explanation of what summarization

17   reports are?

18   A.      Summarization reports include

19   information on the sentence, in a

20   summary form, summary format.

21   Information on the sentence, the

22   offense, the offender's current age,

23   the details of the offense, social

24   history, prior criminal record, any

25   medical problems, a summary of their

14

1    adjustment at the facility, either

2    --- not only that facility or some

3    other facility he or she might have

4    been at.  It includes information on

5    the pre-parole.

6    Q.      Okay.  Could you explain to me

7    what you would do as an institutional

8    parole agent if you got a notice that

9    a particular inmate was on the list

10   to be seen by the Parole Board for

11   consideration for parole or

12   re-parole, what duties you would have

13   to get that inmate and his file

14   prepared to be seen by the Board?

15   A.      We have to have an official

16   version, a criminal history of

17   Pennsylvania State Police rap sheet

18   criminal history, possibly a

19   pre-sentence investigation from the

20   committing county, a copy of the

21   sentence status summary sheet from

22   the Department of Corrections, we

23   would have to have, depending upon

24   the nature of the offense, a mental

25   health evaluation, if it was an

15

1    assaultive offense.   Any information

2    on a pre-parole investigation.   And a

3    Department of Corrections

4    recommendation which is called the

5    --- it's called the reclassification

6    summary, it's a DC13.

7    Q.      Do you write the summarization

8    report to kind of summarize the

9    information that's contained in all

10   those various documents?

11   A.      Correct.

12   Q.      So that that summarization

13   report is then submitted to either

14   the hearing examiner or the Board

15   members that do the interview?

16   A.      Correct.

17   Q.      Do you also fill out the

18   parole decision making guidelines up

19   through the scoring process on the

20   guidelines?

21   A.      Correct.   Those guidelines

22   have recently changed a few years

23   ago.   I don't recall the exact date

24   that they changed the format, so I'm

25   not --- but yes, I do fill the

16

1    guidelines out.

2    Q.        Okay.   And as I understand you

3    fill the guidelines out to the point

4    where you get the numerical score as

5    to whether or not the guidelines

6    either recommend or do not recommend

7    release?

8    A.        Correct.

9    Q.        As part of the summarization

10   report do you as the institutional

11   parole agent make a recommendation as

12   to whether or not you believe the

13   inmate should be paroled or

14   re-paroled or not?

15   A.        Thirteen (13) years ago --- 13

16   to 14 years ago we did make a

17   recommendation, 12 to 13 years ago.

18   And then the Board went to a --- they

19   want us to make alternatives, if

20   paroled he should do this, or she

21   should do this, if not paroled we

22   should have this.   And then sometime

23   after that we went to just giving

24   them the report, making no

25   recommendation at all, sir.

17

1           (Petitioner's Exhibit A

2           marked for

3           identification.)

4   BY ATTORNEY PATTON:

5   Q.      I want to show you

6   Petitioner's Exhibit A, and just have

7   you take a look at that.  Okay.

8   A.      Sure.  Do I have time to read

9   the whole thing?

10  Q.      Sure.

11  A.      Thank you.

12  WITNESS REVIEWS DOCUMENT

13  A.      Yes.

14  BY ATTORNEY PATTON:

15  Q.      You've had a chance to review

16  it?

17  A.      Yes, sir.

18  Q.      Okay.  Does that appear to be

19  a copy of a summarization report that

20  you prepared for Mr. Robert DeFoy in

21  June of 1997?

22  A.      That's what this reflects,

23  yes, sir.

24  Q.      Okay.  If you look at the

25  second page of the form, does it

18

1    appear that at the time this

2    summarization report was done the

3    Board was still using the format

4    where you as the institutional parole

5    agent made a recommendation as to

6    whether or not you believed the

7    inmate in this case should be

8    re-paroled?

9    A.        Correct.  It appears that's

10   the format that we were using at that

11   time, sir.

12   Q.        And so that has changed in the

13   intervening years, - - -

14   A.        Yes.

15   Q.        - - - the format, but it appears

16   that - - -

17   A.        Yes.

18   Q.        - - - at this point in time you

19   still were making a recommendation?

20   A.        Correct.

21   Q.        All right.  Now, does the

22   summarization report indicate that

23   the superintendent or warden

24   recommended re-parole?

25   A.        I'm sorry, I'm not - - - can I

19

1    just take a second.

2    Q.    Okay.

3    A.    I just need a second here.

4    Yes, sir, it does.

5    Q.    And also on the first page

6    does it indicate that ---

7    A.    Yes, sir, it does.

8    Q.    Okay.  Now the report

9    indicates that there was a

10   psychological --- that a

11   psychological evaluation had been

12   conducted; correct?

13   A.    That's what this reports, yes,

14   sir.

15   Q.    Okay.  And is it accurate that

16   --- well, let me back up and ask you

17   generally speaking, if an evaluation

18   had been done would you have actually

19   received a copy of the evaluation?

20   A.    Yes, we should have received

21   an actual written copy of the

22   evaluation.

23   Q.    Okay.  And it appears that

24   that evaluation would have --- or

25   should have been attached to the

20

1    summarization report?

2    A.      It would have been included in

3    the packet that was given to the

4    Parole Board.

5    Q.      Okay.  Is it accurate to say

6    that your summarization report states

7    that the evaluator noted that Mr.

8    DeFoy due to Mr. DeFoy's denial of

9    his sex offense and lack of

10   treatment, that Mr. DeFoy is not

11   appropriate for parole at this time;

12   is that accurate?

13   A.      That appears to be accurate,

14   yes, sir.

15   Q.      Okay.  On the second page

16   under the heading parole

17   guidelines ---

18   A.      Correct.

19   Q.      --- it states that he's viewed

20   as an acceptable parole candidate

21   under the guidelines; is that

22   correct?

23   A.      That's correct.

24   Q.      Would that reflect --- would

25   it be accurate to say that that

21

1    reflects the fact that you had scored

2    Mr. DeFoy on the version of the

3    sentence --- of the parole decision

4    making guidelines, that were being

5    used at that time?

6    A.        That's correct.

7    Q.        And under the forms being used

8    at that time he received a score that

9    recommended him for release?

10   A.        It was a score, a guideline

11   score for release.

12   Q.        But yet is it also accurate to

13   say this, the form, indicates that

14   your recommendation was for the box

15   next to refused is checked; is that

16   correct?

17   A.        That's correct.

18   Q.        So did that indicate your

19   recommendation to the Board that Mr.

20   DeFoy not be paroled?

21   A.        Not be re-paroled.

22   Q.        Or excuse me, re-paroled?

23   A.        Correct, sir.

24   Q.        Okay.  Based upon what's in

25   the report given the fact that the

22

1   warden recommended re-parole and that

2   the guidelines resulted in a score

3   that recommended re-parole, can you

4   tell from the report what it was that

5   led you to not recommend re-parole?

6   A.      Just to correct that one

7   statement you made that warden

8   recommendation, it was actually a

9   superintendent recommendation at the

10  institution.

11  Q.      Okay.

12  A.      I'm sorry.  Just give me one

13  moment, please?  Just briefly.

14  Q.      Sure.

15  A.      I don't have a copy of the

16  actual Board action, the entire Board

17  action in front of me.  But generally

18  speaking the Board action when they

19  set a re-parole, a re-commit and

20  re-parole, they generally have a

21  requirement which states subject to

22  no misconducts and we would --- he

23  would have been then listed for

24  re-interview due to those

25  misconducts.

23

Q.      What would --- if I could on
that, just to provide some background
for you.

A.      Yes, sir.

Q.      Mr. Bradley can correct me if
I'm wrong but Mr. DeFoy's green sheet
said that he has an amount of back
--- revoking him and committing him
as a convicted parole violator,
ordered him re-paroled after 40
months of back time, subject to no
misconducts and participating in sex
offender treatment program.  A Board
member issued a --- I don't know the
exact term for it, the release order
setting Mr. DeFoy for release at the
end of the 40 months, but during that
time he received a misconduct and so
that order was rescinded and he was
ordered to be listed on the next
available docket.

A.      Okay.

Q.      Which the next available
docket was June of 1997.

A.      Okay.

24

1  Q.      So that is the history of it.

2  A.      I think to answer your

3  question based upon the misconduct,

4  based upon the fact that the Board

5  action required participation in sex

6  offender treatment, that is why I

7  made a recommendation of refuse.

8  Q.      Okay.  In the parole decision

9  making guidelines, ---.

10              ATTORNEY PATTON:

11              I don't have a copy of

12         this.  I want to mark it, show

13         it to him, and then if we

14         could copy it afterwards.  I'm

15         going to mark this as

16         Petitioner's Exhibit B.  It's

17         stapled with some other

18         documents but you just --- it

19         would be seven pages in

20         length.

21                 (Petitioner's Exhibit B

22                 marked for

23                 identification.)

24  A.      Correct.

25  BY ATTORNEY PATTON:

25

1  Q.        If you want to take a look at

2  those.

3                  ATTORNEY BRADLEY:

4                  Off the record.

5  OFF RECORD DISCUSSION

6  A.        Yes.

7  BY ATTORNEY PATTON:

8  Q.        On the second page of the

9  parole decision making guidelines

10 form, there are listed reasons for

11 parole refusal; is that correct?

12 A.        Correct.

13 Q.        And then there are a number of

14 items underneath that heading.  The

15 first item listed there has to do

16 with whether or not an inmate has

17 received misconducts; is that

18 correct?

19 A.        Correct.

20 Q.        And so you can get a point or

21 multiple points and in this --- well,

22 you can get points for having

23 misconducts; is that correct?

24 A.        Correct.

25 Q.        And in this context, getting

26

1   points is a factor against getting

2   parole; would that be accurate to

3   say?

4   A.       Correct.

5   Q.       And so misconducts are

6   something that are factored into the

7   parole decision making guideline

8   score; is that correct?

9   A.       Correct.

10  Q.       And although in Mr. DeFoy's

11  case because he only had one

12  misconduct, he did not actually

13  receive any points under the parole

14  decision making guideline forms for

15  having misconducts; is that accurate?

16  A.       That is correct.

17  Q.       Okay.  Because to get points

18  on the parole decision making

19  guideline forms there has to be

20  multiple misconducts?

21  A.       Correct.

22  Q.       Thank you.  With regard to a

23  requirement that --- well, let's

24  stick with misconducts.  Okay.

25                   (Petitioner's Exhibit C

27

1                    marked for

2                    identification.)

3    BY ATTORNEY PATTON:

4    Q.       Let me show you Petitioner's

5    Exhibit C.

6    WITNESS REVIEWS DOCUMENT

7    A.       Yes.

8    BY ATTORNEY PATTON:

9    Q.       Does Petitioner's Exhibit C,

10   does it appear to be a --- for lack

11   of a better description, a memo from

12   yourself to the Parole Board?

13   A.       Correct.

14   Q.       And does the memo indicate

15   that --- the memo is regarding Mr.

16   DeFoy; correct?

17   A.       Correct.

18   Q.       And the memo indicates that

19   Mr. DeFoy had been recommitted as a

20   CPV, which is a convicted parole

21   violator; correct?

22   A.       Correct.

23   Q.       And that he was ordered to

24   serve 40 months of back time;

25   correct?

28

1   A.        Correct.

2   Q.        And that the Board required no

3   misconducts during the service of

4   back time and the letter documents

5   that Mr. DeFoy did incur a class one

6   misconduct on November 6th of 1996

7   for refusing to obey an order?

8   A.        Correct.

9   Q.        Okay.  The memo also goes on

10  to state that it's your understanding

11  from the SCI Houtzdale record's

12  office that Mr. DeFoy may be granted

13  a new trial on his detainer sentence;

14  is that correct?

15  A.        Yes, sir.

16  Q.        The detainer sentence would be

17  the sentence he would have rolled

18  over to after --- if he was

19  re-paroled; correct?

20  A.        Correct.  We call it re-entry.

21  Yes, sir.

22  Q.        All right.  And also the memo

23  states that you --- that the District

24  Attorney's office had called the

25  records office to set a bail hearing;

29

1  correct?

2  A.      If I wrote that down that

3  would have been my understanding,

4  yes, sir.

5  Q.      And your signature appears on

6  this memo; correct?

7  A.      Yes, sir.

8  Q.      And in the final paragraph of

9  the letter it states that in view of

10  the serious nature of his current

11  offense the serious detainer

12  sentence, IDSI, statutory rape, CMM,

13  the misconducts and the fact that he

14  may well be on the street shortly,

15  the Board may wish to suspend

16  re-parole and list for re-interview;

17  is that correct?

18  A.      That was my suggestion, yes,

19  sir.

20  Q.      Okay. And on the margin does

21  it have in there handwritten with

22  date of 4/18/97, to modify the

23  Board's action of November 23rd, 1993

24  by temporarily rescinding the

25  re-parole portion and list for

30

1   re-interview due to misconducts?

2   A.     I see that entry, yes.

3   Q.     Okay.  And would it be fair to

4   say then that had Mr. DeFoy been

5   listed to actually be re-paroled,

6   that that re-parole was rescinded due

7   to his receiving the misconduct, that

8   that would be in response to him

9   obtaining a misconduct; right,

10  engaging in a misconduct?

11  A.     I can't speak for why the

12  Board decided to --- what it decided

13  to do.  I can't answer that question,

14  sir.

15  Q.     Okay.  But your recommendation

16  to the Board was to rescind the

17  re-parole due to the fact that he had

18  misconducts?

19  A.     I asked them, I said the Board

20  may wish to suspend re-parole and

21  list for re-interview.

22  Q.     Okay.  And if you'll take my

23  word for it and Mr. Bradley can

24  correct me if I'm wrong, the Board

25  followed your recommendation and did

31

1   just that, suspended the re-parole

2   and was ordered --- ordered Mr. DeFoy

3   to be listed for the next --- for

4   re-interview?

5   A.      Apparently so, yes, sir.

6   Q.      All right.  So if we assume

7   that that is in fact what happened,

8   is it fair to say then that due to

9   that misconduct Mr. DeFoy had to

10  spend some additional time

11  incarcerated on that parole violation

12  sentence?

13                  ATTORNEY BRADLEY:

14          I'm going to object to

15      the form of the question, but

16      if you understand what he's

17      asking.

18  A.      I'm not sure how much

19  additional time he may have done.  I

20  don't know.

21  BY ATTORNEY PATTON:

22  Q.      Sure.  Okay.  But he --- if he

23  had been ordered re-paroled, and that

24  re-parole order was rescinded, and he

25  was then ordered to get listed for

32

1    re-interview, he was going to have to

2    spend some additional time in custody

3    based on his misconduct?

4    A.      Based upon the Board action

5    which if I recall correctly from

6    these reports was that he had no

7    misconducts and participated in sex

8    offender treatment.  Based upon those

9    two items the best I can --- what I'm

10   surmising from these reports, that's

11   probably why the Board did what it

12   did, and he spent additional time.

13   Q.      Okay.

14   A.      Okay, sir?

15   Q.      Sure.  In the letter that ---

16   this letter that is Petitioner's

17   Exhibit C, is it accurate to state

18   that no where in there do you suggest

19   to the Board that Mr. DeFoy should

20   not be re-paroled due to a failure to

21   participate in sex offender

22   treatment?

23   A.      No.  It's not in there.

24   Q.      So it is fair to say that in

25   Petitioner's Exhibit C you did not

33

1    present to the Board as a reason for

2    rescinding the re-parole, the fact

3    that Mr. DeFoy had not completed sex

4    offender treatment?

5    A.        That should be correct, and

6    when we have a case which has a

7    recommit and re-parole, we generally

8    would follow through with that,

9    subject to the person not having

10   misconducts which would be obvious

11   because we always got copies of the

12   misconducts in the institutional

13   parole office on every inmate that

14   came, no matter who was on parole or

15   what.  One of the things that they

16   require the institutional staff is

17   that prior to any re-parole of any

18   type of release, is the individual,

19   prior to placing that person on

20   re-parole or parole, is to make sure

21   that that person has complied with

22   all stipulations of the Parole Board.

23   I'll give you an example.

24        Sometimes they'll parole

25   somebody upon completion of the

34

1    therapeutic community which is they

2    call the TC unit, which is

3    approximately 12 to 14 months. And

4    if the person is in the middle of

5    that program or towards the end of

6    it, the Board will want to encourage

7    the completion by paroling him upon

8    completion of the treatment, the TC

9    unit. So it's institutional staff's

10   position, our job to make sure prior

11   to re-paroling or paroling

12   individuals he did --- he or she did,

13   in fact, complete that. At this

14   particular time that --- I'm just

15   surmising or guessing that that would

16   not have been an issue that was

17   brought to my attention at that point

18   in time, that he was not

19   participating in sex offender

20   treatment.

21        Getting a report from the

22   Department of Corrections later

23   telling me that he was not

24   participating, made --- was

25   additional information for the Board

35

1    to be prepared at that time.  Okay.

2    Q.      In the example you were giving

3    about if a person has a re-parole

4    order say upon completion of their

5    therapeutic community, you indicated

6    it would be institutional staff's

7    responsibility to make sure that the

8    person had actually done the

9    therapeutic community before he was

10   released; is that correct?

11   A.      To get a copy of that

12   certificate, just to be in compliance

13   with the Board's directives.

14   Q.      In that instance when you were

15   talking about institutional staff,

16   are you talking about the

17   institutional parole agent or someone

18   from the Department of Corrections?

19   A.      One would hope that the

20   counselor would automatically forward

21   over a certificate of completion for

22   the TC unit.  But it's our

23   responsibility because we're putting

24   our name on the release order, to

25   make sure that we have that

36

1    information prior to any parole or

2    re-parole.

3    Q.      If Mr. DeFoy's green sheet had

4    ordered that he be released on March

5    25th of 1997, subject to completion

6    --- subject to no misconducts and

7    completion of sex offender treatment

8    program, what are --- do you know why

9    as of the date of this memo, April

10   10th, 1997, Mr. DeFoy had not rolled

11   over to his new number?

12   A.      Not to my knowledge.  I'm only

13   surmising that he may have been a

14   recent transfer to SCI Houtzdale.

15   Q.      He had been there for quite

16   some time, actually.

17   A.      Had he been?

18   Q.      Yes.

19   A.      Okay.

20   Q.      Let me ask you this.  What

21   systems are in place to document the

22   fact that if somebody has been

23   ordered re-paroled, that that date

24   gets somehow, you know, highlighted

25   so that when the inmate reaches that

37

1    date they are released?

2    A.       We used to use an old five by

3    seven card catalog for parole and

4    re-parole cases.  In other words they

5    would upon a certain date, we would

6    pull those prior to that time and get

7    a urinalysis, and parole or re-parole

8    an individual.  I cannot account for

9    why this did not happen.  If that's

10   the question you're asking me.

11   Q.       Okay.  Yeah.  Is it fair to

12   say you don't have any personal

13   recollection as to in this particular

14   case why he may not have been

15   released?

16   A.       I could guess.  We were very

17   shorthanded at the institution,

18   processing anywhere from 80 to 90

19   interviews per month at that ---

20   about that time.  Since that time

21   they now have a full-time supervisor

22   there, three or four full-time

23   agents, and I think three clerks.  At

24   that time there was a visiting

25   supervisor, two agents and an

38

1    institutional clerk.  I cannot --- I

2    don't know how --- I can't answer

3    your question as to why he didn't

4    re-parole on that date.  No, sir.

5    Q.    Okay.  Is it accurate to say

6    --- let me get the green sheet for a

7    second, okay.  Bear with me for one

8    moment.  Okay.

9    A.    I'm not going anywhere.

10   Q.    Let me ask you this.  If you

11   will assume for me that the Board

12   issued a green sheet for Mr. DeFoy

13   stating that he should be re-paroled

14   as of March 25th of 1997, subject to

15   no misconducts and subject to

16   participating in a sex offender

17   treatment program, should he ---

18   should that date have been

19   highlighted however you did it, or

20   the other agent in the institution

21   did it, so that when that date rolled

22   around you would, at a minimum check,

23   to see had he complied with the

24   requirements put on him for the Board

25   so that he could be considered for

39

1  release?

2  A.      I cannot go back and answer

3  that --- to honestly answer that

4  question I can't give you an answer

5  as to why that wasn't done.  I do

6  know that the re-parole date was 3/25

7  of '97, and this memo was dated 4/10

8  of '97.  I can't answer that

9  question.  I don't recollect why that

10  didn't happen.

11  Q.      Petitioner's Exhibit C,

12  actually in the first paragraph, you

13  state that the Board had ordered

14  re-parole on 3/25 of '97; correct?

15  A.      Correct.

16  Q.      Okay.  Is there any way to

17  your knowledge that you could or any

18  documents that you could look at that

19  could shed light on why Mr. DeFoy was

20  not released or re-paroled on March

21  27th, 1997?

22  A.      I cannot answer that question.

23  I can't even recall what cases were

24  assigned to me as by number.  I don't

25  remember what numbers I had.  I was

40

1   the senior lead agent and it may have

2   fallen upon me to do these memos back

3   to the Board.  And it may be that if

4   this was assigned to someone else

5   then it --- that's why it came to me

6   at that time.  But I can't answer

7   that.  I cannot answer that question.

8   Q.    Is it accurate to say that if

9   the March 25th, 1997 date came

10  around, and as of that date the last

11  Board directive was re-parole on

12  3/25/97, and there hadn't been any

13  other Board action, is it accurate to

14  say that Mr. DeFoy then should have

15  rolled over to his new sentence on

16  March 25th of 1997?

17  A.    I cannot recall why that

18  action did not take place.  I just

19  cannot recall.

20              ATTORNEY BRADLEY:

21              I think he's asking you

22        a different question.

23  A.    I'm sorry.  Could you say it

24  differently?  I'm sorry.

25  BY ATTORNEY PATTON:

41

1  Q.      Sure.  No problem.  If the

2  last Board action in Mr. DeFoy's case

3  was correcting the re-parole date to

4  set the re-parole date at March 25th

5  of 1997, and there was no other Board

6  action, then if the March 25th, 1997

7  date came around, should --- is it

8  accurate to say that Mr. DeFoy should

9  have been re-paroled in his case and

10  gone over to his new sentence because

11  he had a detainer sentence?

12  A.      That would be one way of

13  looking at it.  I don't know when our

14  office was provided with this copy of

15  this 11/6/96 misconduct.  Whether it

16  came late to our attention or not.

17  And it's possible that we were not

18  apprised of that misconduct

19  initially.  And to me the fact that

20  he was past the re-parole date,

21  didn't matter if he had misconducts.

22  My only guess.

23  Q.      Do you have the authority as

24  the institutional parole agent to not

25  release someone on their re-parole

42

1    date set by the Board because you

2    feel they have not complied with the

3    conditions placed on the Board, but

4    there is no Board action changing the

5    re-parole date?

6    A.       That's a very good question.

7    At some point I was concerned enough

8    to send a memo into the parole board

9    apprising --- advising them of the

10   situation.  And that's the way we

11   handled it.

12   Q.       As a parole agent, do you have

13   the authority to alter or change

14   Board actions?

15   A.       No, sir, I do not.

16   Q.       I'd like to talk some about

17   the sex offender treatment program

18   and the requirement that someone

19   participate in the sex offender

20   treatment program.  Okay?

21   A.       Certainly.

22   Q.       In your experience, 15 years

23   working for the Board, if the Board

24   has told an inmate that the Board

25   wants that inmate to participate in

43

1  sex offender treatment, and if the

2  inmate refuses to do so, will the

3  inmate be paroled or re-paroled?

4  A.     Just to correct the statement

5  as correct as possible, in a minimum

6  case we don't --- the Board doesn't

7  tell anybody anything. They look to

8  see what kind of reports the

9  Department of Corrections comes up

10 with. If the individual is not

11 participating and the Board sees

12 that, and they refuse and set a

13 review date, then they'll add their

14 weight to the fact that the person

15 should participate in sex offender

16 treatment, or in a re-parole review

17 case sometimes the Board will make

18 that a condition. But I can't think

19 of cases where people were paroled

20 without sex offender treatment. Not

21 to my knowledge, no, sir.

22 Q.     Okay. Would it be fair to say

23 that within the institution both be

24 it corrections --- the department

25 staff, institutional parole staff,

44

1    and the inmates, it is understood

2    that if you have not completed sex

3    offender treatment program, that has

4    been recommended by the Board, that

5    the inmate just is not going to be

6    paroled or re-paroled?

7    A.      That decision is made by the

8    Board in Harrisburg.  I know that all

9    crimes of violence are very carefully

10   scrutinized by the Parole Board.  And

11   if for instance if a person is in for

12   assaultive behavior, perhaps robbery

13   or beating someone up and refused to

14   participate in anger management or

15   those types of programs, the

16   likelihood is that that person is

17   probably not going to be paroled.

18   And with respect to sex offender

19   treatment, again, that decision is

20   made by Harrisburg, but I know it's a

21   case that they look at very

22   carefully.

23   Q.      It's accurate to say that you

24   cannot recall any case in which an

25   inmate who has not --- who has been

45

1   told that they need to participate in

2   sex offender treatment program but

3   who has not has actually been

4   paroled?

5   A.      I can't recall of any cases

6   but I have seen many many cases each

7   year.  I couldn't even characterize

8   how many cases I see in a year.

9   Q.      Would it be fair to say that

10  if an inmate actually did get paroled

11  that they hadn't done sex offender

12  treatment program that that would be

13  something very out of the ordinary?

14  A.      I would be surprised.

15  Q.      Is it therefore accurate to

16  say that the chances are that if you

17  ever saw that happen, there's a good

18  chance that may kind of stick out in

19  your mind because it would just be

20  something that would be very

21  different than what you would

22  normally see?

23  A.      Not many cases have stuck out

24  in my mind, I'm sorry to say that.

25  But I just --- I can't --- I can't

46

1   see where an inmate would be paroled

2   without some treatment of whatever

3   type it might be.   Whether it's drug

4   and alcohol or anger management,

5   batterers intervention, or sex

6   offender treatment, it's hard --- I

7   just don't see those kinds of people

8   who don't participate in treatment

9   --- I don't see those people as being

10  released by the Board.

11  Q.      Okay.  When somebody comes

12  back in as a convicted parole

13  violator, do you know how their new

14  maximum dates get calculated?

15  A.      I don't do those computations

16  but I have an understanding as to how

17  they do those.

18  Q.      Okay.  What's your

19  understanding?

20  A.      It depends upon whether they

21  posted the bail on the new offense or

22  not as to how they credit to back

23  time.  And after they return as a

24  convicted parole violator, and they

25  have the state sentence, once they

47

1    re-enter that state sentence, the

2    Department of Corrections takes a

3    look at credit issues as well.    And

4    sets a min and max date for the new

5    --- if there's a new case to come to.

6    Q.      And an institutional parole

7    agent, are you involved at all in

8    actually calculating the dates?

9    A.      No, sir, I'm not.    No, sir.

10    Q.      Pardon me just a minute, I

11    just want to make sure I covered

12    everything.

13          Do you have any experience

14    with the Board rescinding parole that

15    has already been granted?

16    A.      You mean like a rescission

17    hearing?

18    Q.      I'm sorry.    Yeah, well, for

19    example, the Board enters a green

20    sheet saying the re-parole order

21    dated whatever is rescinded, the

22    parole portion is rescinded.

23    A.      Okay.

24    Q.      Well, that's a bad way to ask

25    it.

48

1    Does the Board have, under

2    your understanding, and in your

3    experience, does the Board have the

4    power after they have actually

5    ordered someone released on parole

6    and someone has actually been

7    released on parole, to then say I'm

8    going to rescind that order, not

9    based on any new violation you have

10   committed since your release, but

11   because we decided now that we

12   shouldn't have paroled you in the

13   first place?

14   A.    The Board has the authority to

15   conduct a rescission hearing on ---

16   on the actual release order, every

17   release order, parole --- and I can't

18   recall the exact wording of it,

19   subject to no misconducts and any

20   previously undiscovered problems or

21   crimes come up, they --- in other

22   words, if he didn't commit any new

23   violation or get a new arrest but

24   they found out that, you know,

25   sometime ago this individual was

49

1    involved in an --- you know, an armed

2    robbery and the police want him or

3    her, they can do a rescission hearing

4    and bring him back into custody.

5    It's called a rescission --- I've

6    never participated in one of those

7    and I don't think there is that many

8    that are held.

9    Q.      Okay.

10                   ATTORNEY PATTON:

11                   That's all my

12           questions.

13                   ATTORNEY BRADLEY:

14                   I have no questions.

15           You have the opportunity to

16           review a transcript of this if

17           you wish.  I leave that

18           decision to the witness, or

19           you can rely on the accuracy

20           of the court reporter.

21    A.      I trust her to do a good job.

22                   ATTORNEY BRADLEY:

23                   We'll waive on this one

24           too.

25       DEPOSITION CONCLUDED AT 1:23 P.M.

1  COMMONWEALTH OF PENNSYLVANIA )

2  COUNTY OF CAMBRIA              )

3

4                C E R T I F I C A T E

5

6      I, Lori A. Behe, a Notary Public in and for

7  the Commonwealth of Pennsylvania, do hereby

8  certify:

9      That the witness whose testimony appears in

10  the foregoing deposition, was duly sworn by me on

11  said date and that the transcribed deposition of

12  said witness is a true record of the testimony

13  given by said witness;

14      That the proceeding is herein recorded fully

15  and accurately;

16      That I am neither attorney nor counsel for,

17  nor related to any of the parties to the action in

18  which these depositions were taken, and further

19  that I am not a relative of any attorney or

20  counsel employed by the parties hereto, or

21  financially interested in this action.

22

23

24            Lori A. Behe, Reporter

25

NOTARIAL SEAL
LORI A. BEHE, Notary Public
Colver, Cambria County, PA
My Commission Expires July 20, 2010

· PITTSBURGH, PA

· CLEARFIELD, PA

· STATE COLLEGE, PA

· HOLLIDAYSBURG, PA

· ERIE, PA

· OIL CITY, PA

· HARRISBURG, PA

SARGENT'S
COURT REPORTING
SERVICE, INC.
210 Main Street
Johnstown, PA 15901
(814) 536-8908

· INDIANA, PA

· GREENSBURG, PA

· PHILADELPHIA, PA

· SOMERSET, PA

· WILKES-BARRE, PA

· CHARLESTON, WV

LAWYER'S NOTES

| Page | Line | |
|------|------|--|
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |
|      |      |  |

PITTSBURGH, PA
HARRISBURG, PA
GREENSBURG, PA
ERIE, PA
INDIANA, PA
HOLLIDAYSBURG, PA
STATE COLLEGE, PA



SARGENT'S
COURT REPORTING
SERVICE, INC.

210 MAIN STREET
JOHNSTOWN, PA 15901
(814) 536-8908

PHILADELPHIA, PA
WILKES-BARRE, PA
OIL CITY, PA
SOMERSET, PA
CLEARFIELD, PA
*CHARLESTON, WV*

## SUMMARIZATION REPORT

Interview Month __JUNE 1997__
Inst/Docket No. __SCI-HD #56__

Name __Robert DeFoy__   Inst and No. __SCI-Houtzdale, AK-1017__   Parole No. __1226-J__

|  | Minimum | | Review ☒ |  |
|--|--|--|--|--|
|  |  |  | (Reparole) |  |

OFFICIAL VERSION (See Attached)   PBPP 139

DC-1B    PBPP-30    PSI    Others (Indicate) ☒   None available

RESIDENT'S VERSION   DC-1B   PBPP-130   PSI   Subject Interview

PRIOR ADULT RECORD Number of:   Source __PSP Rap Sheet__

__Convictions 1__   __Confinements 1__   __Probation Revocations 0__   __Parole Revocations 1__

ADDITIONAL INFORMATION (See attached report)
Psychiatric   Psychological ☒   Medical   Misconducts ☒ 11/6/96

Source __6/16/97__    Fines, Costs, Restitution __Unlisted__
                                                        Amount

PROBLEM AREAS

| Assaultive ☒ | Sexual ☒ | Vocational | Alcohol |
|--|--|--|--|
| Psychiatric/Psychological ☒ | Drugs | Educational | Others(Indicate) ☒ |
|  |  |  | Juvenile Record |

Superintendent - Warden RECOMMENDATION

Parole    Reparole ☒    Refuse    Others (Indicate)

## ANALYSIS

Board Action recorded 11/5/93 refers to Board Action of 11/10/92 to Recommit to a SCI as a CPV to serve 40 months backtime . . Reparole 3/25/93 to State Detainer Sentence. Board Action recorded 11/23/93 modifies Board Action of 11/5/93 by correcting Reparole date to 3/25/97. Board Action recorded 4/22/97 was to modify Board Action of 11/23/93 and 11/5/93 by temporarily rescinding the Reparole portion due to misconducts and now list for reinterview on the next available docket. Subject was added to the June docket.

Currently, the subject is a 45 year old married male recommitted by the Board for a new conviction - rape of his stepdaughter. He is originally serving a 10 to 20 year sentence for armed robbery. Official Version reports he used a 45 caliber handgun in this robbery. Subject was received at SCI HD 5/8/96 from SCI Dallas. His Prescriptive Program Plan included No Misconducts, Good Housing and Work Reports, D/A Education, Stress/Anger, Sex Offender Programming. He received 1 Class I Misconduct 11/6/96 for Refusing To Obey An Order and was sanctioned with 30 days cell restriction. He Earns Above Average Housing and Work Reports (assigned to Culinary Department). He is presently assigned as Blockworker.

Psychological evaluation conducted 6/16/97 notes:
Subject denies any substance abuse history. During his interview with the evaluator, he responded with a sarcastic manner stating that coming up for parole was 'bullshit' and 'the Parole Board screws everybody". The subject was extremely angry. The evaluator noted that due to his denial of his sex offense and lack of treatment, he is not appropriate for parole at this time. The evaluator recommended he needs to participate in Sex Offender Treatment prior to any consideration for parole release.

PETITIONER'S
EXHIBIT

JUN 18 '97 16:38 FR SCI GRESSON PBPP    814 886 4588 TO 1 781036    P.06/14
JUN.18.1997    2:26PM    SCI    IZDALE PAROLE    NO.808    P.5/13

SUMMARIZATION REPORT FOR Robert DeFoy, AK-1017/1226-J    PAGE 2

## ANALYSIS CONTINUED:

On 4/9/97 the Records Office notified this writer subject may receive a new trial on this matter. On 4/11/97, this writer spoke with the subject. The subject threatened to sue this writer for him not being released. In a letter dated 5/22/97 from York County reports the subject was granted a new trial regarding his detainer sentence. Bail was granted in the amount of $20,000 which has been posted.

Subject Has Secured Institutional Support for Reparole.

## PAROLE GUIDELINES

He is viewed as an Acceptable Parole Candidate under the Guidelines.

## DETAINERS

None listed.

## PLAN

Parole Plan approved 5/19/97 by the York SO.

## PAROLE STAFF RECOMMENDATION INCLUDING SPECIAL CONDITIONS:

Parole        Reparole        Continue        Refuse ☒

_____        6/18/97
Frederick L. Cutler, Parole Agent II        Date

D 7 6
I / 5
6-13-97

# PENNSYLVANIA BOARD OF PROBATION AND PAROLE

PBPPS361 (6/90)

CLIENT NAME _Robert De Foy_    PAROLE NUMBER _1226-T_
DATE OF INTERVIEW _6/19/97_    INSTITUTION _SCI Huntingdon/AK-10_

# PAROLE DECISION MAKING GUIDELINES

_Reparole Review_

## I PAROLE PROGNOSIS ASSESSMENT

**INSTRUCTIONS:** Information on age-at-minimum-sentence, prior convictions, PPA offense code and prior probation or parole revocations should be provided in column 1. The appropriate risk classification score in column 2 should be placed in column 3 and subsequently added together in the total PPA score box. Based upon the total score number, the client may then be classified into a risk category according to the range of scores shown at the bottom of the instrument. Clients with multiple offenses should have each offense ranked in ascending score order according to the offense ranking at the bottom of the page. This process results in a risk assessment which is sensitive to potential future crime. Column 4 may be used to reassess a case if the interview suggests that the assessment information was incorrect.

| COLUMN 1<br>Variable _Review_ | COLUMN 2<br>Score Allocation for<br>Risk Assessment | COLUMN 3<br>Classification<br>Score | COLUMN 4<br>Reassessment |
|---|---|---|---|
| Age at Minimum: _30_ yr. _41_<br>Minimum Sentence Date<br>_9/29/82_ | 0 if 40 years or older<br>21 if 26-39 years<br>38 if 25 years or younger | _21  0_ | _____ |
| Prior Convictions:<br>Number: _1_ | 0 if no prior convictions<br>9 if 1 or 2 convictions<br>26 if 3 or more convictions | _9  9_ | _____ |
| PPA Offense<br>(Ranked According to Index)<br>1. _Robbing w/ Acc_<br>2. _walla Atm w/a_<br>3. _By Wooten_<br>4. _____<br>5. _____ | 0 if not elsewhere classified<br>20 if theft, fraud, burglary or robbery | _20 (20)_ | _____ |
| Probation Revocations _0_<br>Parole Revocations _1_<br>Total: | 0 if none<br>16 if 1 or more | _16 (16)_ | _____ |
| **TOTAL P.P.A. SCORE** | | _87  45_ | |

Parole Prognosis Assessment Score Category CHECK ONE: 71-100 High Risk ☐  45-70 Medium Risk ☒  0-44 Low Risk ☐
Instant Offense in descending recidivism rank order: 1) Theft/Fraud, 2) Burglary, 3) Robbery, 4) Aggravated Assault, 5) Drug Law Violation, 6) Arson & Miscellaneous, 7) Simple Assault & Kidnapping; 8) Sex Offenses, 9) Manslaughter, 10) Murder.

## II POTENTIAL ASSAULTIVENESS/DANGEROUSNESS SCREEN

Assaultiveness is a course of conduct that presents, or is calculated to present, a danger or perceived danger to any person. An assaultive instant offense is defined as any single conviction offense for the current sentence of the following type: murder, manslaughter, rape, and other assaultive sex offenses, robbery, kidnapping, aggravated or simple assault, arson against persons, weapon law violations, or homicide by vehicle.
**Official versions or facts of crime are required for all offenses in the definition above prior to a final Board action.**

1. Does the client have an assaultive instant offense based upon the definition above, or based upon the official version of the offense in the case of a plea bargain? ☒ YES    ☐ NO
   If the answer to the above question is "yes", mark a score of (1) on p. 2, III(7), and answer the following question.
   If the answer to the above question is "no", stop here.
2. Does the client have a mental health problem which requires treatment in the form of either individual or group therapy/counseling and/or psychotropic medication? (Rape and all other assaultive sex offenses require a "yes" answer). ☒ YES    ☐ NO
   If the answer to the above question is "yes", mark the client as having a very high assault potential with a score of (3) on p. 2, III(8) and stop here.
   If the answer to #2 is "no", answer the following question:
3. Did the client have any institutional problems/misconducts which were assaultive in nature within the last 12 months or the last one-half of the minimum sentence, whichever is longer? ☐ YES    ☐ NO
   If the answer to the above question is "yes", mark the client ... potential with a score of (2) on p. 2, III(9).

PETITIONER'S
EXHIBIT
15

## PAROLE CONSIDERATION FACTORS

Each unfavorable factor listed below is a possible reason for refusing parole as a matter of policy. Select the appropriate column from the PPA on p. 1. If the response to a specific unfavorable factor is in the affirmative, the appropriate score of 2 or 1 must be entered. If the response is in the negative, a 0 goes in the blank space provided. Enter the total score of unfavorable factors at the bottom of the appropriate column.

| REASONS FOR PAROLE REFUSAL | SCORE | PAROLE PROGNOSIS ASSESSMENT | | |
| --- | --- | --- | --- | --- |
| | | High Risk | Medium Risk | Low Risk |
| **Unfavorable Factors from Institutional Performance:** | | | | |
| 1) Three or more Class II misconducts, or two Class II and one Class I misconducts, during the last twelve (12) months or the last one-half of the minimum sentence, whichever is longer. | 1 | ——— | O | O |
| 2) Two or more Class I misconducts during the last twelve (12) months, or the last one-half of the minimum sentence, whichever is longer. | 1 | ——— | O | |
| 3) Open charges* for new crimes, or new convictions, while serving this prison sentence. | 2 | ——— | O | |
| 4) Removed from CSC, work release or prerelease for cause. | 2 | ——— | 2 | |
| *(prima facie case was established.) | | | | |
| **Unfavorable Factors from Prior Record:** | | | | |
| 5) Substance Abuse | 2 | ——— | O | O |
| 6) Habitual Offender | 1 | ——— | O | C |
| **Unfavorable Factors from Instant Offense:** | | | | |
| 7) Assaultive Instant Offense (from page 1, II (i) | 1 | ——— | 1 | / |
| 8) Very high assaultive behavior potential (from page 1, II (2)) | 3 | ——— | O | |
| 9) High assaultive behavior potential (from page 1, II (3)) | 2 | ——— | O | 2 |
| 10) Victim Injury | 1 | ——— | ——— | |
| 11) Client had weapon in the commission of offense. ☑Firearm ☐ Knife ☐ Other | 1 | ——— | / | |
| **TOTAL UNFAVORABLE FACTOR SCORE** | | | 4 | |
| **Parole Policy Guideline Recommends Refuse if Total Score is:** | | 5 or more | 6 or more | 7 or more |

**Guideline Policy Recommendation:**   Parole ☑        Refuse ☐

## DEFINITIONS:

a) **Open Charges** - This refers to new criminal charges being filed while on pre-release or as a result of criminal conduct at a correctional facility. If open charges are to be accepted as a basis for parole refusal, a prima facie case must have been established.

b) **Substance Abuse** - There is a record of substance abuse which lead to police arrests and/or clinical determinations.

c) **Habitual Offender** - This refers to a person who has a total of three or more prior convictions for similar types of offenses in his criminal history. For example, they may be convictions for burglary and robbery, or for drug law violations. Also, a person is included who simply appears to have developed a criminal life style based upon four or more convictions which may be dissimilar. A corollary concept refers to a person in syndicated or organized crime.

d) **Victim Injury** - The official version of the offense must indicate physical injury to the victim of the crime, however slight. In cases of sexually assaultive behavior, psychological injury to the victim is also frequently the case; therefore, in all cases of sexual assault an unfavorable factor score of 1 is to be entered.

e) **Weapon** - The official version of the offense must place the client in actual or constructive possession of a weapon. The definition of weapon contained in Board regulations states: "Anything readily capable of causing harm to **or intimidating** another, possessed under circumstances not manifestly appropriate for any lawful use that the object may have". In a crime such as "homicide by vehicle", the vehicle would not be a weapon under the above definition unless: 1) there was a DUI involved; or, 2) there was a clear intent to harm the victim by using the vehicle as a weapon. Under both exceptions, the circumstances were not manifestly appropriate for any lawful use according to our definition.

2

# IV. COUNTERVAILING FACTORS TO EXPLICIT POLICY OF PAROLE DECISION MAKING GUIDELINES

## A. Factors Countervailing a Guideline Recommendation to Refuse Parole:

**GENERAL POLICY:** Where factors of risk have been reduced by participation in available institutional programming, the quantity and quality of program participation should correspond to the level of risk involved to be a meaningful countervailance to a parole guideline recommendation to refuse. Where available prison programming could reduce the risk of parole failure, it will be prescribed by the Board as a necessary program to assure release.

                                                                                        **YES    NO**

1. Inventory of Institutional Programming
   a. Was there positive response to prescriptive or other prison program plans?   ☐   ☐

Program 1) _____   Benefit 1) _____

Program 2) _____   Benefit 2) _____

Program 3) _____   Benefit 3) _____

_____

_____

_____

                                                                                       **YES    NO**

2. Do other factors support a parole action? (For example, recommendations by the Department of Corrections, Board staff, strength of parole plan) _____   ☐   ☐

_____

_____

## B. Factors Countervailing a Guideline Recommendation to Parole:

**GENERAL POLICY:** The parole guidelines provide a uniform method for assessing parole suitability and risk. In some instances, guideline assessments may indicate medium or low risk; however, other risk factors may contravene and suggest that the likelihood of successful reintegration is low while the threat to the safety of the community is high. The factors listed represent risks outside of the parole guideline for which a parole refusal may be justified.

                                                                                      **YES    NO**

1. The client displayed psychotic or clearly dangerous behavioral characteristics during the parole interview.   ☐   ☐

2. The client had a recent psychiatric/psychological report which causes concern.   ☒   ☐

3. There were strong objections from the sentencing judge, the district attorney, or the victim of the crime.   ☐   ☐

4. The client is a habitual offender for assaultive crimes.   ☐   ☐

5. There is an unfavorable recommendation from the Department of Corrections or Board Staff.   ☒   ☐

6. There are other factors supporting a parole refusal: *refuses S.O.T.*   ☒   ☐
                                                              *negative attitude*

_____

_____

**Instructions:** The countervailing factors to a guideline recommendation to refuse parole (A) or to parole (B) are for information to the decision-makers only. Countervailing factors checked in (B) are not to be communicated in the Board action as such. The Board Member/Hearing Examiner will supply the appropriate reasons for refusal in his/her decisions in section VII of this guideline document.

## V FINAL DECISION MAKING ANALYSIS

Decision Outcome and Guideline Consistency: Use the appropriate guideline recommendation column to check off the interviewer decision.

**Instructions:** Inmates refused parole may be eligible for the Special Early Release Program. If eligible, indicate a parole action in item 2 below and check the box titled SERP. The initial and date space on this page is to be completed for a "continue" decision only. Final decisions are initialed on page 6 of this document when there is no "continue" action preceeding it. If the case has been continued, for whatever reason, the final decision can be initialed on this page with the appropriate completion of section VI or VII, whichever is appropriate to the decision.

| BOARD DECISION | Guideline Recommendation | |
|---|---|---|
| | Parole | Refuse |
| **1) Continue:** | | |
| a) to approved plan | ☐ | ☐ |
| b) pending receipt of information (Specify) CLARIFICATION OF STATUS OF 7/16/92 CONVICTION (1 DSI, CMM, STATE RAPE) | ☒ | ☐ |
| c) pending successful adjustment to C.S.C., review in _____ | ☐ | ☐ |
| d) pending disposition of criminal charges | ☐ | ☐ |
| **2) Parole to Approved Plan        ☐ SERP** | ☐ | ☐ |
| **3) Parole to in-patient program; approved home to be available** | | |
| **4) Parole to Detainers:** ☐ To Board/backtime detainer sentence only; ☐ to State Sentence; approved home to be available prior to release to the community. ☐ while confined must participate in_____ | ☐ | ☐ |
| ☐ To other detainer sentence; approved home to be available. Check one: ☐ County    ☐ Sentence    ☐ Untried Case ☐ Other State (approved home necessary if untried case) ☐ Federal    ☐ Sentence    ☐ Untried Case ☐ Violation of Probation Parole ☐ Immigration and Naturalization ☐ When released to the community, special conditions as prescribed imposed. ☐ Other: | ☐ | ☐ |
| **5) Refuse Parole** | ☒ | ☐ |

**Initial & Date**
JP COOK
6/9/97

**NOTES:** "It was just a regular stickup"

Aged 45; original sentence is 10-20 yr for robbery; ret. as CPV for rape of stepdaughter (had 6½-13yr. not. to serve) Bd. act of 11/23/93 was to reparole by 3/25/97; rec'd class I misconduct (refusing an order) and he has granted new trial on the IDSI, etc. (he has posted bond); Bd. act of 4/22/97 relisted inmate for interview; previous CCC failure (drugs); also previously returned for possessing sword & loaded .22 in his home; since CPV return has completed Stress/Anger; refused S.O.P. (says not guilty, so won't take it). If paroled, live w/wife & look for work (P.P. approval 5/15/97) inmate says he "thinks" he has posted bond — via property bond — but he's not "sure" the D.A.(?) effected the bond. Note: 8/1/97 — Rec'd attached York Co. material — and legal opinion that since DA filed _____ _____ _____ that issue has to resolved

## VI SPECIAL CONDITIONS OF PAROLE

YES    NO

☐    ☐

1. Are special conditions of parole necessary?

☐    ☐

2. Did the inmate raise objections to any special condition?

3. What is the presenting problem to adjustment, or danger to the community? _____
_____

4. **Complete if special conditions of parole are necessary:**

____ Prior to release to an in-patient program, you will be required to sign the appropriate release form for confidential information.

____ Removal or termination from the in-patient program for any reason other than successful completion is a violation of your parole.

**WHEN PAROLED OR AFTER SUCCESSFUL COMPLETION OF THE IN-PATIENT PROGRAM, YOU MUST COMPLY WITH THE FOLLOWING SPECIAL CONDITIONS OF PAROLE:**

____    ____    You must abide by all of the supervision requirements in the Special Early Release Program

____    ____    Out-patient (drug/alcohol/sex offender/mental health/other: _____) treatment [circle] is a special condition of your parole supervision until the treatment source and/or parole supervision staff determine it is no longer necessary. You will be required to sign the appropriate release form for confidential information.

____    ____    You must cooperate with TASC-SCI and follow all treatment recommendations.

____    ____    Upon your release on parole, you will be evaluated to determine your need for (drug/alcohol/mental health/other: _____) treatment [circle]. Prior to the evaluation being conducted, you will be required to sign the appropriate release form for confidential information. If the evaluation reveals that treatment is indicated, this special condition of parole will be amended to include other appropriate special conditions imposed by your parole agent.

____    ____    You must submit to (urinalysis testing/mandatory urinalysis testing) [circle]

____    ____    You must achieve negative results in screening tests ramdomly applied for the detection of the presence of controlled substances or designer drugs and you must pay for the costs of the tests. (Act 97 - _____)

____    ____    You must not consume alcohol under any conditions or for any reason

____    ____    You must not enter establishments that sell or dispense alcohol

____    ____    You must not contact or associate with persons who sell drugs, or with drug users, outside of a treatment setting.

____    ____    You must take psychotropic medication if prescribed by your doctor

____    ____    You must support your dependents

____    ____    You must not contact or associate with _____ for any reason

____    ____    You must maintain (employment/vocational training/educational training/other/ _____) [circle] as approved by parole supervision staff.

____    ____    You must engage in an active job search during any period of unemployment, and provide verification as directed by parole supervision staff.

____    ____    Other: _____

**SPECIAL INSTRUCTIONS TO PAROLE SUPERVISION STAFF**

_____
_____
_____

## VII REASON FOR PAROLE REFUSAL AND REVIEW DATE

1) Reasons for refusal:

_____ a) factors cited in guidelines section(s) _III_, _4_, _7_, ___, ___

_____ b) negative interest in parole

_____ c) your need for: (check the appropriate need)

　　　☐ counseling　　　　　　　　　☐ education
　　　☐ treatment　　　　　　　　　☐ vocational training

_____ d) failure to participate in and benefit from a treatment program for:

　　　☐ sex offenders　　　　　　　☐ mental health problems
　　　☐ substance abuse　　　　　　☐ other: _____

_____ e) unfavorable recommendation from the:

　　　☐ district attorney　　　　　　☐ warden of county prison
　　　☐ sentencing judge　　　　　　☐ Department of Corrections

_X_ f) other: _MISCONDUCT_ _____

2) Review date and conditions for release consideration:

_X_ a) review in _JUNE 1998_ for tentative _____ release
　　　　　　　　　　　Mo./Yr.　　　　　　　　　　　　　Mo./Yr.

_____ b) must participate in _P.P.P. INCLUDING S.O.T._

_____ c) you must maintain a clear conduct record and _MAINTAIN_ an institutional recommendation for parole.

_____ d) review in _____, or earlier, if recommended by the Department of Corrections because of demonstrable benefit from participation in an appropriate treatment program for:

　　　☐ sex offenders　　　　　　　☐ mental health problems
　　　☐ substance abuse　　　　　　☐ other: _____

_____ e) serve your unexpired maximum sentence ___, ___, ___

_____ f) parole to an approved plan upon condition that there are no misconducts, effective _____ and subject to the following special conditions (see page 5)

## VIII PANEL MEMBER CONCURRENCE

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Agree　Disagree

1) Interviewing Panel Member _DR Cook_ Date _8, 1, 97_
　　　　　　　　　　　_DEBORAH R Cook_　　AUGUST 1, 1997

2) Board/Panel Member _____ Date _8, 18, 97_　　☑　☐

Explain Disagreement: _____

3) Board/Panel Member _____ Date ___, ___, ___　☐　☐

Explain Disagreement: _____

Instruction: Agreement or Disagreement references position relative to the preceding response.

## IX SPECIAL CONDITIONS OF PAROLE AND THE PAROLE PLAN

*GENERAL POLICY:* The parole plan is a contract which provides the public some assurance that their community will be protected while the means to reintegrate the offender are implemented. The plan is judged therefore in context of the client's P.P.A. and unfavorable factors which suggest risk to the community. The higher risk client requires more stringent criteria when the plan is viewed as a countervailance to risk. Discretion for approval of a parole plan is a field staff prerogative unless the Board has specific cause to intervene. Where an approved plan is not available, specific approval criteria commensurate with assessed risk will be set by the Board as special conditions of parole.

### A. PAROLE PLAN CHECK LIST

|  |  | YES | NO |
|---|---|:---:|:---:|
| 1. | Does the client have a detainer sentence? | ☑ | ☐ |
|  | Type: ☐ State ☐ Board ☐ County ☐ Federal ☑ Untried Case ☐ Immigration and Naturalization |  |  |
|  | ☐ Violation of Probation or Parole ☐ Other |  |  |
| 2. | The client made some effort to prepare a parole plan. | ☑ | ☐ |
| 3. | The client submitted a completed parole plan to the IPR: Date ____/____/____ | ☐ | ☐ |
| 4. | The IPR sent the parole plan for a field investigation: Date 4/12/97 | ☑ | ☐ |
| 5. | There were field investigation responses received for: |  |  |
|  | a) Residence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☑ | ☐ |
|  | b) Employment/Education/Training . . . . . . . . . . . . . . | ☐ | ☐ |
| 6. | Was a parole plan accepted as adequate by field staff: Date 5/19/97 | ☑ | ☐ |

DATE:    April 10, 1997

SUBJECT:    Reparole Violent Offender
Robert Defoy
Institution/PBPP Numbers:  AK-1017/1226-J

TO:    The Board

FROM:    Frederick L. Cutler
Parole Agent II
SCI-Houtzdale

Board Action of 11/5/93 refers to Board Action of 11/10/92 to Recommit
to a SCI as a CPV to serve 40 months backtime.  Board Action recorded
11/23/93 corrected the Reparole date to 3/25/97.  (To State Detainer
Sentence).

The Board required No Misconducts during the service of backtime.  Mr.
Defoy incurred a Class I Misconduct 11/6/96 for Refusing To Obey AN
Order and was sanctioned with 30 days cell restriction.  He also incurred
a Class I Misconduct on 4/24/94 for Violation of Visiting Regulations.  A
photograph showing him handling his visitor's breast was confiscated.
The Misconduct was dismissed without prejudice.

It is this writers' understanding (from the SCI Houtzdale Records Office)
that the subject may be granted a new trial on his detainer sentence.
Furthermore, the District Attorney's Office has called the Records Office
to set a Bail Hearing.

In view of the serious nature of his current offense, the serious detainer
sentence (IDSI, Statutory Rape, CMM), the misconducts and the fact he
may well be on the street shortly, the Board may wish to suspend Reparole
and List for Reinterview.

Thank you!

FLC/rey

Attachment: Misconducts #864054 and #566308

Copy: File

4/18/97
Modify B.A. of
11/23/93 by
temporarily removing
the reparole portion
list for reinterview
due to misconduct

RECEIVED
APR 15 1997
PA. BOARD of Probation
& Parole

4-23-97  Advised
Bd. action.

Thomas Janucko of
Carl Gilbert

4-22-97

PETITIONER'S
EXHIBIT
C