ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT LEE DEFOY, PETITIONER :
V : CA. NO. 00-11 ERIE
: DISTRICT JUDGE McLAUGHLIN
SUPERINTENDENT JOHN M. McCULLOUGH, ATTORNEY GENERAL D. MICHAEL FISHER, PENNSYLVANIA BOARD OF PROBATION AND PAROLE, RESPONDENTS : MAGISTRATE JUDGE BAXTER

TELEPHONE DEPOSITION OF: NICHOLAS MULLER

TAKEN BY: PETITIONER

BEFORE: DONNA E. GLADWIN, RPR
NOTARY PUBLIC

DATE: NOVEMBER 9, 2006, 3:20 P.M.

PLACE: PENNSYLVANIA BOARD OF PROBATION AND PAROLE
1101 SOUTH FRONT STREET
HARRISBURG, PENNSYLVANIA

APPEARANCES:

BY: THOMAS W. PATTON, ASSISTANT FEDERAL PUBLIC DEFENDER

FOR - PETITIONER

OFFICE OF THE ATTORNEY GENERAL
BY: SCOTT A. BRADLEY, SENIOR DEPUTY ATTORNEY GENERAL

FOR - RESPONDENT

HAFN
Hughes
Albright
Foltz
Natale

WITNESS

| NAME | EXAMINATION |
|---|---|
| NICHOLAS MULLER | |
| BY MR. PATTON | 3, 44 |
| BY MR. BRADLEY | 41, 47 |

EXHIBITS

| PETITIONER'S EXHIBIT NO. | PRODUCED AND MARKED |
|---|---|
| A. GREEN SHEET DATED 12/09/92 | 7 |
| B. GREEN SHEET DATED 11/05/93 | 8 |
| C. GREEN SHEET DATED 11/23/93 | 9 |
| D. GREEN SHEET DATED 4/23/97 | 9 |
| E. PAROLE DECISION MAKING GUIDELINES FORM | 10 |
| F. SUMMARIZATION REPORT | 15 |
| G. PSYCHOLOGICAL REPORT | 26 |
| H. PAROLE DECISION MAKING GUIDELINES FORM | 29 |
| I. REVIEW SUMMARIZATION REPORT | 35 |
| K. RECLASSIFICATION SUMMARY | 32 |

STIPULATION

It is hereby stipulated by and between counsel for the respective parties that reading, signing, sealing, certification and filing are hereby waived; and that all objections except as to the form of the question are reserved to the time of trial.

DIRECT EXAMINATION

BY MR. PATTON:

Q My name is Tom Patton. I represent the Petitioner on the case we're here on.

A Um-hum.

Q The court reporter can't swear you in over the phone. So she is going to have to send you an affidavit in the mail for you to sign.

A Sure. Okay.

Q I'll give her your address off the record so it doesn't appear --

A Super.

Q -- in the actual transcript of the deposition.

A Okay.

Q All right. Mr. Muller, I'm going to be asking you some questions today. Just in general --

A Okay. This is Mr. Patton speaking, right?

Q That's correct.

A Okay. Since we're away, until I get used to your voices, you know, maybe if you could just give me a key if you switch.

Q Okay. All right.

A Okay. Thanks.

Q I'll be asking the questions to start with.

A Okay.

Q Unless you hear differently, I'll be the one asking all the questions.

A Cool.

Q When I'm done asking my questions Mr. Bradley will have a chance to ask you questions.

A Okay.

Q But we'll, of course, let you know when we're switching.

A Cool. Thank you.

Q All right. Could you tell us your name, please?

A Nicholas Muller, M-U-L-L-E-R.

Q And, Mr. Muller, are you currently employed?

A No, I'm not.

Q Okay. Where was the last place you worked?

A The Council of State Governments in Lexington, Kentucky.

Q Was there a time when you were a member of the Pennsylvania Board of Probation and Parole?

A Yes.

Q Could you give us the approximate dates of when you were a member of the Board?

A From the 1st of July, '95 to the 1st of July, 2001. 1st, 2nd, 3rd, something like that.

Q Okay. And during that time frame you were an actual Board member?

A Yes.

Q Prior to becoming a Board member had you held any other positions with the Board?

A No.

Q Okay. Could you give us a general explanation of what your duties were as a Board member?

A Conducting and participating in parole interviews and hearings and making release decisions.

Q Okay. Could you explain in general terms and then we'll move into a more specific case?

A Um-hum.

Q But for now just in general terms what steps would you go through when you would have to review a case and then make a vote as -- for release or non-release?

A Okay. There were two occasions -- there were two different ways of doing it. If I was not participating in the actual interview, I would get a file and review the file for a decision.

If I were participating in the actual interview, I would go to the institution. The institution personnel, parole personnel, would have the files ready. I'd review the file, interview the person, and make a decision.

Q Okay.

A I know that's kind of bony, but --

Q No, that's fine.

A Okay.

Q When -- when you would review the files for making your decision -- your decisions --

A Right.

Q -- were there guidelines that were used to at least make a recommendation as to whether or not an inmate should be released or not released?

A Do you mean the form?

Q Yeah, written guidelines, forms that would be filled out and scored?

A Yes, there are always -- yeah.

Q Okay.

A I can't imagine that I did one without it. But, yes, there was a form prepared pertinent to the individual.

Q And would those forms generally have been prepared by someone else and ready for your review when you would get to the institution to do an interview?

A Yes.

Q Did you receive in the mail -- you may have received actually two packets that had some paperwork in them with regard to this deposition.

A I have -- I have your Notice of Deposition with some forms.

Q Okay. Some forms in there that have exhibit stickers on them?

A Yes.

Q Okay. Do you have those in front of you?

A Yes, I do.

(Green sheet dated 12/09/92 was produced and marked as Petitioner's Exhibit A.)

BY MR. PATTON:

Q Okay. I want to look at Petitioner's Exhibit A to start with.

A Okay.

Q And is it accurate that that appears to be a copy of what would generally be referred to as a green sheet?

A Yes.

Q For a Robert DeFoy with Institution No. AK1017?

A Yes, that's right.

Q And is it accurate that this particular green sheet revoked Mr. DeFoy's parole and recommitted him as a convicted parole violator to serve 40 months of back time?

A Recommit as a CPV. I was reading from the green

sheet. Recommit as a CPV to serve 40 months back time.

Q And does the -- that green sheet indicate that while confined Mr. DeFoy was to comply with the institution's prescriptive program requirement and have no misconducts and participate in sex offender treatment?

A Yes, sir, it does.

(Green sheet dated 11/05/93 was produced and marked as Petitioner's Exhibit B.)

BY MR. PATTON:

Q Okay. Then on Petitioner's Exhibit B.

A Um-hum.

Q Is that a copy of another green sheet in the same case?

A Yes.

Q Okay.

A Dated 11/05/93.

Q Yes.

A Okay.

Q And does that green sheet appear to -- it refers to the Board's earlier action of recommitting as a convicted parole violator to serve 40 months?

A Yes, sir.

Q And then set a reparole date of March 25th, 1993 to a state detainer sentence?

A Yes, sir.

(Green sheet dated 11/23/93 was produced and marked as Petitioner's Exhibit C.)

BY MR. PATTON:

Q Okay. And then Petitioner's Exhibit C?

A Okay. Ot it.

Q Okay. Is that --

A 11/23/93.

Q Exactly. -- a green sheet from that date?

A Yes, sir.

Q Modifying the green sheet that we have marked as Petitioner's Exhibit B by changing the reparole date from 11/5 of '93 -- or excuse me, changing the date from March 25th, '93, the reparole date, to March 25th of 1997?

A Yes, sir.

Q So basically just correcting a clerical error on the prior one?

A Yes, sir.

(Green sheet dated 4/23/97 was produced and marked as Petitioner's Exhibit D.)

BY MR. PATTON:

Q And then Petitioner's Exhibit D.

A Okay.

Q Is that a green sheet dated April 23rd, 1997 in the same case?

A Yes, sir.

Q Temporarily rescinding the reparole due to misconducts and listing Mr. DeFoy's case for reinterview on the next available docket?

A Yes, sir.

Q When the green sheet says reinterview on the next available docket, would -- would that basically be setting it for a parole hearing at whatever institution Mr. DeFoy was serving his time in?

A A parole interview, yes, sir.

(Parole Decision Making Guidelines form was produced and marked as Petitioner's Exhibit E.)

BY MR. PATTON:

Q Okay. Okay. Could you take a look at Petitioner's Exhibit E, please?

A Um-hum, okay.

Q Is that a Parole Decision Making Guidelines form?

A Yes, sir.

Q Okay. If you could go to page six of that exhibit?

A Page six, yes, sir.

Q Under section Roman Numeral VIII, panel member concurrence.

A Yes.

Q Does your signature appear there as a Board slash panel member?

A Yes, sir.

Q Okay. Would it be accurate to say that you would have participated as a panel member in the reparole review that was conducted for Mr. DeFoy on June 19th of 1997?

A Is that when it was done?

Q Yeah. I believe if you look at --

A Okay. Okay. Yes, on the front page it says June 19, 1997.

Q Correct.

A Yes.

Q Okay. Now, this Parole Decision Making Guidelines form, this is a preprinted form, and is this the standard guideline form that was in use at least at the time that you were a Board member?

A Yes, sir.

Q And this is the form that would have been filled out and in the file waiting for you when you would show up to conduct the interview?

A Yes, sir.

Q And could you explain what the purpose of the Parole Decision Making Guidelines form is?

A To provide the interviewer with information about the person and to provide a format to assist in doing the interview.

Q Does filling out the Parole Decision Making Guidelines form --

A Um-hum.

Q -- involve trying to reach the point where the -- the form would either recommend parole or recommend refusing parole or in this case reparole?

A I'm not sure it recommends. It -- it outlines the -- the numbers as they show in the guidelines. And I note on page one that it says medium risk with an X on it if that's what you mean.

Q Right. Well, if you turn to page two.

A Okay.

Q If you look -- I guess it's about three quarters of the way down the page.

A Um-hum.

Q Where it says guideline policy recommendation.

A Okay.

Q And then there's a box that says for parole and then a box that says refuse.

A Um-hum.

Q Now, on this particular case the parole box is checked, correct?

A Yes, sir, it does.

Q Okay. And so would it be accurate to say that the -- at least the first part of -- first couple pages of the Parole Decision Making Guideline form involved scoring multiple different factors to ultimately come up with

whether or not release is recommended or not recommended?

A Yes.

Q Okay. And the recommendation that results from filling out and scoring this form, would that be something that you would consider as a Board member when you were making a decision as to whether or not an individual should or should not be released?

A Yes, it's one of many issues.

Q Okay. During your time on the Board did you ever see any statistics or discuss how often the actual Board action in releasing or not releasing an inmate comported with the recommendation made by the guidelines?

A Considering I've been away for five years and I've put most of the -- most the Board history behind me, I -- I seem to recall some discussion about that, but I really can't recall specifically.

Q Okay. Now, is -- one of the factors -- if you could look at page two, please.

A Okay.

Q Under reasons for parole refusal does the first item listed there deal with whether or not the inmate had received misconducts while they were --

A Yes.

Q -- in the Department of Corrections?

A Yes, sir.

Q So either receiving misconducts or not receiving misconducts is something that the Parole Decision Guidelines kind of built into their scoring process to get to their recommendation; would that be accurate?

A Yes, sir. It fits into the form there.

Q Okay. When you would review a case and trying to make your decision of whether you would release or not release an inmate would you consider whether or not the Department of Corrections would recommend parole?

A Yes. As I said before, it's one of a number of things to be considered, yes.

Q Okay. In this case where the original green sheet revoking Mr. DeFoy's parole and committing him as a convicted parole violator indicated that he should participate in sex offender treatment program, would that be something you would consider in making a release decision as far as whether or not Mr. DeFoy had or had not completed that program?

A Yes, it would. Among -- you know, among other -- among all the different things, yes.

Q Okay. When you would get a file for review, in addition to having a Parole Decision Making Guidelines form, would you also receive what would be called a summarization report from an institutional parole agent?

A Yes, sir.

(Summarization report was produced and marked as Petitioner's Exhibit F.)

BY MR. PATTON:

Q Okay. And if you could look at Petitioner's Exhibit F.

A Okay. Just a second. Okay.

Q All right. Does that appear to be a summarization report for Robert DeFoy?

A Yes, sir.

Q And did that report give just some background information about Mr. DeFoy's case and contain a statement of what the superintendent or warden's recommendation was as far as parole or reparole?

A Yes, sir.

Q Okay. And if you look to the second page, you can see that that's dated 6/18 of '97?

A Yes.

Q So it would be fair to say that Petitioner's Exhibit F is the summarization report that went along with the Parole Decision Making Guidelines that are marked as Petitioner's Exhibit E?

A Yes, sir.

Q Okay.

A It looks like it would, yes.

Q Okay. And on the summarization report, which is

Petitioner's Exhibit F, does it indicate that the superintendent or warden had recommended reparole?

A Yes, it does.

Q Okay. So the superintendent or warden had recommended reparole for Mr. DeFoy and the decision -- the Parole Decision Making Guidelines form also recommended -- set parole, but in this case it would be reparole; is that correct?

A I believe so, yes.

Q Okay. But it would -- page six of the Parole Decision Making Guidelines form, which is Petitioner's Exhibit E, indicates that reparole would not be granted; is that correct?

A Yes, sir.

Q Okay. And one of the reasons marked for refusal for parole is the failure to participate in and benefit from a treatment program for sex offenders; is that correct?

A Yes, sir.

Q Would it be basically a normal course for -- to deny release for someone who had been instructed to participate in sex offender treatment, but the person had not actually engaged in the sex offender treatment program?

A When you say recommended, by the -- by the Parole Board or by the institution?

Q By the Board?

A By the Board. It would present a big hurdle, yes.

Q Okay. When you say it would present a big hurdle --

A Yeah. If the -- if there was a special condition to complete sex offender treatment program, and the person declines or refuses to participate in the program, it -- it makes it very difficult to look at that as a parole case, yes.

Q Okay. Would it be fair to say that under those circumstances where the Board has called for sex offender treatment program itself --

A Um-hum.

Q -- but the inmate has refused to participate in the program, that the inmate would not be released?

A In -- and, again, I can only speak with clouded memory of five years. Yes, it's -- it would be very unlikely that a person would be paroled in the scenario that you gave, if the person declined sex offender treatment.

Q Okay. Regardless of whether the parole guidelines themselves were recommending parole and regardless of whether the Department of Corrections was recommending release?

A Yes, I think that is consistent, yes.

Q Okay. Specifically with regards to Mr. DeFoy's case, in additional reasons for refusal, which is again on

page six of Petitioner's Exhibit E.

A Um-hum.

Q It has under -- A is checked next to the letter A, and then it says factors cited in guidelines section, and it has Roman Numeral III, 4 and 7.

A Yes.

Q Okay. Would it be accurate to say that those factors, namely Section III, Subsection 4, is removed from CSC work release or prerelease for cause?

A Yes.

Q And No. 7 is assault of instant offense, that those issues have been taken into consideration in the scoring of the Parole Decision Making Guidelines?

A I would assume that.

Q For example, if you look on page two.

A Um-hum.

Q Under Section 3, Numeral 4, there it says remove from CSC work release or prerelease for cause?

A Right.

Q And, in fact, Mr. DeFoy received two points on his parole prognosis assessment --

A Okay.

Q -- for that; is that correct?

A Yes.

Q And then on No. 7, for assault of instant offense,

Mr. DeFoy actually received a -- a one point for that factor; is that correct?

A Yes.

Q But even counting those points in he ended up with a total unfavorable factor score of four --

A Yes.

Q -- correct? And since he was in the medium risk category, the total unfavorable factor score of four resulted in the guidelines recommending parole; is that correct?

A Yes, that's what it says.

Q Okay. So while on page six in the reasons for refusal it lists the factors cited in Section 3, 4 -- Roman Numeral III, Nos. 4 and 7, those factors had already been taken into consideration by the Parole Decision Making Guidelines themselves?

A Yes. It all goes to the same -- the same consideration. Removal from a CSC bears on the consideration for parole for someone in a case where it's hard to -- without having the sex offender treatment and being able to discuss, you know, many of the issues on that, a person not having made a successful adjustment in CSC is not a good thing.

Q Right. Which is why he received points for it under the guidelines form?

A Right. And the form itself is used for the heartland of all cases, and each individual case is considered on its own merit. So a great number of people may be removed from a CSC and be a weight that it carries for a -- you know, for a non-violent person may not be considered the same as for a violent person. I'm just saying there are -- yes, that does comport with what you said about the form.

Q Okay. Would it be accurate to say that while that's been taken into consideration by the form, if you then have the failure to participate in sex offender treatment, that might take on some greater significance in the individual case?

A It becomes just a part of it. There are many things that are involved with the decision making. You know, planning for how to release, how to create special conditions. You know, there are just a number of issues that come into play. Basically I think the answer to the question is yes --

Q So --

A -- if I recall the question correctly. I'm sorry.

Q Well, I guess my point would be that the factors about being removed from a CSC or a halfway house for cause and the fact that the instant offense that he was on parole for was an assault offense, those factors had already been

taken into account by the guidelines, and still the guidelines had had a recommendation of reparole?

A Right.

Q And --

A I mean, once you look at the guidelines as the guidelines that are used for everyone who comes up and anyone who would not be a success at a CSC would probably get the same two points.

Q Right.

A Okay. Sure.

Q Okay. And then, of course, it has marked in reasons for refusal the failure to participate in sex offenders?

A Yes, sir.

Q And then also it has -- under other it has misconduct, correct?

A Right.

Q Okay. But misconducts are also one of the things that gets scored into the Parole Decision Making Guidelines as well, correct?

A Yes, sir.

Q And so of all the reasons that are listed for refusing release, the one that's -- that's not -- that has not already been considered by the guidelines themselves is the failure to participate in sex offender treatment?

A Yes, sir.

Q Okay. Would it be accurate to say that the failure to participate in the sex offender treatment program would be the most serious reason to deny a release?

A In a case such as this I think you're correct.

Q Because not only did he fail to participate in the sex offender treatment program, but then that failure may also impact how you look at the other factors that are listed for refusal, like the not -- being removed from a CSC for cause?

A Well, it would come into play primarily in looking at release. You know, how to construct a -- how to conduct conditions for the person going out. Should they go through a CSC? Should there be monitoring type things? There's just a number of -- a number of issues, yeah.

Q Okay. Would it be fair to say that given that -- the misconduct situation that had already been taken into account by the Parole Decision Making Guidelines form, the removal from the CSC had been taken into account by the guidelines form, the assaultive offense had already been taken into account by the guideline forms, and the forms had still recommended release, that the issue that prevented Mr. DeFoy from -- from you being able to recommend that Mr. DeFoy be released is the fact that he didn't participate in the sex offender treatment?

A Yes. That's -- that's the -- that's the big issue --

Q Okay.

A -- in this case.

Q Would it be fair to say that, you know, absent the failure to participate in the sex offender treatment program the other issues, the misconduct and the removal from the CSC and the assaultive offense, since they had already been taken into account by the Parole Decision Making Guidelines form and the form recommended reparole, that he probably would have gotten reparoled?

A I can't predict, you know -- I can't do retroactive prediction. But if he had completed the sex offender treatment program and had been willing to discuss -- you know, had taken ownership of the offense and discussed it with us and could identify his triggers and all the other things that would have been, you know, the beneficiaries of being in the SOT, he would have put himself in a much better position for a paroling decision. But I can't say yes, that is a -- yes, that would result in parole. I cannot say that.

Q Okay. But you can say, I believe as you have, that it was the failure to participate in the sex offender treatment program that led to the decision that --

A That was the primary consideration I would say.

Q Okay. For the reasons that you mentioned of making it difficult to fashion conditions of release?

A And to determine the -- the interviewee's understanding of what he did, what led to it, what he needs to do to avoid doing it in the future, what triggers to avoid, what people to avoid. I mean, there -- the sex offender treatment and the admission of having done the offense and taking ownership of it would have -- would have put the person in a much better position for a paroling decision.

I mean, there are just a lot of factors that go into the SOT. It's not simply a matter of walking in with a diploma, you know, that says I finished SOT. You know, there's a lot of stuff -- a lot of very positive things. They're group -- group meetings that are positive for the person, you know.

Q Right. And part of the sex offender treatment program is the inmate admitting that he, in fact, committed the offense; and I believe, as you said, taking ownership of that fact?

A Yes, sir.

Q Okay. And the failure to do that was problematic in this particular case?

A Yes, sir.

Q Okay. If there -- generally if a psychological

examination has been conducted on an inmate and a report has been -- has been written, would that be something that you would generally review as part of the -- part of the file and making your decision?

A Yes. We're talking kind of in a present tense. I don't know what -- what an English teacher would call it, but at that time, yes.

Q Okay.

A I mean, I'm -- does that make sense what I just said?

Q Yes. I understand what you're saying.

A Okay. Okay.

Q Understand that this was being done back in 1997.

A Yes, sir.

Q And if -- and if you look at Petitioner's Exhibit F, which is the summarization report.

A Yes, sir.

Q On the area labeled problem areas.

A Yes, sir.

Q Or I apologize. If you could look right above that where it says additional information.

A Um-hum.

Q And then in parenthesis, see attached report.

A Right.

Q It has checked off psychological?

A Yes, sir.

(Psychological report was produced and marked as Petitioner's Exhibit G.)

BY MR. PATTON:

Q If you could look at Petitioner's Exhibit G.

A G, okay.

Q All right. And does that appear to be a psychological evaluation of Mr. DeFoy based on an interview that was done on June 17th of 1997?

A Yes, sir.

Q Okay. Would it appear that this would probably be the report attached to the summarization report when the summarization report says that it's attaching a psychological report?

A Yes, sir.

Q Okay. And the last paragraph of the -- of the psychological report, that being Petitioner's Exhibit G, states that in summary, due to Mr. DeFoy's denial of his sex offense and lack of treatment, he is not appropriate for parole at this time.

Mr. DeFoy needs to participate in sex offender treatment prior to any consideration for parole release.

A Yes.

Q Okay. Would that kind of be consistent with the concerns that you have identified in failing to admit to the

offense and learn a person's triggers and how to try and avoid them?

A Coming from a psychology department, I -- I could assume that's -- I mean, I'm assuming that the sex offender treatment was made available. And, you know, if you don't participate in the program, it's hard to get involved and be able to get the incites that you just noted.

Q Okay. All right. So just to summarize the June 19th, 1997 review, can we agree that the Parole Decision Making Guidelines for that review recommended release?

A The guidelines form recommended release, yes, sir.

Q And that the Department of Corrections had recommended release?

A Yes, sir.

Q And that Mr. DeFoy was denied release based mainly on his failure to participate in the sex offender treatment program?

A Mainly, yes.

Q Okay.

A Upon review of the document that I'm seeing right now.

Q Right. If you go to page four of the document.

A Um-hum.

Q There's a notes section.

A Um-hum.

Q That has some handwritten notes in.
A Yes.
Q On the third line.
A Um-hum.
Q After the part that's in parenthesis.
A Okay.
Q It says, and has been granted new trial on the IDSI, et cetera. He has posted bond.
A Um-hum.
Q Would you have reviewed those notes when you were making your -- your release decision?
A If the -- the notes would have been taken from the interview. Or no, maybe not. Maybe some of those notes could have been from written material.
Q Yeah. I believe Deborah Cook was the hearing examiner?
A Right.
Q And she has identified this as her writing.
A Okay.
Q And I believe she had indicated some of this came from the interview, but some of it came from other sources of information.
A Okay. Yes, I would have seen that, yes.
Q Okay. And so at the time that this reparole review is being conducted Mr. DeFoy had been granted a new trial on

the sex offenses that had caused his parole to be revoked initially. That's what seems -- that's what's indicated in the notes section; is that correct?

A Yes.

Q All right. And so at the time he would have been interviewed he was looking at getting a new trial in those cases?

A Right.

Q But the reparole decision was still based mainly on the failure to participate in sex offender treatment and admit to the offense that he had a new trial granted on?

A It -- when a person has a -- a new trial coming up, you know, I can understand that they would not want to discuss the facts before the Parole Board.

Q But you still took into account the fact that he had not done a sex offender treatment program which requires him to admit his guilt in denying his parole?

A At that point the IDSI was still there. You know, if -- if he had been acquitted on the IDSI, then it would no longer be an issue.

(Parole Decision Making Guidelines form was produced and marked as Petitioner's Exhibit H.)

BY MR. PATTON:

Q Okay. Could you take a look at Petitioner's Exhibit H, please?

A H, got it.

Q Okay. Does that appear to be a Parole Decision Making Guidelines form based on a -- with a date of interview of 10/24/2000?

A Yes.

Q For Robert DeFoy?

A Yes.

Q If you would look on page eight of that form.

A Okay. Got it.

Q Is your name -- have you signed off as being the interviewer with the date of October 24th of 2000?

A Yes.

Q Okay. Now, would that indicate that you -- you were actually physically present and conducted the interview of Mr. DeFoy?

A I'm not sure if I conducted or Mrs. Cook conducted the interview, but we were both present and participated.

Q Okay.

A One person normally takes the lead in the discussions.

Q But you both would have physically been present --

A Yes, sir.

Q -- at the interview? Okay. If you could look at page two of Petitioner's Exhibit H.

A Okay.

Q Did the guidelines recommend, in this instance, reparole?

A Yes, they did.

Q Okay. But ultimately on page seven it appears that although the refuse box is not checked, there is a check mark by the statement that Mr. DeFoy was to serve his unexpired maximum sentence?

A Yes, sir.

Q Okay. So that indicated that despite the recommendations of the guidelines, both you and Ms. Cook were voting, or in her case perhaps a recommendation, that reparole be refused?

A Yes.

Q Okay. Page three of that document has some notes of interview?

A Okay. Just a second. Okay.

Q All right. Do those -- does that appear to be your handwriting or Ms. Cook's?

A I think that's mine.

Q Okay. So the first line just indicates that last BA, which I assume means Board action?

A Yes, sir.

Q Was 7/21 of '98. And then has the max of 6/7/01. Would that have been Mr. DeFoy's maximum date?

A I'm assuming it, yes, sir.

Q Okay. And then the next line down says he had a York County detainer of six and a half to 13 year sentence on IDSI, S-T-A-T rape, which I assume is statutory rape, and CMM. I think that's corruption of a minor.

A It is CMM, but it's been a while.

Q Okay. I believe he was also convicted of corruption of a minor?

A Okay. Okay.

Q Okay. Then the next line has DOC does not support?

A Um-hum.

Q While we're on that line, would you guys generally get some paperwork from the Department of Corrections communicating its position as to whether or not the person should or should not be released?

A Yes.

(Reclassification summary was produced and marked as Petitioner's Exhibit K.)

BY MR. PATTON:

Q And if you could look at Petitioner's Exhibit K.

A K, okay.

Q All right. Does that look to be what's entitled DC-13A, reclassification summary?

A Yes.

Q All right. And it has to do with Mr. DeFoy, and this is a -- correct to say this is a form generated by the

Department of Corrections?

A Yes.

Q And about a little bit passed midway on the form does it appear to be some initials written on there and the date 10/24/2000?

A Yes.

Q I believe those -- those appear to be Ms. Cook's?

A Right.

Q Okay. And 10/24/2000 was the date that you and Ms. Cook interviewed Mr. DeFoy?

A Yes. I'm assuming that's the right date.

Q Okay. And if you could look at the third page, which would be the last page of Petitioner's K.

A I'm -- okay.

Q Where it has staff?

A Okay. I got the third page.

Q Where it says staff recommendations?

A Um-hum.

Q And does it say Mr. DeFoy, age 48, is currently serving back time on an original 10 to 20 year sentence for the offense of Robbery With Accomplice. He has a six and a half to 13 year detainer sentence for the offenses of IDSI, Statutory Rape, and Corruption Morals of Minor. He refuses to participate in sex offender treatment. Based upon his refusal to participate in sex offender treatment, staff does

not support parole. He was informed of this decision and all aspects of Act 159?

A Yes.

Q And that was signed by John M. McCullough, who was the superintendent at that time of the institution, SCI Houtzdale, where Mr. DeFoy was housed?

A Yes.

Q So is it fair to say that this would have been a document that you and Ms. Cook probably would have reviewed in making your decisions?

A Yes.

Q And, in fact, on the first page of that exhibit up towards the top does it appear -- your initials appear with the date of 10/24/2000?

A Yes.

Q Okay. Would that tend to indicate to you that you did, in fact, see this document and look at it?

A Yes.

Q I'm sorry, was that a yes?

A Yes. I'm sorry.

Q Based on reviewing Petitioner's Exhibit K would it be fair to say that the Department of Corrections' reasons for not recommending release, as those were at least communicated to you and Ms. Cook, were that Mr. DeFoy had not participated in sex offender treatment program and for

that reason should not be released?

A Yeah, that's what it says.

(Review summarization report was produced and marked as Petitioner's Exhibit I.)

BY MR. PATTON:

Q Okay. If you could look at Petitioner's Exhibit I.

A Okay, I.

Q Which -- does that appear to be a review summarization report?

A Um-hum.

Q For the month -- and then it has month of interview, October, 2000?

A Yes.

Q So would it be fair to say that that was like the October docket for interviews?

A Yes.

Q All right. And does Ms. Cook's initials and the date 10/24/2000 appear handwritten on the -- on that sheet?

A Yes.

Q Okay. Would it be accurate to say that an institutional parole agent would have filled out this review summarization report?

A Yes.

Q Okay. And under the institutional adjustment heading, which was at the bottom of the first page.

A Um-hum.

Q Does it state since his last parole interview he has earned very good housing and work reports and has consistently done this since his reception at SCI Houtzdale?

A Yes.

Q However, there has been no program involvement since the last review. Subject refuses to participate in sex offender treatment. Based upon his refusal the institution does not support parole at this time. Is that accurate?

A That's what it says, yes.

Q Okay. And then on the second page of the sum -- the review summarization report.

A Um-hum.

Q At the very top it has a heading of mental health evaluation.

A Okay.

Q And does that indicate under that heading a mental health evaluation was prepared by the Department of Corrections --

A Right.

Q -- on 5/31/2000 and reports that there are no indications of significant psychopathology which will require intervention at this time?

A Um-hum.

Q And it says his self-concept appears to involve a generally stable and positive self evaluation. His -- he is somewhat distant in personal relationships and is unconcerned about opinions of others. He appears to exhibit the control over his impulses and behaviors as demonstrated by his positive adjustment. His level of risk to the community appears to be minimal, but at present, however, he refuses to complete any treatment programming for sex offenders which was the stipulation established by the Board. Subsequently he is ineligible for parole.

A Yes.

Q Okay. Okay. So based on Ms. Cook's initials being on this document, Petitioner's Exhibit I, and indeed your initials -- I guess your initials don't appear on that, do they?

A I don't see them.

Q Okay. Would you have reviewed this document though along with Mrs. Cook as part of Mr. DeFoy's file?

A Yes.

Q Okay. So would it be accurate then to say that the -- for the 2000 -- the October 24th, 2000 review the Parole Decision Making Guidelines forms recommended release; is that correct?

A I'm sure you're referring to the previous exhibit. If that's what it says, yes.

Q It's Petitioner's Exhibit H. I'm sorry.

A Okay.

Q So that form recommended release?

A Okay.

Q The Department of Corrections stated that he had very good housing and work reports?

A Um-hum.

Q And that their mental health evaluation indicated that he -- his level of risk to the community appeared to be minimal, and the sole reason the Department of Corrections was not recommending release was failure to participate in sex offender treatment?

A Basically, yes.

Q Yes. And from the notes that you have written on page three of Petitioner's Exhibit H it appears that the only negative comment written in is no program involvement, no SOT?

A Yes.

Q The rest is just some more factual notes about the facts of this particular case?

A Yes.

Q Based on -- on all those factors does it appear that the decision not to parole Mr. DeFoy -- or reparole him, excuse me, on October 24th, 2000 was the fact that he hadn't participated in the sex offender treatment program?

A It appears that way.

Q Okay. I understand that this -- we're talking about a decision that was made in October 24th of 2000?

A Um-hum.

Q But could you try and explain why, if the psychological evaluation indicated that Mr. DeFoy presented a minimal risk to the community, why he would still be denied reparole for not participating in the sex offender program?

A Because the psychological did not address any of the issues relative to the offense itself, the sex offenses that I mentioned earlier. You know, those -- those would be the issues that, you know, he -- he didn't have a chance to deal with good confrontation with the other inmates and therapists in sex offender treatment. You know, there's no knowledge of his triggers obviously. Obviously's not a fair word, apparently. You know, all of the issues that are considered in sex offender treatment are left moot basically.

Q Okay. And so that -- those issues in and of themselves were enough for yourself, and apparently Ms. Cook as well, to decide that even though the -- by scoring the Parole Decision Making Guidelines the recommendation was release and all the positive stuff Mr. DeFoy had done in the Department of Corrections, that the failure to participate

in sex offender treatment program, that factor by itself, was just sufficient to cause you to believe that reparole was not appropriate?

A Basically, yes, sir.

Q Okay. During the time that you were a Board member can you ever recall a case where you would have recommended release for an inmate who had been told to participate in sex offender treatment program but who had refused to participate?

A I'd -- I can't recall, no.

Q Okay.

A My -- my memory on that is, you know, obviously fuzzy from being away from it and not even thinking about that for five years. I -- can I rule it out? No. Do I recall one way or the other? No.

Q Okay. Would it be fair to say that given the emphasis that gets put on the sex offender program and the perceived benefits that come along with somebody participating in the sex offender program that it would be unlikely that someone would be paroled if they had not participated in the sex offender treatment program?

A Chances are no. There -- there could be other factors that could come into play. You know, if -- if the person, you know -- god forbid if the person were terminal and, you know, going to be in a bed dying for the next two

weeks, you know, and there was a compassionate plea from the Department of Corrections to get the person home to be with family where the person would be absolutely no risk to anyone, you know, that's one example. But I -- I just do not recall. I'm sorry.

MR. PATTON: Okay. Mr. Muller, those are my questions. Mr. Bradley is going to ask you some questions now.

THE WITNESS: Okay. Thank you.

CROSS-EXAMINATION

BY MR. BRADLEY:

Q Good afternoon, Mr. Muller.

A Good afternoon.

Q This is Scott Bradley.

A Okay.

Q Just -- just briefly let's start with this. You've been testifying from a number of documents related to Mr. DeFoy and parole reviews you were involved in back in 1997 and 2000. Sitting here in 2006 do you have any independent recollection of those events?

A None whatsoever.

Q And your testimony today has been largely based on your review of the documents that have been provided?

A Yes.

Q Specifically referring to Exhibit E, the 1997

Parole Decision Making Guidelines. Mr. Patton asked you a number of questions about.

A Hang on just a second. Let me make sure I got the exhibit. Exhibit which?

Q E.

A E, okay.

Q And specifically on page two.

A Okay.

Q Category of reasons for parole refusal.

A Right.

Q Is it your understanding that the presence of those factors in coming to a recommendation precludes you from considering those in the ultimate decision making process?

A No, I don't -- I don't see anything that precludes it.

Q So it's your understanding that even though there's a scoring for recommendations, you were still, as the Board member, permitted to consider those factors in either granting or denying parole?

A We were supposed to consider every bit of information that we had available.

Q And I think you touched upon this, but just to confirm for the record. When you had a parole decision to be made was that an individualized decision made based on the information available from that inmate's file?

A Yes. I mean, that's all we had there was the file, the file and the inmate, yes.

Q But in each case you made a decision based on the information that was pertinent to that inmate; is that correct?

A Yes.

Q Did anybody ever tell you as a blanket rule that you were to deny parole or reparole to inmates who had refused to participate in sex offender treatment?

A No. There were no -- no always yes or always nos on anything.

Q And I think this is my last question, and this refers to Exhibit H at page three. These are the 2000 Parole Decision Making Guidelines.

A Okay. Just a second. Let me get there. Okay, H.

Q Page three, the notes of interview.

A Okay.

Q I believe Mr. Patton had asked you if the no program involvement, no SOT, was the only negative information on that page?

A Um-hum.

Q I refer you two lines down where it says last on parole in 1985.

A Right.

Q Does that indicate to you a prior parole failure?

A Yes. I would -- I recall when we were back discussing some of the earlier green sheets there was a parole failure.

Q And would you consider that, I guess, negative information regarding a parole decision?

A Yes.

MR. BRADLEY: Okay. That's all the questions I have. Mr. Patton may have some follow ups on that territory.

REDIRECT EXAMINATION

BY MR. PATTON:

Q This is Tom Patton, Mr. Muller.

A Yes, sir.

Q With regard to the October 24th, 2000 decision not to reparole Mr. DeFoy we had gone through the various factors in that.

A Um-hum.

Q And is it still accurate to say that it was the failure to participate in the sex offender treatment program that led to the decision not to reparole Mr. DeFoy?

A That was the -- well, I mean, when you make a paroling decision you -- you take into account everything that you've seen. You can't write down, you know, every -- every little thing that comes into play. But the lack of an SOT is a major hurdle.

Q Okay. And from what's -- given the fact that the Parole Decision Making Guidelines form recommended release, that the Department of Corrections said that he had good conduct, good housing and work conduct, that his psychological showed him to present a minimal risk, and that the only reason the Department of Corrections was recommending no release was failure to participate in sex offender treatment program, does there appear to be anything else written down anywhere on the Petitioner's Exhibit H that indicates some reason other than failing to participate in sex offender treatment that led to the decision not to release Mr. DeFoy?

A Written down, no.

Q Okay.

A Other than the fact when -- as was pointed out, you know, some taking note of prior parole failure, you know. It's -- it wasn't a -- you know, an exhaustive listing of every -- every negative thing you can find to talk about a person or anything positive to talk about a person, you know. You don't write down everything there is on both sides every time you do a -- a parole interview.

Q Well, Mr. Bradley pointed out that you had written down last on parole in 1985 --

A Yeah.

Q -- correct?

A Um-hum.

Q Okay. That -- the statement last on parole in 1985 says nothing about any prior failures on parole; is that correct?

A That's correct.

Q And if you turn to page two of Petitioner's Exhibit H.

A Um-hum.

Q On the reasons for parole refusal.

A Um-hum.

Q On No. 4 where it has removed from CSC.

A Um-hum.

Q Boot camp, work release, or prerelease for cause.

A Yes.

Q That actually has nothing on the form indicating that he had been removed?

A Yes.

Q Is that correct?

A Yes.

Q So, you know, based on that it would be fair to say that your decision in 2000 was not based on any removal from a CSC or a halfway house?

A The major thing that was considered was the sex offender treatment based on what I can see on this form.

MR. PATTON: All right. Those are my questions.

Thank you very much.

RECROSS-EXAMINATION

BY MR. BRADLEY:

Q Mr. Muller, just one more. And, again, on Exhibit H.

A Um-hum.

Q Referring you to page one.

A Page one, okay.

Q The bottom of column one.

A Um-hum.

Q Does that indicate a parole revocation?

A Yes.

MR. BRADLEY: That's all.

THE WITNESS: Okay.

MR. PATTON: Mr. Muller, I believe that is it. The court reporter will be sending you the affidavit for you to sign, if could you sign and return that.

THE WITNESS: Sure.

MR. PATTON: We should be done with you.

THE WITNESS: Okay. All right. Very good. Thank you.

MR. PATTON: Thank you very much for your time.

MR. BRADLEY: Thank you, Mr. Muller, for making yourself available. We appreciate it.

THE WITNESS: Okay.

(Whereupon, the deposition was concluded at 4:25 p.m.)

COUNTY OF DAUPHIN :
: SS
COMMONWEALTH OF PENNSYLVANIA :

I, Donna E. Gladwin, a Notary Public, authorized to administer oaths within and for the Commonwealth of Pennsylvania, do hereby certify that the foregoing is the testimony of Nicholas Muller.

I further certify that before the taking of said deposition, the witness was duly sworn; that the questions and answers were taken down stenographically by the said Reporter-Notary Public, and afterwards reduced to typewriting under the direction of the said Reporter.

I further certify that I am not a relative or employee or attorney or counsel to any of the parties, or a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

I further certify that the said deposition constitutes a true record of the testimony given by the said witness.

IN WITNESS WHEREOF, I have hereunto set my hand this 26th day of November, 2006.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Donna E. Gladwin, Notary Public
Susquehanna Twp., Dauphin County
My Commission Expires July 22, 2008
Member, Pennsylvania Association of Notaries

Donna E. Gladwin, RPR
Notary Public

**COMMONWEALTH OF PENNSYLVANIA**
**PENNA. BOARD OF PROBATION AND PAROLE**

DATE: 120992

CLIENT NAME: ROBERT DEFOY PAROLE NO: 1226J

INSTITUTION: YORK COUNTY PRISON INSTITUTION NO: AK1017
SCI - HUNTINGDON CASE

AS RECORDED ON 111092 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

RECOMMIT AS A CPV TO A STATE CORRECTIONAL INSTITUTION WHEN AVAILABLE TO SERVE 40 MONTHS BACKTIME.

40 MONTHS FOR THE OFFENSES OF INVOLUNTARY DEVIATE SEXUAL INTERCOURSE, STATUTORY RAPE AND CORRUPTION OF MINORS. EVIDENCE RELIED UPON: PROOF OF CONVICTIONS - COURT DOCUMENTS. REASONS: MULTIPLE CONVICTIONS ESTABLISHED IN A COURT OF RECORD.

WHILE CONFINED, YOU MUST COMPLY WITH THE INSTITUTION'S PRESCRIPTIVE PROGRAM REQUIREMENTS AND HAVE NO MISCONDUCTS AND PARTICIPATE IN SEX OFFENDER TREATMENT. (H.R. 10-6-92;CM)

IF YOU WISH TO APPEAL THIS DECISION, YOU MUST FILE A REQUEST FOR ADMINISTRATIVE RELIEF WITH THE BOARD WITHIN THIRTY DAYS OF THIS ORDER. THIS REQUEST SHALL SET FORTH SPECIFICALLY THE FACTUAL AND LEGAL BASIS FOR THE ALLEGATIONS. SEE 37 PA CODE SEC. 73. YOU HAVE THE RIGHT TO AN ATTORNEY IN THIS APPEAL AND IN ANY SUBSEQUENT APPEAL TO THE COMMONWEALTH COURT.

DATE MAILED: DEC 10 1992

VIRTUE
LIBERTY AND
INDEPENDENCE

CC: PUBLIC DEFENDER
CC: SUB OFFICE - YORK
CC: SUPV

James W. Riggs
JAMES W. RIGGS
BOARD SECRETARY

CLIENT COPY
ROBERT DEFOY AK1017
YORK COUNTY PRISON
1155 WILLIAMS ROAD
YORK PA

PETITIONER'S EXHIBIT A

17402-0000

# COMMONWEALTH OF PENNSYLVANIA

## PENNA. BOARD OF PROBATION AND PAROLE

DATE: 110593

ENT NAME: ROBERT DEFOY PAROLE NO: 1226J

NSTITUTION: STATE CORRECTIONAL INSTITUTION CAMP HILL INSTITUTION NO: AK1017

AS RECORDED ON 110593 THE BOARD OF PROBATION AND PAROLE RENDERED THE LLOWING DECISION IN YOUR CASE:

REFER TO BOARD ACTION OF 11/10/92 TO RECOMMIT TO A STATE CORRECTIONAL INSTITUTION AS A CONVICTED PAROLE VIOLATOR TO SERVE 40 MONTHS ON BACKTIME.

REPAROLE 03/25/93 TO STATE DETAINER SENTENCE, UPON CONDITION THERE ARE NO MISCONDUCTS AND YOU REMAIN INVOLVED IN REQUIRED PROGRAMS.

MUST ABIDE BY THE RULES AND REGULATIONS OF THE INSTITUTION. FAILURE TO DO SO MAY RESULT IN PAROLE REVOCATION.

IF YOU WISH TO APPEAL THIS DECISION, YOU MUST FILE A REQUEST FOR ADMINISTRATIVE RELIEF WITH THE BOARD WITHIN THIRTY DAYS OF THIS ORDER. THIS REQUEST SHALL SET FORTH SPECIFICALLY THE FACTUAL AND LEGAL BASIS FOR THE ALLEGATIONS. SEE 37 PA CODE SEC. 73. YOU HAVE THE RIGHT TO AN ATTORNEY IN THIS APPEAL AND IN ANY SUBSEQUENT APPEAL TO THE COMMONWEALTH COURT.

DATE MAILED: NOV 17 1993

(CAM 11/05/93)

PAROLE VIOLATION MAX DATE: 050701

ESQ.
CONTROL COPY

JAMES W. RIGGS
BOARD SECRETARY

FILE COPY

PETITIONER'S
EXHIBIT
B

15

P-15 (8/92)

COMMONWEALTH OF PENNSYLVANIA

PENNA. BOARD OF PROBATION AND PAROLE

DATE: 112393

CLIENT NAME: ROBERT DEFOY | Houtzdale | PAROLE NO: 1226J

INSTITUTION: STATE CORRECTIONAL INSTITUTION HUNTINGDON | INSTITUTION NO: AK1017

AS RECORDED ON 112393 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

MODIFY BOARD ACTION OF 11/05/93 BY CORRECTING REPAROLE DATE TO 03/25/97.

REST OF BOARD ACTION REMAINS THE SAME.

IF YOU WISH TO APPEAL THIS DECISION, YOU MUST FILE A REQUEST FOR ADMINISTRATIVE RELIEF WITH THE BOARD WITHIN THIRTY DAYS OF THIS ORDER. THIS REQUEST SHALL SET FORTH SPECIFICALLY THE FACTUAL AND LEGAL BASIS FOR THE ALLEGATIONS. SEE 37 PA CODE SEC. 73. YOU HAVE THE RIGHT TO AN ATTORNEY IN THIS APPEAL AND IN ANY SUBSEQUENT APPEAL TO THE COMMONWEALTH COURT.

DATE MAILED: DEC 01 1993

(CAM 11/23/93)

PAROLE VIOLATION MAX DATE: 060701

James W. Riggs

JAMES W. RIGGS
BOARD SECRETARY

CC ESQ.
CONTROL COPY

FILE COPY

PETITIONER'S EXHIBIT C

16

# COMMONWEALTH OF PENNSYLVANIA

## PENNA. BOARD OF PROBATION AND PAROLE

DATE: 042397

CLIENT NAME: ROBERT DEFOY

PAROLE NO: 1226J

INSTITUTION: SCI - HOUTZDALE

INSTITUTION NO: AK1017

AS RECORDED ON 042297 THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

MODIFY BOARD ACTION OF 11-23-93 AND 11-05-93 BY TEMPORARILY RESCINDING THE REPAROLE PORTION DUE TO MISCONDUCTS AND NOW:

LIST FOR REINTERVIEW ON NEXT AVAILABLE DOCKET.

[ MEMO 04-10-97 CG 4-23-97 ]

PAROLE VIOLATION MAX DATE: 06J701

FILE COPY

PETITIONER'S EXHIBIT D

W. Conway Bushey
W. CONWAY BUSHEY
BOARD SECRETARY

mm3 M

PBPP-361 (9/90)

# PENNSYLVANIA BOARD OF PROBATION AND PAROLE

CLIENT NAME Robert Da Foy PAROLE NUMBER 1226-V

DATE OF INTERVIEW 6/19/97 INSTITUTION SCI-Huntingdon/AK-10

# PAROLE DECISION MAKING GUIDELINES

Reparole Review

## I PAROLE PROGNOSIS ASSESSMENT

***INSTRUCTIONS:*** Information on age-at-minimum-sentence, prior convictions, PPA offense code and prior probation or parole revocations should be provided in column 1. The appropriate risk classification score in column 2 should be placed in column 3 and subsequently added together in the total PPA score box. Based upon the total score number, the client may then be classified into a risk category according to the range of scores shown at the bottom of the instrument. Clients with multiple offenses should have each offense ranked in ascending score order according to the offense ranking at the bottom of the page. This process results in a risk assessment which is sensitive to potential future crime. Column 4 may be used to reassess a case if the interview suggests that the assessment information was incorrect.

| COLUMN 1 Variable (Review) | COLUMN 2 Score Allocation for Risk Assessment | COLUMN 3 Classification Score | COLUMN 4 Reassessment |
|---|---|---|---|
| Age at Minimum: 30 yr. 45<br>Minimum Sentence Date 9/29/82 | 0 if 40 years or older<br>21 if 26-39 years<br>38 if 25 years or younger | 21 0 | ____ |
| Prior Convictions<br>Number: 1 | 0 if no prior convictions<br>9 if 1 or 2 convictions<br>26 if 3 or more convictions | 8 9 | ____ |
| PPA Offense<br>(Ranked According to Index)<br>1. Robbery w/ Acc<br>2. while armed or<br>3. 84 violent<br>4. ____<br>5. ____ | 0 if not elsewhere classified<br>20 if theft, fraud, burglary or robbery | 20 (20) | ____ |
| Probation Revocations 0<br>Parole Revocations 1<br>Total: 1 | 0 if none<br>16 if 1 or more | 16 (16) | ____ |
| **TOTAL P.P.A. SCORE** | | 57 45 | |

Parole Prognosis Assessment Score Category **CHECK ONE:** 71-100 High Risk ☐ 45-70 Medium Risk ☒ 0-44 Low Risk ☐

Instant Offense in descending recidivism rank order: 1) Theft/Fraud, 2) Burglary, 3) Robbery, 4) Aggravated Assault, 5) Drug Law Violation, 6) Arson & Miscellaneous, 7) Simple Assault & Kidnapping; 8) Sex Offenses, 9) Manslaughter, 10) Murder.

## II POTENTIAL ASSAULTIVENESS/DANGEROUSNESS SCREEN

Assaultivness is a course of conduct that presents, or is calculated to present, a danger or perceived danger to any person. An assaultive instant offense is defined as any single conviction offense for the current sentence of the following type: murder, manslaughter, rape, and other assaultive sex offenses, robbery, kidnapping, aggravated or simple assault, arson against persons, weapon law violations, or homicide by vehicle.

**Official versions or facts of crime are required for all offenses in the definition above prior to a final Board action.**

1. Does the client have an assaultive instant offense based upon the definition above, or based upon the official version of the offense in the case of a plea bargain? ☒ YES ☐ NO
   If the answer to the above question is "yes", mark a score of (1) on p. 2, III(7), and answer the following question.
   If the answer to the above question is "no", stop here.
2. Does the client have a mental health problem which requires treatment in the form of either individual or group therapy/counseling and/or psychotropic medication? (Rape and all other assaultive sex offenses require a "yes" answer). ☒ YES ☐ NO
   If the answer to the above question is "yes", mark the client as having a very high assault potential with a score of (3) on p. 2, III(8) and stop here.
   If the answer to #2 is "no", answer the following question:
3. Did the client have any institutional problems/misconducts which were assaultive in nature within the last 12 months or the last one-half of the minimum sentence, whichever is longer? ☐ YES ☐ NO
   If the answer to the above question is "yes", mark tl [...] ssault potential with a score of (2) on p. 2, III(9).

PETITIONER'S EXHIBIT E

## III PAROLE CONSIDERATION FACTORS

Each unfavorable factor listed below is a possible reason for refusing parole as a matter of policy. Select the appropriate column from the PPA on p. 1. If the response to a specific unfavorable factor is in the affirmative, the appropriate score of 2 or 1 must be entered. If the response is in the negative, a 0 goes in the blank space provided. Enter the total score of unfavorable factors at the bottom of the appropriate column.

| REASONS FOR PAROLE REFUSAL | SCORE | PAROLE PROGNOSIS ASSESSMENT: High Risk | Medium Risk | Low Risk |
|---|---|---|---|---|
| **Unfavorable Factors from Institutional Performance:** | | | | |
| 1) Three or more Class II misconducts, or two Class II and one Class I misconducts, during the last twelve (12) months or the last one-half of the minimum sentence, whichever is longer. | 1 | | 0 | |
| 2) Two or more Class I misconducts during the last twelve (12) months, or the last one-half of the minimum sentence, whichever is longer. | 1 | | 0 | |
| 3) Open charges* for new crimes, or new convictions, while serving this prison sentence. | 2 | | 0 | |
| 4) Removed from CSC, work release or prerelease for cause. *(prima facie case was established.) | 2 | | 2 | |
| **Unfavorable Factors from Prior Record:** | | | | |
| 5) Substance Abuse | 2 | | 0 | 0 |
| 6) Habitual Offender | 1 | | 0 | 0 |
| **Unfavorable Factors from Instant Offense:** | | | | |
| 7) Assaultive Instant Offense (from page 1, II (i) | 1 | | 1 | 1 |
| 8) Very high assaultive behavior potential (from page 1, II (2)) | 3 | | 0 | |
| 9) High assaultive behavior potential (from page 1, II (3)) | 2 | | 0 | |
| 10) Victim Injury | 1 | | 0 | |
| 11) Client had weapon in the commission of offense. ☒ Firearm ☐ Knife ☐ Other | 1 | | 1 | |
| **TOTAL UNFAVORABLE FACTOR SCORE** | | | 4 | |
| **Parole Policy Guideline Recommends Refuse if Total Score is:** | | 5 or more | 6 or more | 7 or more |

**Guideline Policy Recommendation:** Parole ☒ Refuse ☐

**DEFINITIONS:**

a) **Open Charges -** This refers to new criminal charges being filed while on pre-release or as a result of criminal conduct at a correctional facility. If open charges are to be accepted as a basis for parole refusal, a prima facie case must have been established.

b) **Substance Abuse -** There is a record of substance abuse which lead to police arrests and/or clinical determinations.

c) **Habitual Offender -** This refers to a person who has a total of three or more prior convictions for similar types of offenses in his criminal history. For example, they may be convictions for burglary and robbery, or for drug law violations. Also, a person is included who simply appears to have developed a criminal life style based upon four or more convictions which may be dissimilar. A corollary concept refers to a person in syndicated or organized crime.

d) **Victim Injury -** The official version of the offense must indicate physical injury to the victim of the crime, however slight. In cases of sexually assaultive behavior, psychological injury to the victim is also frequently the case; therefore, in all cases of sexual assault an unfavorable factor score of 1 is to be entered.

e) **Weapon -** The official version of the offense must place the client in actual or constructive possession of a weapon. The definition of weapon contained in Board regulations states: "Anything readily capable of causing harm to **or intimidating** another, possessed under circumstances not manifestly appropriate for any lawful use that the object may have". In a crime such as "homocide by vehicle", the vehicle would not be a weapon under the above definition unless: 1) there was a DUI involved, or; 2) there was a clear intent to harm the victim by using the vehicle as a weapon. Under both exceptions, the circumstances were not manifestly appropriate for any lawful use according to our definition.

## IV. COUNTERVAILING FACTORS TO EXPLICIT POLICY OF PAROLE DECISION MAKING GUIDELINES

### A. Factors Countervailing a Guideline Recommendation to Refuse Parole:

***GENERAL POLICY:*** Where factors of risk have been reduced by participation in available institutional programming, the quantity and quality of program participation should correspond to the level of risk involved to be a meaningful countervailance to a parole guideline recommendation to refuse. Where available prison programming could reduce the risk of parole failure, it will be prescribed by the Board as a necessary program to assure release.

YES ☐ NO ☐

1. Inventory of Institutional Programming
   a. Was there positive response to prescriptive or other prison program plans?

Program 1) ______ Benefit 1) ______

Program 2) ______ Benefit 2) ______

Program 3) ______ Benefit 3) ______

YES ☐ NO ☐

2. Do other factors support a parole action? (For example, recommendations by the Department of Corrections, Board staff, strength of parole plan) ______

### B. Factors Countervailing a Guideline Recommendation to Parole:

***GENERAL POLICY:*** The parole guidelines provide a uniform method for assessing parole suitability and risk. In some instances, guideline assessments may indicate medium or low risk; however, other risk factors may contravene and suggest that the likelihood of successful reintegration is low while the threat to the safety of the community is high. The factors listed represent risks outside of the parole guideline for which a parole refusal may be justified.

| | YES | NO |
|---|---|---|
| 1. The client displayed psychotic or clearly dangerous behavioral characteristics during the parole interview. | ☐ | ☐ |
| 2. The client had a recent psychiatric/psychological report which causes concern. | ☒ | ☐ |
| 3. There were strong objections from the sentencing judge, the district attorney, or the victim of the crime. | ☐ | ☐ |
| 4. The client is a habitual offender for assaultive crimes. | ☐ | ☐ |
| 5. There is an unfavorable recommendation from the Department of Corrections or Board Staff. | ☒ | ☐ |
| 6. There are other factors supporting a parole refusal: refuses S.O.T. negative attitude | ☒ | ☐ |

***Instructions:*** The countervailing factors to a guideline recommendation to refuse parole (A) or to parole (B) are for information to the decision makers only. Countervailing factors checked in (B) are **not** to be communicated in the Board action as such. The Board Member/ Hearing Examiner will supply the appropriate reasons for refusal in his/her decisions in section VII of this guideline document.

## V FINAL DECISION MAKING ANALYSIS

Decision Outcome and Guideline Consistency: Use the appropriate guideline recommendation column to check off the interviewer decision.

*Instructions:* Inmates refused parole may be eligible for the Special Early Release Program. If eligible, indicate a parole action in item 2 below and check the box titled SERP. The initial and date space on this page is to be completed for a "continue" decision only. Final decisions are initialed on page 6 of this document when there is no "continue" action preceeding it. If the case has been continued, for whatever reason, the final decision can be initialed on this page with the appropriate completion of section VI or VII, whichever is appropriate to the decision.

Initial & Date: DRCook 6/19/97.

| BOARD DECISION | Guideline Recommendation: Parole | Guideline Recommendation: Refuse |
|---|---|---|
| **1) Continue:** | | |
| a) to approved plan | ☐ | ☐ |
| (b) pending receipt of information (Specify) CLARIFICATION OF STATUS OF 7/16/92 CONVICTION (IDSI, CMM, STAT. RAPE) | ☒ | ☐ |
| c) pending successful adjustment to C.S.C., review in ______ | ☐ | ☐ |
| d) pending disposition of criminal charges | ☐ | ☐ |
| **2) Parole to Approved Plan** ☐ SERP | ☐ | ☐ |
| **3) Parole to in-patient program; approved home to be available** | ☐ | ☐ |
| **4) Parole to Detainers:** ☐ To Board/backtime detainer sentence only; ☐ to State Sentence; approved home to be available prior to release to the community. ☐ while confined must participate in ______ | ☐ | ☐ |
| ☐ To other detainer sentence; approved home to be available. Check one: ☐ County ☐ Sentence ☐ Untried Case; ☐ Other State (approved home necessary if untried case); ☐ Federal ☐ Sentence ☐ Untried Case; ☐ Violation of Probation Parole; ☐ Immigration and Naturalization; ☐ When released to the community, special conditions as prescribed imposed.; ☐ Other: ______ | ☐ | ☐ |
| **5) Refuse Parole** | ☒ [initials] 8/1/97 | ☐ |

NOTES: "It was just a regular stickup"

Aged 45; original sentence is 10-20 yr for robbery; ret. as CPV for rape of stepdaughter (had 6½-13 yr. sent. to serve); Bd. act of 11/23/93 was to reparole 3/25/97; rec'd Class I misconduct (refusing an order) and has been granted new trial on the IDSI, etc (he has posted bond); Bd act of 4/22/97 rescheduled inmate for interview; previous CCC failure (drugs); also previously returned for possessing sword? loaded .22 in his home; since CPV return has completed Stress/Anger; refused S.O.P. (says not guilty, so won't take it); If paroled, live w/wife, look for work (P.P. approved 5/15/97). inmate says he "thinks" he has posted bond – via property bond – but he's not "sure" the D.A. (?) effected the bond.

NOTE: 8/1/97 - Rec'd attached York Co. material – and legal opinion that since DA filed a appeal of PCRA, the conviction stands until that matter is resolved

## VI SPECIAL CONDITIONS OF PAROLE

| | YES | NO |
|---|---|---|
| 1. Are special conditions of parole necessary? | ☐ | ☐ |
| 2. Did the inmate raise objections to any special condition? | ☐ | ☐ |

3. What is the presenting problem to adjustment, or danger to the community? ______________________

______________________________________________________________

4. **Complete if special conditions of parole are necessary:**

____ Prior to release to an in-patient program, you will be required to sign the appropriate release form for confidential information.

____ Removal or termination from the in-patient program for any reason other than successful completion is a violation of your parole.

**WHEN PAROLED OR AFTER SUCCESSFUL COMPLETION OF THE IN-PATIENT PROGRAM, YOU MUST COMPLY WITH THE FOLLOWING SPECIAL CONDITIONS OF PAROLE:**

____ ____ You must abide by all of the supervision requirements in the Special Early Release Program

____ ____ Out-patient (drug/alcohol/sex offender/mental health/other: ______________________) treatment [circle] is a special condition of your parole supervision until the treatment source and/or parole supervision staff determine it is no longer necessary. You will be required to sign the appropriate release form for confidential information.

____ ____ You must cooperate with TASC-SCI and follow all treatment recommendations.

____ ____ Upon your release on parole, you will be evaluated to determine your need for (drug/alcohol/mental health/other: ______________) treatment [circle]. Prior to the evaluation being conducted, you will be required to sign the appropriate release form for confidential information. If the evaluation reveals that treatment is indicated, this special condition of parole will be amended to include other appropriate special conditions imposed by your parole agent.

____ ____ You must submit to (urinalysis testing/mandatory urinalysis testing) [circle]

____ ____ You must achieve negative results in screening tests ramdomly applied for the detection of the presence of controlled substances or designer drugs and you must pay for the costs of the tests. (Act 97 - ______)

____ ____ You must not consume alcohol under any conditions or for any reason

____ ____ You must not enter establishments that sell or dispense alcohol

____ ____ You must not contact or associate with persons who sell drugs, or with drug users, outside of a treatment setting.

____ ____ You must take psychotropic medication if prescribed by your doctor

____ ____ You must support your dependents

____ ____ You must not contact or associate with ______________________ for any reason

____ ____ You must maintain (employment/vocational training/educational training/other/ ______________) [circle] as approved by parole supervision staff.

____ ____ You must engage in an active job search during any period of unemployment, and provide verification as directed by parole supervision staff.

____ ____ Other: ______________________

**SPECIAL INSTRUCTIONS TO PAROLE SUPERVISION STAFF**

______________________________________________________________

______________________________________________________________

## VII REASON FOR PAROLE REFUSAL AND REVIEW DATE

1) **Reasons for refusal:**

X a) factors cited in guidelines section(s) III, 4, 7, ___, ___, ___

___ b) negative interest in parole

___ c) your need for: (check the appropriate need)

- ☐ counseling
- ☐ treatment
- ☐ education
- ☐ vocational training

X d) failure to participate in and benefit from a treatment program for:

- ☒ sex offenders
- ☐ substance abuse
- ☐ mental health problems
- ☐ other: ___

___ e) unfavorable recommendation from the:

- ☐ district attorney
- ☐ sentencing judge
- ☐ warden of county prison
- ☐ Department of Corrections

X f) other: MISCONDUCT

2) **Review date and conditions for release consideration:**

X a) review in JUNE 1998 (Mo./Yr.) for tentative ___ (Mo./Yr.) release

X b) must participate in P.P.P, INCLUDING S.O.T.

X c) you must maintain a clear conduct record and ~~earn~~ MAINTAIN an institutional recommendation for parole.

___ d) review in ___, or earlier, if recommended by the Department of Corrections because of demonstrable benefit from participation in an appropriate treatment program for:

- ☐ sex offenders
- ☐ substance abuse
- ☐ mental health problems
- ☐ other: ___

___ e) serve your unexpired maximum sentence ___/___/___

___ f) parole to an approved plan upon condition that there are no misconducts, effective ___ and subject to the following special conditions (see page 5)

## VIII PANEL MEMBER CONCURRENCE

1) Interviewing Panel Member [signature] DEBORAH R COOK Date 8/1/97 AUGUST 1, 1997

| | Agree | Disagree |
|---|---|---|
| 2) Board/Panel Member [signature] Date 8/12/97 | ☑ | ☐ |
| 3) Board/Panel Member ___ Date ___/___/___ | ☐ | ☐ |

2) Explain Disagreement: ___

3) Explain Disagreement: ___

**Instruction: Agreement or Disagreement references position relative to the preceding response.**

## IX SPECIAL CONDITIONS OF PAROLE AND THE PAROLE PLAN

*GENERAL POLICY:* The parole plan is a contract which provides the public some assurance that their community will be protected while the means to reintegrate the offender are implemented. The plan is judged therefore in context of the client's P.P.A. and unfavorable factors which suggest risk to the community. The higher risk client requires more stringent criteria when the plan is viewed as a countervailance to risk. Discretion for approval of a parole plan is a field staff prerogative unless the Board has specific cause to intervene. Where an approved plan is not available, specific approval criteria commensurate with assessed risk will be set by the Board as special conditions of parole.

### A. PAROLE PLAN CHECK LIST

| | YES | NO |
|---|---|---|
| 1. Does the client have a detainer sentence?<br>Type: ☐ State ☐ Board ☐ County ☐ Federal ☑ Untried Case ☐ Immigration and Naturalization ☐ Violation of Probation or Parole ☐ Other | ☑ | ☐ |
| 2. The client made some effort to prepare a parole plan. | ☑ | ☐ |
| 3. The client submitted a completed parole plan to the IPR: Date ___/___/___ | ☐ | ☐ |
| 4. The IPR sent the parole plan for a field investigation: Date 4/12/97 | ☑ | ☐ |
| 5. There were field investigation responses received for: | | |
| a) Residence | ☑ | ☐ |
| b) Employment/Education/Training | ☐ | ☐ |
| 6. Was a parole plan accepted as adequate by field staff: Date 5/19/97 | ☑ | ☐ |

PBPP-382 (4/87)

Interview Month JUNE 1997

# SUMMARIZATION REPORT

Inst/Docket No. SCI-HD #56

Name Robert DeFoy Inst and No. SCI-Houtzdale, AK-1017 Parole No. 1226-J

Minimum Review ☒ (Reparole)

**OFFICIAL VERSION** (See Attached) **PBPP 139**

DC-1B PBPP-30 PSI **Others (Indicate)** ☒ None available

**RESIDENT'S VERSION** DC-1B PBPP-130 PSI Subject Interview

**PRIOR ADULT RECORD** Number of: Source **PSP Rap Sheet**

**Convictions 1** **Confinements 1** **Probation Revocations 0** **Parole Revocations 1**

**ADDITIONAL INFORMATION** (See attached report)

Psychiatric **Psychological** ☒ Medical **Misconducts** ☒ **11/6/96**

Source **6/16/97** Fines, Costs, Restitution **Unlisted** Amount

**PROBLEM AREAS**

**Assaultive** ☒ **Sexual** ☒ Vocational Alcohol

**Psychiatric/Psychological** ☒ Drugs Educational **Others(Indicate)** ☒ **Juvenile Record**

**Superintendent - Warden RECOMMENDATION**

Parole **Reparole** ☒ Refuse Others (Indicate)

## ANALYSIS

Board Action recorded 11/5/93 refers to Board Action of 11/10/92 to Recommit to a SCI as a CPV to serve 40 months backtime . . .Reparole 3/25/93 to State Detainer Sentence. Board Action recorded 11/23/93 modifies Board Action of 11/5/93 by correcting Reparole date to 3/25/97. Board Action recorded 4/22/97 was to modify Board Action of 11/23/93 and 11/5/93 by temporarily rescinding the Reparole portion due to misconducts and now list for reinterview on the next available docket. Subject was added to the June docket.

Currently, the subject is a 45 year old married male recommitted by the Board for a new conviction - rape of his stepdaughter. He is originally serving a 10 to 20 year sentence for armed robbery. Official Version reports he used a 45 caliber handgun in this robbery. Subject was received at SCI HD 5/8/96 from SCI Dallas. His Prescriptive Program Plan included No Misconducts, Good Housing and Work Reports, D/A Education, Stress/Anger, Sex Offender Programming. He received 1 Class I Misconduct 11/6/96 for Refusing To Obey An Order and was sanctioned with 30 days cell restriction. He Earns Above Average Housing and Work Reports (assigned to Culinary Department). He is presently assigned as Blockworker.

Psychological evaluation conducted 6/16/97 notes:
Subject denies any substance abuse history. During his interview with the evaluator, he responded with a sarcastic manner stating that coming up for parole was 'bullshit' and 'the Parole Board screws everybody". The subject was extremely angry. The evaluator noted that due to his denial of his sex offense and lack of treatment, he is not appropriate for parole at this time. The evaluator recommended he needs to participate in Sex Offender Treatment prior to any consideration for parole release.

PETITIONER'S EXHIBIT F

**SUMMARIZATION REPORT FOR Robert DeFoy, AK-1017/1226-J** 

**ANALYSIS CONTINUED:**

On 4/9/97 the Records Office notified this writer subject may receive a new trial on this matter. On 4/11/97, this writer spoke with the subject. The subject threatened to sue this writer for him not being released. In a letter dated 5/22/97 from York County reports the subject was granted a new trial regarding his detainer sentence. Bail was granted in the amount of $20,000 which has been posted.

Subject Has Secured Institutional Support for Reparole.

**PAROLE GUIDELINES**

He is viewed as an Acceptable Parole Candidate under the Guidelines.

**DETAINERS**

None listed.

**PLAN**

Parole Plan approved 5/19/97 by the York SO.

**PAROLE STAFF RECOMMENDATION INCLUDING SPECIAL CONDITIONS:**

Parole Reparole Continue Refuse ☒

[signature]
Frederick L. Cutler, Parole Agent II

6/18/97
Date

D76
I/S
6-13-97

CONFIDENTIAL PSYCHOLOGICAL ' UATION - Parole
Re: Robert DeFoy, AK-1017

June 16, 1997

*The following is a confidential psychological evaluation. This information may be reviewed by: health care, corrections counseling staff, inmate program manager, deputy superintendents, superintendent and the treatment team. All others shall not be permitted to review or share this information with persons who are not members of the treatment team.*

Mr. DeFoy was interviewed on June 17, 1997 to provide updated information for his parole evaluation. Mr. DeFoy is serving backtime on his original sentence of 10-20 years for Armed Robbery. He violated the conditions of his parole by being charged with Involuntary Deviate Sexual intercourse, Statutory Rape and Corruption of a Minor. Mr. DeFoy received an additional 6 1/2 - 13 year sentence.

Mr. DeFoy is a 45 year old White male. He is the fifth of twelve children growing up in a single parent household. His parents divorced when he was quite young. His mother paid little attention to Mr. DeFoy and his brothers. He stated that she paid more attention to the girls. Mr. DeFoy denies any substance abuse history.

In the interview setting, Mr. DeFoy responded in a sarcastic manner stating that coming up for parole is "bullshit" and the parole board "screws everybody." Mr. DeFoy was extremely angry. He impressed as being within the Below Average range of intelligence. There is no history of mental illness or psychiatric treatment.

In Summary, due to Mr. DeFoy's denial of his sex offense and lack of treatment, he is not appropriate for parole at this time. Mr. DeFoy needs to participate in Sex Offender treatment prior to any consideration for parole release.

Submitted by,
Lori Ford
Lori Ford, Psychology Intern

Reviewed by,
Carrie A Fromm
Carrie Fromm, Licensed Psychology Mgr.
License #PS007121L

LF/CAF:cjh
c: Medical Records (orig.)
Records
~~Counselor~~
Parole
File

PETITIONER'S EXHIBIT
6

Crime of Violence: ☒ Yes ☐ No

# PA BOARD OF PROBATION AND PAROLE

PBPP-361 (4/98)

OFFENDER NAME Robert Defoy PAROLE NUMBER 1226-J

DATE OF INTERVIEW 10/24/00 INSTITUTION Houtzdale AK-1017

TYPE OF INTERVIEW: ☐ Minimum ☐ Review ☒ Reparole Review ☐ Application

# PAROLE DECISION MAKING GUIDELINES

## I PAROLE PROGNOSIS ASSESSMENT

**INSTRUCTIONS:** Information on age-at-interview, total convictions, PPA offense code, and total probation, parole, or intermediate punishment revocations should be provided in Column 1. Technical parole violations and convicted parole violations are to be counted separately. The appropriate risk classification score in Column 2 should be placed in Column 3 and subsequently added together in the total PPA score box. Based upon the total score number, the offender may then be classified into a risk category according to the range of scores shown at the bottom of the instrument. Offenders with multiple offenses should have each offense ranked in ascending score order according to the offense ranking at the bottom of the page. This process results in a risk assessment which is sensitive to potential future crime. Column 4 may be used to reassess a case if the interview suggests that the assessment information was incorrect.

| COLUMN 1<br>Variable | COLUMN 2<br>Score Allocation for Risk Assessment | COLUMN 3<br>Initial Classification Score | COLUMN 4<br>Current Classification Reassessment Score |
|---|---|---|---|
| Age at Interview: 48 yr.<br>Minimum Sentence Date 9 / 29 / 82 | 0 if 40 years of older<br>21 if 26-39 years<br>38 if 26 years or younger | ______ | 0 |
| Total Criminal History Record of Convictions:<br>Number: 3 | 0 if no convictions<br>9 if 1 0r 2 convictions<br>26 if 3 or more convictions | ______ | 26 |
| PPA Offense<br>(Ranked According to Index)<br>1. Robbery<br>2. ______<br>3. ______<br>4. ______<br>5. ______ | 0 if not elsewhere classified<br>20 if theft, fraud, burglary, or robbery | ______ | 20 |
| Probation Revocations 0<br>Parole Revocations 1<br>Intermediate Punishment Revocations 0<br>Total: 1 | 0 if none<br>16 if 1 or more | ______ | 16 |
| **TOTAL P.P.A. SCORE** | | | 62 |

Parole Prognosis Assessment Score Based on Recidivism **Check One** 71-100 High Risk ☐ 45-70 Medium Risk ☒ 0-44 Low Risk ☐

Instant Offense in descending recidivism order: 1) Theft/Fraud, 2) Burglary, 3) Robbery, 4) Aggravated Assault, 5) Drug Law Violation, 6) Arson & Miscellaneous, 7) Simple Assault & Kidnapping, 8) Sex Offenses, 9) Manslaughter, 10) Murder.

## II POTENTIAL ASSAULTIVENESS/DANGEROUSNESS SCREEN

Assaultiveness is a course of conduct that presents, or is calculated to present, a danger or perceived danger to any person. An Assaultive instant offense is defined as any single conviction offense for the current sentence of the following type: murder, manslaughter, voluntary manslaughter, rape, all sex offenses, robbery, kidnapping, aggravated or simple assault, assault by prisoner, assault by life prisoner, extortion accompanied by threats of violence, arson, burglary (residential), weapon law violations, or homicide by vehicle.

**Official Versions of facts of crime are required for all offenses in the definition above prior to final Board Action.**

1. Does the offender have an assaultive instant offense based upon the definition above, or based upon the official version of the offense in the case of a plea bargain? Yes ☒ No ☐
   If the answer to the above question is "yes", mark a score of 1 on p. 2, III (7), and answer the following question.
   If the answer to the above question is "no", stop here.
2. Does the offender have a documented mental health problem requiring treatment in the form of either individual or group therapy/counseling and/or psychotropic medication? (Rape and all other assaultive sex offenses require a "yes" answer.) Yes ☐ No ☒
   If the answer to the above question is "yes", mark the offender as having a very high assault potential with a score of (3) on p. 2, III(8) and stop here.
   If the answer to #2 is "no", answer the following question.
3. Did the offender have any institutional problems/misconducts which were assaultive in nature within the last 12 months or the last one-half of the time served to date, whichever is longer? Yes ☐ No ☒
   If the answer to the above question is "yes", mar[k] [...] [h]igh assaultive potential with a score of (2) on p. 2, III(9).

PETITIONER'S EXHIBIT H

## III PAROLE CONSIDERATION FACTORS

Each unfavorable factor listed below is a possible reason for refusing parole/reparole as a matter of policy. Select the appropriate column from the PPA on p. 1. If the response to a specific unfavorable factor is in the affirmative, the appropriate score must be entered. If the response is in the negative, a 0 goes in the blank space provided. Enter the total score of unfavorable factors at the bottom of the appropriate column.

| REASON FOR PAROLE REFUSAL | SCORE | PAROLE PROGNOSIS ASSESSMENT | | |
|---|---|---|---|---|
| | | HIGH RISK | MEDIUM RISK | LOW RISK |
| **Unfavorable Factors from Institutional Performance:** | | | | |
| 1) Three or more Class II misconducts, or two Class II and one Class I misconduct, during the last 12 months or the last one-half of the minimum sentence, whichever is longer. | 1 | | \| | |
| 2) Two or more Class I misconducts during the last 12 months, or the last one-half of the minimum sentence, whichever is longer. | 1 | | \| | |
| 3) Open changes (prima facie case established) for new crime; or new conviction while serving this prison sentence. | 2 | | \| | |
| 4) Removed from CCC, Boot Camp, work release or prerelease for cause. | 2 | | \| | |
| **Unfavorable Factors from Criminal History Record:** | | | | |
| 5) History of prior substance abuse or sales of illegal drugs | 2 | | 0 | |
| 6) Habitual Offender | 1 | | 0 | |
| **Unfavorable Factors from Instant Offense:** | | | | |
| 7) Assaultive Instant Offense (from page 1, II (I)) | 1 | | 1 | |
| 8) Very high assaultive behavior potential (from page 1, II (2)) | 3 | | 0 | |
| 9) High assaultive behavior potential (from page 1, II (3)) | 2 | | 0 | |
| 10) Victim Injury | 2 | | 0 | |
| 11) Weapon involved in the commission of offense (specify) Firearm Knife Other | 1 | | 1 | |
| **TOTAL UNFAVORABLE FACTOR SCORE** | | | 2 | |
| **PAROLE POLICY GUIDELINE RECOMMENDS REFUSE IF TOTAL SCORE IS:** | | 5 or more | 6 or more | 7 or more |

**Guideline Policy Recommendation:** Parole/Reparole ☒ Refuse ☐

**DEFINITIONS:**

a) **Open Charges** – This refers to new criminal charges being filed while on pre-release or as a result of criminal conduct at a correctional facility. If open charges are to be accepted as a basis for parole refusal, a prima facie case must have been established.

b) **Substance Abuse** - There is a record of substance abuse, or sale of a controlled substance, which lead to police arrests and/or clinical determinations.

c) **Habitual Offender** - This refers to a person who has a total of three or more convictions for similar types of offenses in his criminal history. For example, they may be convictions for burglary or robbery, or for drug violations. Also, a person is included who simply appears to have developed a criminal life style based upon four or more convictions which may be dissimilar. A corollary concept refers to a person in syndicated or organized crime.

d) **Victim Injury** – The official version of the offense must indicate physical injury to the victim of the crime, however slight. In cases of sexually assaultive behavior, psychological injury to the victim is also frequently the case; therefore, in all cases of sexual assault, an unfavorable factor score of 2 is to be entered.

e) **Weapon** – The official version of the offense must place the defendant or codefendant(s) in actual or constructive possession of a weapon. The definition of weapon contained in Board regulations states: "Anything capable of causing harm to or intimidating another, possessed under circumstances not manifestly appropriate for any lawful use that the object may have." In a crime such as "homicide by vehicle," the vehicle would not be a weapon under the above definition unless: 1) there was a DUI involved, or; 2) there was a clear intent to harm the victim by using the vehicle as a weapon. Under both exceptions, the circumstances were not manifestly appropriate for any lawful use according to our definition.

IV NOTES OF INTERVIEW Hse 90

Last BA 7/21/98 Max: 6/7/01

York Co detainer (6½-13 yrs) IDSI, Stat Rape, CMM

DOC does not support Cust Level 3

No program involvement. No SOT.

Robbery committed in the 70's.
Last on parole in 1985.
New charge in 91. Thinks he has two years credit toward detainer.

Sex offense is on appeal. This is in federal court in Scranton, he thinks.

Expects to max this on and turn over to new one.

## V DECISION TO CONTINUE / PAROLE / REPAROLE

Decision Outcome and Guideline Consistency: the Guideline Recommendation (from Page 2) is:

Parole/Reparole ☐ Refuse ☐

***Instructions:*** The initial and date space on this page is to be completed for a "continue" decision only. Final decisions are checked on the last page of this document if the case has been continued, for whatever reason, the final decision can be initiated on this page with the appropriate block checked in Section VIII.

**Victim Information Needed**

**(Confidential. . .** Do not list on Board Decision.)

**Initial and Date**

☐ **1) Continue:**

- ☐ a) pending receipt of an approved home plan
- ☐ b) pending receipt of information (Specify Non-Victim Info.)
- ☐ c) pending successful adjustments to Community Corrections Center, review in ____________
- ☐ d) pending disposition of criminal charges
- ☐ e) pending disposition of detainer(s)

**Reason for Board Decision:**
Following an interview and review of your file, the Pennsylvania Board of Probation and Parole has determined that the mandates to protect the safety of the public and to assist in the fair administration of justice can be achieved through your release on parole. You are therefore:

☐ **2) Paroled to Approved Plan**

☐ **3) Paroled to a Community Corrections Center for a minimum of ______ months. Must have a job/home prior to release from the Center.**

☐ **4) Paroled to in-patient ______________ treatment program; approved home to be available (must sign appropriate release form for confidential information.)**

☐ **5) Paroled to an approved plan, on or after ____________, upon condition that there are no misconducts and subject to the following special conditions.**

☐ **6) Parole to Detainers:**

- ☐ To Board/backtime detainer sentence only;
- ☐ To State Sentence;
  - ☐ while confined must participate in ______________ ______________
- ☐ To other detainer sentence; approved home to be available

Check one:

- ☐ County ☐ Sentence ☐ Untried Case
- ☐ Other State (approved home necessary if untried Case)
- ☐ Federal ☐ Sentence ☐ Untried Case
- ☐ Violation of Probation/Parole
- ☐ Immigration and Naturalization
- ☐ When released to the community, special conditions as prescribed imposed.
- ☐ Other: ______________

## VI SPECIAL CONDITIONS OF PAROLE

**WHEN PAROLED OR AFTER SUCCESSFUL COMPLETION OF THE IN-PATIENT PROGRAM, YOU MUST COMPLY WITH THE FOLLOWING SPECIAL CONDITIONS OF PAROLE:**

| Imposed | Mandatory (Board Only) | |
|---|---|---|
| ________ | ________ | Out-patient (drug/alcohol/sex offender/mental health/other ____________________) treatment [circle] is a special condition of your parole supervision until the treatment source and/or parole supervision staff determine it is no longer necessary. You shall be required to sign the appropriate release form for confidential information. |
| ________ | ________ | You shall participate in TASC and follow all treatment recommendations. |
| ________ | ________ | Upon your release on parole, you shall be evaluated to determine your need for (drug/alcohol mental health/other: ______________) treatment [circle]. Prior to the evaluation being conducted, you shall be required to sign the appropriate release form for confidential information. If the evaluation reveals that treatment is indicated, this special condition of parole shall be amended to include other appropriate special conditions imposed by your parole agent. |
| ________ | ________ | You shall submit to urinalysis testing. |
| ________ | ________ | You must achieve negative results in screening tests randomly applied for the detection of the presence of controlled substances or designer drugs and you must pay the cost of the tests (Act 97-_____ ). |
| ________ | ________ | You shall not consume or possess alcohol under any conditions or for any reason. |
| ________ | ________ | You shall not enter establishments that sell or dispense alcohol (except as approved by the supervision staff.) |
| ________ | ________ | You shall not directly or indirectly contact or associate with persons who sell or use drugs outside a treatment setting. |
| ________ | ________ | You shall take psychotropic medication if prescribed by your doctor. |
| ________ | ________ | You shall support your dependents, if any. |
| ________ | ________ | You shall not contact or associate with ____________________________, and/or the co-defendant(s) for any reason. |
| ________ | ________ | You shall maintain (employment/vocational training/educational training/other: ____________________) [circle] as approved by parole supervision staff. |
| ________ | ________ | You shall engage in an active job search during any period of unemployment, and provide verification as directed by parole supervision staff. |
| ________ | ________ | You shall not travel or reside in ____________________________ (county, city, town) for any reason. |
| ________ | ________ | You shall develop and provide proof of establishment of a restitution repayment plan within 72 hours of release and comply with the restitution repayment plan. |
| ________ | ________ | You shall not have contact with victim(s), including correspondence, telephone contact, or communication through third parties. |
| ________ | ________ | You shall be placed on electronic monitoring for _____ days and during periods of unemployment. |
| ________ | ________ | You shall be placed on curfew restrictions for _____ days and during period of unemployment. |
| ________ | ________ | You shall attend a community support group program (i.e., Twelve Steps, Alcoholics Anonymous, Narcotics Anonymous) for ______________________________. |
| ________ | ________ | You shall abide by the conditions established for sex offender treatment. |

_______ _______ You shall not open, maintain, or have physical control of any checking, savings, or credit account in your or another's name, unless approved in advance and in writing by parole supervision staff.

_______ _______ Removal or termination from the in-patient program, community corrections center, or contract facility for any reason is a violation of your parole.

_______ _______ Other: ______________________________

______________________________

______________________________

______________________________

**SPECIAL INSTRUCTIONS TO PAROLE SUPERVISION STAFF:**

______________________________

______________________________

______________________________

______________________________

______________________________

______________________________

VII DECISION TO REFUSE PAROLE

Decision Outcome and Guideline Consistency: the Guideline Recommendation (from Page 2) is:

Parole/Reparole ☐ Refuse ☐

**Reason for Board Decision:**

Following an interview and review of your file the Pennsylvania Board of Probation and Parole has determined that the mandates to protect the safety of the public and to assist in the fair administration of justice cannot be achieved through your release on parole. You are therefore refused parole and order to:

___✓___ serve your unexpired maximum sentence.

______ serve your unexpired maximum sentence, due to your negative interest in parole.

______ be reviewed in ____________________ .

______ be review in ____________________ , or earlier, if recommended by the Department of Corrections/County Prison staff because of demonstrable benefit from participation in an appropriate treatment program(s).

At your next interview, the Board will review your file and consider:

______ a) whether you have successfully completed a treatment program for:

☐ sex offenders
☐ substance abuse
☐ other: ________________
☐ mental health problems
☐ impaired adjustment

______ b) whether you have received a favorable recommendation for parole from the:

☐ prosecuting attorney
☐ sentencing judge
☐ warden of county prison
☐ Department of Corrections

______ c) whether you have maintained a clear conduct record and completed the Department of Corrections prescriptive program(s).

______ d) other: ________________________________________

______ e) ________________________________ to be available at time of review.

VIII PANEL MEMBER CONCURRENCE

| | | Parole/ Reparole | Refuse | Reaffirm |
|---|---|---|---|---|
| 1. | Interviewer [signature] Date 10/24/00 | ☐ | ☑ | ☐ |
| 2. | ~~Board~~ Parole Member DRCook Date 10/24/00 | ☐ | ☑ | ☐ |

Last RedFile info is from 1982 on onion skin.

Remarks:

| | | Parole/ Reparole | Refuse | Reaffirm |
|---|---|---|---|---|
| 3. | Board Member ______ Date ______ | ☐ | ☐ | ☐ |

Remarks:

| | | Parole/ Reparole | Refuse | Reaffirm |
|---|---|---|---|---|
| 4. | Board Member ______ Date ______ | ☐ | ☐ | ☐ |

Remarks:

| | | Parole/ Reparole | Refuse | Reaffirm |
|---|---|---|---|---|
| 5. | Board Member ______ Date ______ | ☐ | ☐ | ☐ |

Remarks:

**ADDITIONAL NOTES**

ADDITIONAL NOTES

PBPP-382 (7/97)
Robert DeFoy, AK-1017

1

Month of Interview October 2000
SCIHD/Docket # 30

# REVIEW SUMMARIZATION REPORT

**NAME** Robert DeFoy **INST. & NO.** SCI Houtzdale/AK-1017 **PAROLE NO.** 1226-J

☐ Minimum ☐ Review ☒ Reparole/Review ☐ Parole Application

**Fines, Costs, Restitution:** ☒ None Listed Costs:____ Fines:____ Restitution:____

**Source** DC-16D

**PROBLEM AREAS**

☒ Assaultive ☒ Sexual ☐ Vocational ☐ Alcohol
☒ Psychiatric/Psychological ☐ Drugs ☐ Educational ☒ Others: Juvenile

**SUPERINTENDENT - WARDEN RECOMMENDATION**

☐ Parole ☐ Reparole ☒ Refuse ☐ Others

**GUIDELINE RECOMMENDATION:** ☒ Re-Parole ☐ Refuse

**ACT 97:** ☐ 97-O ☐ 97-1 ☐ 97-2 ☐ 97-3 ☒ N/A

10/24/00

**CRIME VICTIMS COMPENSATION PAYMENT:** $30.00 Payment Verified ☐ Yes ☒ No

**DNA REGISTRATION REQUIRED:** ☒ Yes ☐ No if yes, has it been completed: ☐ Yes ☐ No

**MEGAN'S LAW REGISTRATION REQUIRED:** ☒ Yes ☐ No

## ANALYSIS

### Current Sentence

Subject, age 48, is serving 40 months backtime as a Convicted Parole Violator on an original 20-year sentence for Robbery from the Courts of Erie County. The PV max has been established as 6-7-01.

### Last Board Action

Board Action of 7-21-98 refused parole and established an October 2000 review date.

| Board Stipulations | Was Stipulation Completed | | |
|---|---|---|---|
| 1. Prescriptive Program Plan | ☐ Yes | ☒ No | ☐ Other |
| 2. Maintain Clear Conduct Record | ☐ Yes | ☒ No | ☐ Other |
| 3. Participate in a treatment program for Sex Offenders | ☐ Yes | ☒ No | ☐ Other |

### Institutional Adjustment

Since his last parole interview, he has earned very good housing and work reports and has consistently done this since his reception at SCI-Houtzdale; however, there has been no program involvement since the last Review. Subject refuses to participate in Sex Offender treatment. Based upon his refusal, the Institution does not support parole at this time.

PETITIONER'S EXHIBIT
I

PBPP-382 (7/97)
Robert DeFoy, AK-1017

## Mental Health Evaluation

A Mental Health Evaluation was prepared by the Department of Corrections on 5-31-00 and reports that there are no indications of significant psychopathology which will require intervention at this time. His self-concept appears to involve a generally stable and positive self-evaluation. He is somewhat distant in personal relationships and is unconcerned about opinions of others. He appears to exhibit control over his impulses and behaviors as demonstrated by his positive adjustment. His level of risk to the community appears to be minimal. At present, however, he refuses to complete any treatment programming for Sex Offenders, which was the stipulation established by the Board. Subsequently, he is ineligible for Reparole.

## Parole Alternatives

Detainers: 1-25-93 York County 6 years, 6 months - 13 years for IDSI, Statutory Rape, and Corruption of Minors

If paroled, Guidelines:

- ☒ Must abide by all of the requirements of a Community Corrections Center
- ☒ Out-patient treatment ☒ Drug ☒ Alcohol ☒ Sex Offender ☐ MH ☐ Other is a special condition of parole supervision until treatment source and/or parole supervision staff determine it is no longer necessary. Required to sign appropriate confidential info release forms
- ☒ Upon release, be evaluated to determine need for ☒ Drug ☒ Alcohol ☒ Sex Offender Prior to eval, required to sign confidential info release forms. If eval reveals treatment is indicated, this special condition of parole will be amended to include other appropriate special conditions imposed by PA.
- ☒ Must submit to ☒ Urinalysis ☐ Mandatory Urinalysis testing ☐ Pay for as per Act 97-0
- ☒ Must not consume alcohol under any conditions for any reason
- ☒ Must not enter establishments that sell or dispense alcohol
- ☒ Must not contact or associate w/persons selling drugs, drug users outside of a treatment setting
- ☒ Must take psychotropic medication if prescribed by your doctor
- ☒ Must support your dependents
- ☒ Must not contact or associate w/victim or victim's family for any reason
- ☒ Must maintain Employment, Vocational Training, or Educational Training as approved by parole supv staff
- ☒ Must engage in active job search during any period of unemployment and provide verification as directed by parole supv staff

If refused, Guidelines:

- ☒ Must participate in Prescribed Programming, to include Substance Abuse Treatment, and Sex Offender Treatment
- ☒ Maintain Clear Conduct Record
- ☒ Earn Institutional Recommendation for Parole

## Parole Planning

A parole plan was approved by the York Sub Office on 9-18-00. Residing address will be with his wife in Stewardstown, PA, who has offered to support him.

## Attachments

- ☒ Minimum Summarization Packet/Report
- ☒ Mental Health Evaluation
- ☒ DC-13A Reclassification Summary
- ☐ Misconducts

Date 10-19-00

Parole Agent, Thomas J. Janocko

[signature] 10/23/00
Parole Supervisor, Barbara L. Kilne



**Martin F. Horn**
Commissioner

**William E. Speck**
Deputy Superintendent for
Facilities Management

**Pennsylvania Department of Corrections**
**State Correctional Institution at Houtzdale**
P.O. Box 1000
Houtzdale, PA 16698-1000

**John M. McCullough**
Superintendent

Phone: (814) 378-1000 FAX: (814) 378-1030

**J. Barry Johnson**
Deputy Superintendent for
Centralized Services

July 11, 2000

The Honorable William Ward, Chairman
Pennsylvania Board of Probation and Parole
P.O. Box 1661
Harrisburg, PA 17105

RE: DeFoy, Robert, AK1017

Dear Chairman Ward:

Mr. DeFoy is an addition to the August Parole Docket due to material from the PBPP Central Office in Harrisburg not being available for his originally scheduled interview, therefore this update is being submitted in letter form.

Mr. DeFoy, age 48, is currently a convicted parole violator serving backtime on an original 10 to 20 year sentence for Robbery. The minimum and maximum expiration dates are 9-29-82 and 6-7-01. He currently has a 6 ½ to 3 year re-entry detainer for Statutory Rape, IDSI and COMM. Since the original 13A dated 4-25-00, Mr. DeFoy has continued to earn above average housing/work reports. However, he continues to refuse to participate in sex offender treatment, therefore Staff continues to not support parole.

RECEIVED
SCI-Houtzdale
JUL 13 2000
Pa. Board of Probation & Parole

Sincerely,

John M. McCullough
John M. McCullough
Superintendent

JMM/MMI/sjh

c: DC-14
DC-15
file

10/24/00

10/24/00

PETITIONER'S EXHIBIT J

DC-13A

CONFIDENTIAL

# RECLASSIFICATION SUMMARY

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS

CHECK TOPIC: [X] PAROLE SUMMARY [ ] REPAROLE SUMMARY [ ] OTHER

PREPARED AT: SCI-Houtzdale DATE: 4-25-00

| SID NUMBER | DC NUMBER | PBP NUMBER | NAME | AGE |
|---|---|---|---|---|
| 19268847 | AK-1017 | | DeFOY, Robert | 48 |

| EXPIRATION MINIMUM | EXPIRATION MAXIMUM | EFFECTIVE DATE | TIME SERVED TO DATE | EXPIRATION OF ½ MINIMUM | EFFECTIVE DATE OF PV RETURN | CLASS STATUS | MEDICAL PROFILE PULHEST |
|---|---|---|---|---|---|---|---|
| 9-29-72 | 9-29-82 | 9-29-92 | | | | 3 | |

| PBP DOCKET STATUS | TOTAL ARRESTS | JUVENILE ARRESTS | JUVENILE COMMITMENTS | ADULT ARRESTS | CONVICTIONS | COMMITMENTS | PROBATION VIOLATIONS | PAROLE VIOLATIONS |
|---|---|---|---|---|---|---|---|---|
| [ ] FIRST HEARING [ ] REVIEW HEARING | | | | | | | | |

ACCOMPLICE(S) AND KNOWN DISPOSITION(S)

None Listed

SENTENCE STATUS CHANGE AND/OR DETAINER(S) STATUS

CP#:3623;91 – 1-25-93, York County – 6 ½ to 13 years CS for IDSI, Stat. Rape, Corrupt Minors

RECEIVED SCI-Houtzdale MAY 16 2000 Pa. Board of Probation & Parole

**MISCONDUCTS:**
See attached DC-17.

Steve Kechisen
Corrections Counselor II

**EDUCATIONAL/VOCATIONAL:** WRAT scores dated 3-84 revealed:
READING, 6.9; SPELLING, 5.7; ARITHMETIC, 5.3

Mr. DeFoy resides on C Unit.

Melissa Miller
Education Department

**VOCATIONAL:**

Mr. DeFoy arrived at SCI-Houtzdale on 5-7-96 and was assigned to Culinary PM and Blockworker.

Susan McQuillen
Corr. Emp./Voc. Coordinator

**MEDICAL:** **Medical History:** +PPD, History WPW
**On-Going Treatment:** Chronic Clinic
**Medications:** NTG
**Vision:** Last Exam 2-95 **Dental:** Last Exam 3-96
**Physical Limitations:** No heavy lifting

Medical Department

PETITIONER'S EXHIBIT K

CONFIDENTIAL

**MENTAL HEALTH EVALUATION:** A Mental Health Evaluation will be forwarded to the Institution Parole Office as requested by the Parole Office Supervisor.

Steve Kechisen
Corrections Counselor II

**SEX OFFENDER TREATMENT:** Sex offender programming has been recommended. Mr. DeFoy denies guilt and refuses to participate.

Steve Kechisen
Corrections Counselor II

**DNA ACT NOTIFICATION:** A DNA sample material will be required when he turns over to his detainer sentence.

Steve Kechisen
Corrections Counselor II.

**PRE-RELEASE:** Mr. DeFoy has not participated in any form of pre-release programming since his arrival at SCI-Houtzdale.

Steve Kechisen
Corrections Counselor II

**COUNSELOR'S EVALUATION:** Mr. DeFoy, age 48, is a convicted parole violator serving backtime (4o months) on an original 10 to 20 year sentence for Robbery. He currently has a 6 ½ to 3 year detainer sentence for IDSI, Statutory Rape and Corrupting the Morals of a Minor. Mr. DeFoy was refused reparole at his last review and as recorded on 7-21-98 will be reviewed in June 2000.

Mr. DeFoy was received at Houtzdale 5-8-96 from SCI-Dallas. Since his last parole interview, he has earned very good housing/work reports and has consistently done this since his transfer to Houtzdale. However there has been no program involvement since his last review.

Steve Kechisen
Corrections Counselor II

**STAFF RECOMMENDATIONS:**

Mr. DeFoy, age 48, is currently serving backtime on an original 10 to 20 year sentence for the offense of Robbery With Accomplice. He has a 6 ½ to 13 year detainer sentence for the offenses of IDSI, Statutory Rape and Corruption Morals of Minor. He refuses to participate in sex offender treatment. Based upon his refusal to participate in sex offender treatment, Staff does not support parole. He was informed of this decision and all aspects of Act 159.

John M. McCullough, Superintendent

5/11/06

Date

JMM:SK:sjh