**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT LEE DEFOY, | } | |
| | } | |
| Petitioner, | } | |
| | } | No. 00-110 Erie |
| vs. | } | Judge McLaughlin |
| | } | Magistrate Judge Baxter |
| JOHN M. MCCULLOUGH, Superintendent; | } | |
| D. MICHAEL FISHER, Attorney General; | } | |
| and the PENNSYLVANIA BOARD OF | } | |
| PROBATION AND PAROLE, | } | |
| | } | ***Electronically Filed.*** |
| Respondents. | } | |

**STATE RESPONDENTS' BRIEF IN OPPOSITION TO
PETITIONER'S MOTION FOR SUMMARY JUDGMENT**

This case was remanded from the Third Circuit to address the merits of the Petition for Writ of Habeas Corpus filed by Robert Lee DeFoy ("DeFoy"), petitioner herein.  See DeFoy v. McCullough, 393 F.3d 439, 445 (3d Cir. 2005).  Following extensive discovery, DeFoy has now filed a brief in support of his request for relief. DeFoy argues that his Fifth Amendment privilege against self-incrimination was violated when the Pennsylvania Board of Probation and Parole ("the Board") refused his request for parole based on his refusal to participate in sex offender treatment programming.[1]

In this brief, DeFoy focuses on the Board Action issued on August 14, 1997, which refused parole, ordered participation in a prescriptive program plan including sex offender treatment and listed DeFoy for parole review on or after June, 1998.  See

---

[1] DeFoy asserts in his motion that "the Parole Board denied Mr. DeFoy reparole because he would not admit guilt to these crimes."  See Petitioner's Motion for Summary Judgment, at 1.  However, it is clear from the record that has been created that the Board's decisions were based on DeFoy's refusal to participate in prescribed sex offender treatment.  Although it is not denied that this treatment required admissions as part of the rehabilitative process, there was never any requirement that DeFoy "admit his guilt to these crimes" *to the Board*.

Petitioner's Exhibit K.  However, DeFoy has never challenged this 1997 Board Action in either state of federal court.  The petition which initiated the instant action was filed on or about April 12, 2000 (Doc. # 1), following a state court challenge to the Board Action issued in July of 1998.  See Petitioner's Exhibit M.  Thus, in the first instance, any claim based on the 1997 Board Action is time barred.  Indeed, "[u]nder the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus must be filed within one year from the date on which the judgment becomes final by the conclusion of direct review or the expiration of the time for seeking such review." Horning v. Lavan, 197 Fed.Appx. 90, 91 n. 1 (3d Cir. 2006)(citing 28 U.S.C. § 2244(d)(1)(A)).

The Third Circuit has determined that there is no available state process in Pennsylvania for the exhaustion of Fifth Amendment challenges like the one brought by DeFoy.  See DeFoy v. McCullough, 393 F.3d at 445.  In order to present a timely challenge to the 1997 Board Action, DeFoy would have needed to file his federal petition within one year of the Board's decision, or by August 14, 1998.  This he did not do.  Consequently, any claim arising from the Board's 1997 decision is time barred.[2]  See Timmons v. Diguglielmo, 2006 WL 2934827 (E.D.Pa. 2006); Jones v. Wilson, 2006 WL 1580257 (W.D.Pa. 2006).

Furthermore, albeit in the context of a habeas petition asserting an *ex post facto* violation, this Court has concluded that, because the appropriate remedy "would be a new

---

[2] The State Respondents recognize that it was in this very case that the Third Circuit made this ruling.  However, had DeFoy made a timely challenge in any court to the Board's 1997 decision, any argument on the time bar would likely be decided in his favor because AEDPA has a tolling provision that excludes periods of time devoted to state court review of the challenged judgment.  See 28 U.S.C. § 2244(d)(2).  Yet, it is clear from the record that DeFoy's challenge in this case began with the Board's 1998 decision.  DeFoy never made any challenge to the 1997 Board Decision, in state court or federal court, timely or not.  Thus, any claim based on that decision is time barred.

hearing before the Board applying the appropriate standard," all challenges to *prior* parole denials are moot. See Bartholomew v. Pennsylvania Board of Probation and Parole, 2006 WL 1669899, *1 (W.D.Pa. 2006)(citing Johnson v. Lavan, 2004 WL 1622051 (E.D.Pa. 2004)(adopting Magistrate Judge's Report at 2004 WL 1291973, at *4 n. 4) and Gauche v. Lavan, 2005 WL 1324859 (M.D.Pa. 2005)).  See also McCole v. Pennsylvania Board of Probation and Parole, 2006 WL 2792212 (W.D.Pa. 2006).

Instantly, because DeFoy's claim is –like an *ex post facto* claim– based on a claim that the Board violated his Fifth Amendment rights by its improper consideration of certain information –i.e., his failure to participate in prescribed sex offender treatment– when making its parole decision, it would seem that the appropriate remedy in this case, too, "would be a new hearing before the Board applying the appropriate standard." Accordingly, under this Court's reasoning in Bartholomew, all of DeFoy's parole decisions made prior to the latest one challenged –including the 1997 Board Action– are moot.  See Bartholomew, supra.  Nevertheless, because DeFoy submitted a timely challenge to the Board's decision to refuse parole in 1998, he still presents a justiciable claim, specifically, whether, when reviewing DeFoy's suitability for release on parole, the Board's consideration of his refusal to participate in sex offender treatment programming prescribed by both the Board and the Pennsylvania Department of Corrections ("DOC") violated DeFoy's Fifth Amendment right against self incrimination.

There can be no doubt that the Fifth Amendment protects important rights governing the interplay between the government and its citizens. See, e.g., Michigan v. Tucker, 417 U.S. 433 (1974); Kastigar v. United States, 406 U.S. 441 (1972) and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).  Significant

among even these important rights, however, is the Fifth Amendment's privilege against self-incrimination.  As former Chief Justice Rehnquist once observed,

> At this point in our history virtually every schoolboy is familiar with the concept, if not the language, of the provision that reads: "No person . . . shall be compelled in any criminal case to be a witness against himself...."  This Court's decisions have referred to the right as "the mainstay of our adversary system of criminal justice," Johnson v. New Jersey, supra, 384 U.S. [719], at 729, 86 S.Ct. [1772], at 1779 [(1966)], and as 'one of the great landmarks in man's struggle to make himself civilized.' Ullmann [v. United States], supra, 350 U.S. [422], at 426, 76 S.Ct. [497], at 500 [(1956)].  It is not surprising that the constitution of virtually every State has a comparable provision.  8 J. Wigmore, Evidence § 2252 (McNaughton rev. 1961).

Michigan v. Tucker, 417 U.S. at 439.

And critical to this case, inmates do not forfeit the protection offered by the Fifth Amendment's privilege against self-incrimination simply by reason of conviction of a crime or imprisonment.  See Minnesota v. Murphy, 465 U.S. 420, 426 (1984).  See also Baxter v. Palmigiano, 425 U.S. 308, 316 (1976).  Based on a textual reading of the Fifth Amendment, there are two essential components to a claim asserting a violation of the privilege.[3]  First, an individual's testimony must be compelled, see Schmerber v. California, 384 U.S. 757, 761 (1966)("the privilege protects an accused only from being compelled to testify against himself"); and second, the compelled testimony must be used against the individual at a criminal trial, see Chavez v. Martinez, 538 U.S. 760, 769 (2003)("mere coercion does not violate the text of the Self-Incrimination Clause absent

---

[3] The Supreme Court has determined that the Fifth Amendment's protection against compelled self-incrimination applies to the States through the Fourteenth Amendment's Due Process Clause.  See Pennsylvania v. Muniz, 496 U.S. 582, 588 n. 5 (1990)(citing Malloy v. Hogan, 378 U.S. 1 (1964)).

use of the compelled statements in a criminal case against the witness"). However, in the present context, DeFoy is unable to establish either element, and therefore cannot sustain his claim.

Since the time that DeFoy first raised this claim in his petition in 2000, there has been significant discussion regarding whether an inmate's Fifth Amendment rights are implicated in sex offender treatment programs that require the inmate to make admissions of sexual misconduct that might be used in a future prosecution. Invariably, however, it has been determined that, under the circumstances presented by this case, no Fifth Amendment violation is established. DeFoy was denied parole by the Board in 1997, 1998 and 2000, based largely if not entirely on his refusal to participate in sex offender treatment. DeFoy completed service of the maximum sentence on his Robbery conviction on August 7, 2000. DeFoy then began serving the sentence imposed on his sex offense convictions, and is currently in the custody of the DOC. Under these circumstances, no violation of DeFoy's Fifth Amendment privilege against self-incrimination is established. Accordingly, his Petition for Writ of Habeas Corpus should be dismissed, and a Certificate of Appealability should be denied.[4]

The usual starting point for much of the discussion of the parameters of an inmate's Fifth Amendment right and the extent to which the privilege against self-incrimination is implicated in sex offender treatment programs which require the inmate to admit guilt to sexual misconduct is <u>McKune v. Lile</u>, 536 U.S. 24 (2002)(adverse

---

[4] DeFoy has included in his motion an extensive recitation of the relevant factual circumstances and considerations involved in this case. The State Respondents generally concur with DeFoy's presentation of these facts and, consequently, will not supply a separate counter statement of facts. However, the State Respondents also incorporate all prior responses made to DeFoy's petition for writ of habeas corpus.

consequences faced by state prisoner for refusing to make admissions required for sex offender treatment program not so severe as to amount to compelled self-incrimination).

In <u>McKune v. Lile</u>, the prisoner actually faced changes in institutional status for refusing to make the required disclosures. <u>See</u> <u>McKune v. Lile</u>, 536 U.S. at 38, 43-45. Consequently, the Court addressed aspects of the claim under <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), finding that "[a] prison clinical rehabilitation program, which is acknowledged to bear a rational relation to legitimate penological objective, does not violate the privilege against self-incrimination if the adverse consequences an inmate faces for not participating are related to the program objectives *and do not constitute atypical and significant hardships in relation to the ordinary incidents of life*." <u>See</u> <u>McKune</u>, 536 U.S. at 37-38 (Kennedy, J.)(emphasis supplied).[5]  However, the Supreme Court did not specifically address the question of whether an inmate's Fifth Amendment rights are violated where his failure to participate in a sex offender treatment program results in the denial of parole.

Indeed, because the inmates in <u>McKune</u> argued that the imposition of sanctions for their refusal to participate in sex offender programming caused the violation of their Fifth Amendment rights –a claim that cannot made in this case– a more appropriate foundation for the present discussion can be found in <u>Ainsworth v. Stanley</u>, 317 F.3d 1 (1st Cir. 2002)("<u>Ainsworth II</u>").   In <u>Ainsworth II</u>, several inmates who had been

---

[5] Justice Kennedy wrote for the Court, joined by Chief Justice Rehnquist and Justices Scalia and Thomas.  Justice O'Connor concurred in the Judgment.  Justice Stevens wrote a dissenting opinion, which was joined by Justices Souter, Ginsburg and Breyer.  As a plurality decision, the narrower ground of decision found in Justice O'Connor's opinion is viewed as controlling.  <u>See</u>, <u>e.g.</u>, <u>United States v. Antelope</u>, 395 F.3d 1128, 1133 n. 1 (9th Cir. 2005).  Nevertheless, Justice O'Connor concluded that there was no compulsion based on the State's policy and therefore no violation of the Fifth Amendment.  <u>See</u> <u>McKune v. Lile</u>, 536 U.S. at 48-54.

convicted of sex offenses "claim[ed] that the DOC violated their Fifth Amendment right against self-incrimination by requiring them to disclose their histories of sexual misconduct [in order] to participate in the DOC's Sex Offenders Program ("SOP")." Ainsworth v. Stanley, 317 F.3d at 2. Although no sanctions were imposed by the DOC for refusing to participate, the court noted that "nonparticipation in the SOP almost always results in an inmate being denied parole." Id., at 3.

The First Circuit had initially affirmed the district court's grant of the New Hampshire DOC's motion to dismiss in Ainsworth v. Risley, 244 F.3d 209 (1st Cir. 2001) ("Ainsworth I"). However, the United States Supreme Court thereafter granted the inmates' petition for certiorari, see Ainsworth v. Stanley, 536 U.S. 953 (2002), and vacated and remanded this decision for reconsideration in light of its recent decision in McKune v. Lile. In rejecting the inmates' claim following this remand, the Ainsworth II court first examined the Supreme Court's decision in McKune. After concluding that the McKune plurality would likely not regard the denial of parole as a constitutionally impermissible consequence of New Hampshire's SOP program,[6] the Ainsworth II court nonetheless observed that the Court provided "no clear guideposts" as to how their case should be decided. Consequently, the First Circuit started from the premise that, while "historically the Supreme Court had described compulsion in relatively broad terms…. in more recent decisions the Court had held that the analysis is more circumscribed in the prison context." See Ainsworth II, 317 F.3d at 4.

---

[6] The Ainsworth II court noted that, "while the plurality apparently felt it noteworthy that a loss of parole was not at stake in Kansas, whereas it is in this case, it is far from clear that the plurality would regard such a consequence as constitutionally impermissible." See Ainsworth v. Stanley, 317 F.3d at 4.

The court then relied on what it termed the "'watershed case'" of <u>Turner v. Safley</u>, 482 U.S. 78 (1987), to reaffirm the proposition that in the prison context, courts are to accord substantial latitude to the state's judgment. Accordingly, the <u>Ainsworth II</u> court determined that because "[o]nly "unreasonable" burdens are proscribed[, i]n determining whether a burden is unreasonable, we will look to:

> whether the state's policy serves a valid governmental interest; the extent to which the prisoner is foreclosed or burdened in exercising his rights; and the presence or absence of reasonable alternatives for the government to achieve the same ends by other means without significant cost or impairment of the governmental interest at stake.
>
> [<u>Ainsworth v. Risley</u>, 244 F.3d] at 214 (<u>quoting</u> <u>Beauchamp</u>[ <u>v. Murphy</u>], 37 F.3d [700,] at 705 [(1st Cir. 1994)](<u>citing</u> <u>Turner</u>[<u>v. Safley</u>], , 482 U.S. [78,] at 89-91, 107 S.Ct. 2254 [(1987)])(internal quotations omitted)).

<u>Ainsworth v. Stanley</u>, 317 F.3d at 5.

Following this analysis, the First Circuit concluded that the burden imposed by the DOC's SOP program "is not an unreasonable one." <u>Id.</u> The First Circuit initially recognized that, based on "criminological studies and social science research," the State had "a valid government interest in establishing the SOP, and in requiring sex offenders to admit past conduct to participate in it." <u>Id.</u> (<u>quoting</u> <u>Ainsworth I</u>, 244 F.3d at 215).

In examining the extent of the burden imposed on inmates, the court conceded that there was "some burden placed on [the inmates'] exercise of their Fifth Amendment rights, but that the extent of that burden was mitigated by three factors:" first, "parole involves relief from a penalty that has already been imposed –the full period of incarceration to which [the inmates] were sentenced"; second, participation in the sex offender program is not mandatory, thus affording the inmates a choice, "notwithstanding the consequences of nonparticipation;" and (3) "the denial of parole was not entirely

8

automatic." <u>See</u> <u>Ainsworth II</u>, 317 F.3d at 5. The court found that based on these mitigating factors, the burden imposed on the inmates was minimal.

Lastly, although the <u>Ainsworth II</u> court considered whether there were reasonable alternatives available to the State, it concluded that such alternatives generally implicated policy choices best left "…'in the state's hands.'" <u>Ainsworth II</u>, 317 F.3d at 5 (<u>quoting</u> <u>Ainsworth I</u>, 244 F.3d at 221).

The First Circuit then reiterated and endorsed its "ultimate conclusion" from <u>Ainsworth I</u>:

> Weighing these factors, and drawing upon the meaning of compulsion under the Fifth Amendment developed by the precedents we have cited, we conclude that the reduced likelihood of parole for refusing to participate in the SOP does not constitute a penalty sufficient to compel incriminating speech in violation of the Fifth Amendment.
>
> <u>Ainsworth</u>, 244 F.3d at 221. Having duly considered our decision in light of <u>McKune</u>, we now adhere to our earlier judgment.

<u>Ainsworth v. Stanley</u>, 317 F.3d at 6.[7]

Thus, <u>Ainsworth II</u> holds that, because there was no element of compulsion in the New Hampshire program despite "the reduced likelihood of parole for refusing to participate in the SOP," there was no violation of the inmate's privilege against self-incrimination under the Fifth Amendment. Applying this analysis to DeFoy's case leads to the same conclusion. First, the valid governmental interest in inmates receiving sex offender treatment is by now widely recognized. In consideration of the extent of the burden on DeFoy's Fifth Amendment privilege, all three mitigating factors noted in <u>Ainsworth II</u> are implicated in both Pennsylvania's sex offender treatment programming

---

[7] The Supreme Court declined to review this decision. <u>See</u> <u>Ainsworth v. Stanley</u>, 538 U.S. 999 (2003)(denying inmates' petition for *certiorari*).

as well as its sentencing and parole scheme.  Indeed, in the Commonwealth of Pennsylvania, "parole is not a matter of right." Bachman v. Jeffes, 488 F.Supp. 107, 109 (M.D.Pa. 1980)(citing Commonwealth v. Brittingham, 442 Pa. 241, 246 (1971)); Commonwealth ex rel Hendrickson v. State Boar of Parole, 409 Pa. 204, 207 (1962). Rather, parole is discretionary, within the exclusive paroling authority of the Parole Board.  See Weaver v. Pennsylvania Board of Probation and Parole, 688 A.2d 766, 770 (Pa. Cmwlth. 1997).

Accordingly, under Pennsylvania law, completion of an inmate's minimum sentence only establishes eligibility to be paroled and not entitlement to be paroled.  See 61 P.S. § 331.21 and 42 Pa.C.S. § 9756(c).  See also Evans v. of Pennsylvania Board Probation & Parole, 820 A.2d 904 (Pa. Cmwlth. 2003).  The sentence actually served by DeFoy in his case was his maximum sentence –a term of twenty years.  This sentence expired on August 7, 2000, when DeFoy was credited with exactly twenty years of confinement in the custody of the Pennsylvania Department of Corrections.[8]

Thus, initially, the fact that DeFoy was required to serve his maximum sentence in and of itself does not implicate either the Constitution or the Fifth Amendment.  See, e.g., Trivett v. Klem, 2006 WL 3762068, at *5 ("That the PBPP has exercised discretion to require completion of the prescriptive program does not mean that Petitioner has been subjected to more severe punishment than that imposed by the sentencing court.  The date when he has an absolute entitlement to release remains unchanged").  Moreover, DeFoy's

---

[8] As reflected in several prior filings in this case, DeFoy's parole violation maximum date was recalculated to account for backtime owed due to his recommitment as a Convicted Parole Violator in 1992.

refusal to participate in sex offender treatment did not affect his eligibility for parole, he remained at all times remained eligible for parole.[9]

Pennsylvania's sex offender treatment programming is also voluntary in the sense that there is no direct sanction, penalty or adverse consequence for refusing to participate. It is well settled that the Constitution is not implicated by conditional programs which operate as a benefit to the inmate who chooses to take advantage of the offer (even though an inmate who refuses to satisfy the conditions may appear to be relatively disadvantaged).  The seminal case in this regard is <u>Ohio Adult Parole Authority v. Woodard</u>, 523 U.S. 272 (1998).[10]  <u>See</u> <u>Randall v. Wilson</u>, 2006 WL 3196539, *8 (W.D.Pa. 2006)("Petitioner is serving a lawfully-imposed sentence: if parole is granted, he would obtain a benefit; if it is denied, he is in no worse position than he was before"). <u>See</u> <u>also</u> <u>Doe v. Sauer</u>, 186 F.3d 903, 906 (8th Cir. 1999)("Notwithstanding the prohibition on the state of penalizing a person who invokes his Fifth Amendment right, 'prison officials may constitutionally deny benefits to a prisoner who, by invoking his privilege against self-incrimination, refuses to make statements necessary for his rehabilitation, as long as their denial is based on the prisoner's refusal to participate in his

---

[9] In 2000, the Pennsylvania General Assembly enacted a new law which conditioned *eligibility* for parole on participation in sex offender treatment programming.  <u>See</u> 42 Pa. C.S. § 9718.1.  Although the terms of this statute are not applicable to DeFoy because his sex offense convictions predate the effective date of this new law, the fact that a state may condition parole eligibility on participation is self-accusatory sex offender programs lends great weight to the conclusion advanced by the State Respondents that DeFoy's Fifth Amendment rights were not violated in this case.

[10] In <u>Ainsworth I</u>, the court found the Supreme Court's decision in <u>Woodard</u> to be quite instructive on the question of whether the burden on the inmate's right was mitigated because the SOP was a voluntary program –even though a negative consequence would invariably flow from the decision to not participate.  The court concluded that the "choice about whether to disclose past misconduct is voluntary as <u>Woodard</u> understands the term."  <u>See</u> <u>Ainsworth v. Risley</u>, 244 F.3d at 218.

rehabilitation and not his invocation of his privilege"'')(citation omitted). <u>Cf.</u> <u>United States v. Lee</u>, 3 15 F.3d 206, 212 (3d Cir. 2003)(random polygraph tests required as condition of supervised release did not convert defendant's probation interviews into custodial situations and do not constitute compulsion for Fifth Amendment purposes).

Finally, as the <u>Ainsworth II</u> court determined, reasonable alternatives to lessen the burden on an inmate's privilege under the Fifth Amendment are better left to the States. Thus, using <u>Ainsworth II</u> as a guide, this Court should conclude that "the reduced likelihood of parole for refusing to participate in the SOP does not constitute a penalty sufficient to compel incriminating speech in violation of the Fifth Amendment." <u>See</u> <u>Ainsworth v. Stanley</u>, 317 F.3d at 6.

Judge Vanaskie of the Middle District of Pennsylvania reached this same conclusion, finding the approach used by the <u>Ainsworth II</u> court "persuasive" in his decision in <u>Trivett v. Klem</u>, 2006 WL 3762068, *4-5 (M.D.Pa. 2006). However, in <u>Burkholder v. Wolfe</u>, 2007 WL 90427, *4-5 (M.D.Pa. 2007), Judge Vanaskie subsequently found "yet another compelling reason for rejecting [the Petitioner's] Fifth Amendment claim: the [Supreme] Court has held that 'mere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness,' <u>Chavez v. Martinez</u>, 538 U.S. 760, 769 (2003), and there has been no use of any statement (or of [the Petitioner's] silence) in any criminal case." <u>Id.</u>, at *6. Thus, in addition to finding no compulsion in this situation, our courts have also concluded that there is no violation of the Fifth Amendment because no compelled testimony is being used against the inmate at a criminal trial.

Judge Vanaskie began his discussion in <u>Burkholder v. Wolfe</u> with <u>Thorpe v. Grillo</u>, 80 Fed.Appx. 215 (3d Cir. 2003), <u>cert. denied</u>, 542 U.S. 924 (2004), wherein the Third Circuit –relying in part on <u>Chavez v. Martinez</u>– ruled that the DOC policy which excluded inmates who would not admit guilt from sex offender treatment programs (and thereby lessened their chance at obtaining parole) did not force such inmates to incriminate themselves in a criminal trial in violation of the Fifth Amendment.  Said the court:

> Thorpe's Fifth Amendment claim is unpersuasive.  The DOC's policy did not force Thorpe to incriminate himself in a criminal trial.  <u>See</u> <u>Chavez v. Martinez</u>, 538 U.S. 760, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003)(suggesting that violations of prophylactic rules safeguarding the right against self-incrimination do not amount to actual constitutional violations as required for civil liability under § 1983; <u>see</u> <u>also</u> <u>Renda v. King</u>, 347 F.3d 550, 559 (3d Cir. 2003)(stating that "it is the use of coerced statements during a criminal trial ··· that violates the Constitution") (citation omitted).  Moreover, Thorpe did not receive additional punishment for maintaining his innocence under the DOC's policy.  His refusal to admit his guilt and the resulting inability to participate in the treatment program did not extend his term of his incarceration or automatically deprive him of consideration for parole.  <u>See</u> <u>McKune v. Lile</u>, 536 U.S. 24, 38, 43-45, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002)(Kennedy, J., plurality)(characterizing compulsion under the Fifth Amendment as hinging on the automatic nature and severity of the threatened punishment).  Thorpe was not entitled to parole, just to consideration for parole.  The DOC's policy did not automatically deprive him of consideration for parole, although it may have been influential in that respect.  Therefore, the District Court did not err in entering summary judgment in favor of the Prison Officials on Thorpe's Fifth Amendment self-incrimination claim.

<u>Thorpe v. Grillo</u>, 80 Fed.Appx. at 219-220.[11]

---

[11] Addressing the compulsion element of a Fifth Amendment claim, the <u>Thorpe</u> court also concluded that there was no violation of the inmate's Fifth Amendment rights because

Critically, the United States Supreme Court held in <u>Chavez</u> that "a violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case." <u>See</u> <u>Chavez v. Martinez</u>, 538 U.S. at 770. <u>Cf.</u> <u>Withrow v. Williams</u>, 507 U.S. 680, 691 (1993)("in protecting a defendant's Fifth Amendment privilege against self-incrimination, <u>Miranda</u> safeguards 'a fundamental *trial* right'")(<u>citing</u> <u>United States v. Verdugo-Urquidez</u>, 494 U.S. 259, 264 (1990)). <u>See</u> <u>also</u> <u>Williams v. Martinez</u>, 2006 WL 2588726, at *5 (E.D.Pa. 2006)("<u>Chavez</u> strongly suggests that the Fifth Amendment is not implicated here because Petitioner is not being forced to incriminate himself in a criminal proceeding"). Several courts have followed up on the Third Circuit's reference in <u>Thorpe</u> to <u>Chavez v. Martinez</u>, <u>supra</u>, and <u>Renda v. King</u>, 347 F.3d 550, 559 (3d Cir. 2003), to conclude that the Fifth Amendment is not

---

there was no sanction for his refusal to participate in the DOC's sex offender treatment program:

> Moreover, Thorpe did not receive additional punishment for maintaining his innocence under the DOC's policy. His refusal to admit his guilt and the resulting inability to participate in the treatment program did not extend his term of his incarceration or automatically deprive him of consideration for parole. <u>See</u> <u>McKune v. Lile</u>, 536 U.S. 24, 38, 43-45, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (Kennedy, J., plurality)(characterizing compulsion under the Fifth Amendment as hinging on the automatic nature and severity of the threatened punishment). Thorpe was not entitled to parole, just to consideration for parole. The DOC's policy did not automatically deprive him of consideration for parole, although it may have been influential in that respect. Therefore, the District Court did not err in entering summary judgment in favor of the Prison Officials on Thorpe's Fifth Amendment self-incrimination claim.

<u>Thorpe v. Grillo</u>, 80 Fed.Appx. at 219-220.

violated in the context of self-accusatory sex offender treatment programs if a compelled statement is not used against the inmate in a criminal proceeding.

Indeed, Judge Gibson of this Court has reached the same result under near identical circumstances:

> The requirements of both the DOC and the Parole Board which demand that Petitioner admit to the sexual crimes he was convicted of, do not constitute compulsion under the Fifth Amendment, because Petitioner, like Martinez, was 'never made to be a "witness" against himself in violation of the Fifth Amendment's Self-Incrimination Clause····' His statements were never admitted as testimony against him in a criminal case, therefore, Petitioner fails to establish that his Fifth Amendment rights were violated. [Chavez v. ] Martinez, 538 U.S. at 767, 123 S.Ct. 1994.

Folk v. Attorney General of Commonwealth of Pennsylvania, 425 F.Supp.2d 663, 667 (W.D.Pa. 2006).[12]  See also Sullivan v. Pennsylvania Board of Probation and Parole, 2006 WL 1050526, *2 (W.D.Pa. 2006); Perry v. Vaughn, 2005 WL 736633, *10 (E.D.Pa. 2005).

Instantly, DeFoy was never "compelled to be a witness against himself in a criminal case" because, ultimately, the grant of his new trial was overturned on appeal. Thus, even if there is some argument that DeFoy was subject to compulsion as a result of the requirement that he participate in sex offender treatment, there is no doubt that his Fifth Amendment rights were never violated because he never provided any incriminating statements and neither his silence nor his statements were used against him

---

[12] Judge Gibson further noted that, although Chavez was a plurality decision of the Supreme Court, it is consistent with prior decisional law in this Circuit.  See Folk, 425 F.Supp.2d at 667 ("the binding authority of Renda v. King, 347 F.3d 550, 559 (3d Cir. 2003)…. [and] our prior decision in Giuffre [v. Bissell, 31 F.3d 1241 (3d Cir. 1994)] compel[ ] the conclusion that *it is the use of coerced statements during a criminal trial*, and not in obtaining an indictment, that violates the Constitution")(emphasis in original).

in a criminal proceeding.  See Burkholder v. Wolfe, 2007 WL 90427, at *4-5.  Thus, DeFoy has no remediable claim to parole under the Fifth Amendment.

A case raising similar concerns was decided by the Seventh Circuit in Allison v. Snyder, 332 F.3d 1076 (7th Cir. 2003).  In that case, civil detainees filed a Section 1983 action seeking damages and injunctive relief from state prison officials based on the operation of a pretrial diversion for sex offenders with mental illness.  Under the program established by the Illinois Sexually Dangerous Persons Act,[13] "[p]ersons charged with sex offenses … may be diverted before trial to civil confinement, if a mental illness of at least one year's duration led to the criminal conduct.  Those who complete treatment successfully are released and the criminal charges dismissed."  Id., at 1078.  As an essential part of this program,

> Illinois has concluded that the best treatment for sex offenders is group therapy in which people admit their crimes (to others as well as to themselves), own up to and confront the urges that drive them to perpetrate heinous acts, and then assist each other in overcoming those urges. Illinois administers polygraph examinations to check whether participants in this program are being candid.

Id., at 1078.

The plaintiffs in Allison argued that the treatment program violated their rights under the Fifth Amendment because it compelled them to make incriminating statements regarding their subject offenses which could then be used against them if they failed to successfully complete the program and the underlying criminal charges were reinstated. The court rejected their claim, relying in part upon Chaves v. Martinez, supra, finding that the Fifth Amendment was not implicated because no statements were used in any criminal proceeding.  The Allison court then made a very cogent observation:

---

[13] This Act can be found at 725 ILCS §§ 205/1.01-12.

> no matter what one makes of the risk that some day Illinois
> will use against a detainee evidence gathered in its
> treatment program, no damages remedy is available.
> Plaintiffs would be free to ask the court to suppress
> evidence offered against them; they are entitled to no more
> than that option.

Id., at 1080.

As applied to the case *sub judice*, under prevailing Fifth Amendment jurisprudence, no violation occurred with respect to DeFoy and that had he provided statements in his sex offender treatment program that were subsequently offered against him in a criminal proceeding, his remedy would be to then seek suppression of the statements in that criminal proceeding.  Cf. Minnesota v. Murphy, 465 U.S. 420 (1984) (finding that Fifth Amendment was not violated by requirement of probation that defendant "be truthful with [his] probation officer 'in all matters'" on pain of recommitment because, *inter alia*, the defendant would have been provided with a revocation hearing at which could have interposed the privilege as a reason for his noncompliance with this condition).

Nevertheless, against this legal backdrop, DeFoy argues that his Fifth Amendment rights were violated where he refused to participate in sex offender treatment because he had obtained a new trial on his sex offense convictions and his failure to participate in sex offender treatment was used as a basis for denying his request for parole.  However, initially, DeFoy ignores the great weight of authority on this issue that has been established, both in this district and in this Circuit.  Indeed, the courts within the Third Circuit have relied on the various principles announced in McKune, Woodard, Ainsworth and/or Chavez to find that inmates in DeFoy's situation do not suffer a violation of their

Fifth Amendment rights by having the Board consider their refusal to participate in sex offender treatment when making parole decisions.

For example, in the case of <u>Forsyth v. Walters</u>, 38 Fed.Appx. 734 (3d Cir. 2002), the Department of Corrections' refused to admit an inmate into a pre-release program because the inmate would not take responsibility for his criminal acts and admit his guilt. The inmate argued that such a requirement to a pre-release program violated his Fifth Amendment right against compelled self-incrimination. The Third Circuit rejected the inmate's arguments, finding that the required admissions were not compelled. Said the Court:

> Forsythe was not 'penalized' within the meaning of the Fifth Amendment because his sentence was never changed.[2] Therefore, we find that conditioning Forsythe's acceptance into the pre-release program upon an admission of guilt does not violate the Fifth Amendment. Forsythe's situation is similar to that of inmates seeking clemency under the regime the Court examined in <u>Woodard</u>. Consideration for clemency, like consideration for defendant's pre-release program, is voluntary. Since both are voluntary programs, they lack the compulsion that is the condition precedent to violating the privilege against self-incrimination. Both programs are 'benefits' afforded to eligible inmates; there is no right to be admitted to either.
>
> _____
>
> [2] In rejecting Forsythe's claim, we are not unmindful of the fact that it is clearly more desirable to serve one's sentence on the street (i.e. parole), than behind the bars of a prison or a county jail. However, our recognition of that reality does not alter our reading of the Supreme Court's holding in <u>Woodard</u>, and the other cases we have set forth above.

<u>Forsythe v. Walters</u>, 38 Fed.Appx. at 736 (footnote 3 omitted).

Similarly, in <u>Wolfe v. Pennsylvania Department of Corrections</u>, 334 F. Supp. 2d 762 (E.D.Pa. 2004), the court found no remediable Fifth Amendment claim under similar circumstances, explaining that

> [B]ecause the SOP Program is voluntary and the consequences of participating in the program, although unpleasant, do not rise to the level of constitutional infirmity and because the program does not compel the inmates to incriminate themselves in a criminal proceeding, plaintiffs' Fifth Amendment and Fourteenth Amendment self-incrimination claim fails.

<u>Wolfe v. Pennsylvania Department of Corrections</u>, 334 F. Supp. 2d at 773.  <u>Accord</u> <u>Williams v. Martinez</u>, 2006 WL 2588726, at *5-6.

Accordingly, the courts in this Circuit have generally followed these salient principles and concluded that an inmate's Fifth Amendment right against self-incrimination is not implicated –either because there is no compulsion or because no compelled statement has been offered against the inmate in a criminal case– where the inmate's refuses to participate in sex offender treatment which requires admissions, even where such refusal may lead to an adverse parole decision.

Nevertheless, DeFoy focuses on the decision in <u>McKune v. Lile</u>, <u>supra</u>, in support of his claim.  In <u>McKune</u>, the inmates who refused to participate in the program because of Fifth Amendment concerns were treated differently based on their refusal by being immediately placed in a relatively disadvantaged position.  Yet, five justices still found that there was no compulsion under the circumstances.  As demonstrated above, DeFoy suffered no change in status as a result of his refusal to participate in sex offender treatment.  DeFoy also seizes upon Justice O'Conner's concurring opinion in <u>McKune v. Lile</u>, observing that "if an inmate has been convicted of a sex offense through a fair criminal process, the inmate must accept the consequences of that conviction, even if the

consequences include potentially longer sentences if the inmate will not participate in treatment.

> In this view, sex offender treatment is part of the criminal process, and any penalty or denied benefit due to a failure to participate in sex offender treatment is acceptable as the imposition of the original punishment imposed through a fair criminal process.

Petitioner's Motion for Summary Judgment, at 15-16.

DeFoy then goes on to argue that "[t]he Fifth Amendment is violated, however, if an inmate is penalized not as part of the criminal process but rather as part of a government attempt to compel testimony. In this context, any penalty that is capable of compelling a person to be a witness against himself is illegitimate." Id., at 16. However, DeFoy's case falls under the first category, not the second. He was convicted through a fair criminal process and as part of that conviction and sentence was ordered to take sex offender treatment; his refusal to participate in such programming was at the peril of injuring his chances of parole from that conviction and sentence obtained through a fair criminal process. Even Justice O'Connor seems to agree that although there may be adverse consequences accompanying the choice to exercise a constitutional right, such consequences do ordinarily not amount to compulsion under the Fifth Amendment. See McKune v. Lile, 536 U.S. at 53 (O'Connor, J., concurring)("Forcing defendants to accept such consequences seems to me very different from imposing penalties for the refusal to incriminate oneself that go beyond the criminal process and appear, starkly, as government attempts to compel testimony").

Although it may seem to DeFoy that he has been "penalized not as part of the criminal process but rather as part of a government attempt to compel testimony," see Petitioner's Motion for Summary Judgment, at 16, the law does not view it in these

terms. DeFoy's refusal did not subject him to an enhanced penalty or an increase in the sentence he was already serving. See, e.g., Forsyth v. Walters, supra, and Thorpe v. Grillo, supra. See also Randall v. Wilson, 2006 WL 3196539, at *8 ("Petitioner is serving a lawfully-imposed sentence: if parole is granted, he would obtain a benefit; if it is denied, he is in no worse position than he was before").

Thus, the fact that DeFoy declined the opportunity to potentially reduce the time he needed to serve against his maximum sentence when he refused to participate in sex offender treatment that was mandated by the Board is of no consequence with respect to any Fifth Amendment right he may have. Indeed, it is well established that an inmate's refusal to take advantage of a State's conditional program which might lead to a benefit does not violate the Constitution. See Ohio Adult Parole Authority v. Woodard, supra. Although DeFoy argues that there was in his case a "quintessential government attempt to compel testimony" where the Commonwealth demanded that Mr. DeFoy admit his guilt to a pending charge as a condition of being paroled on an unrelated charge,"[14] the courts have disagreed.

DeFoy also attempts to rely on the line of so-called "penalty cases" to support his claim. However, as discussed above, when reviewing Pennsylvania's sentencing and parole scheme, the courts have consistently refused to find that an adverse parole decision

---

[14] See Petitioner's Motion for Summary Judgment, at 16. It is further noted that although DeFoy has implied that there was a coordinated effort involving the Board, the DOC and the prosecutorial authorities in York County to engage in this "stark attempt by the Commonwealth to compel [his] testimony," there is absolutely no evidence of any such collusion on the part of the different Commonwealth agencies involved, or that the Board or the DOC had any interest other than ensuring that DeFoy received and participated in a course of education and treatment that would reduce the risk that he would re-offend if released back into society.

constitutes a penalty.  Consequently, any discussion of the penalty cases is not relevant to the determination to be made in this case.  See also United States v. Antelope, 395 F.3d 1128, 1138 (9th Cir. 2005)(observing that the McKune court argued "that a 'critical distinction' between McKune and the penalty cases where the Court found Fifth Amendment violations is that '[t]here is no indication that the [sex offender treatment program] is an elaborate attempt to avoid the protections offered by the privilege against compelled self-incrimination'")(citing McKune v. Lile, 536 U.S. at 40-41).

Moreover, as one court has concluded, this is the wrong approach to the question of whether inmates possess a valid Fifth Amendment right with respect to sex offender treatment programming, where –like DeFoy– the individual has invoked his Fifth Amendment privilege and refused to make incriminating statements:

> Donhauser and McKune concerned individuals who stood on their Fifth Amendment rights, asserted the self-incrimination privilege, and then sought to prevent imposition of the 'penalty' they claimed was related to the permissible exercise of their constitutional rights.  As explained in Minnesota v. Murphy, supra, these penalty cases are different from those in which an individual 'succumbed to the pressure placed on him, failed to assert the privilege, and disclosed incriminating information, which the state later sought to use against him in a criminal prosecution.'  Id. 465 U.S. at 434-35, 104 S.Ct. at 1146. The case of Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), discussed in Minnesota v. Murphy, 465 U.S. at 434-35, 104 S.Ct. at 1146, is the classic example of the latter category of cases, in which it was held that a threat of discharge from employment for exercising the privilege is so powerful a sanction for its exercise that 'the failure to assert the privilege would be excused, and the probationer's answer would be deemed compelled and inadmissible in a criminal prosecution.' Minnesota v. Murphy, 465 U.S. at 435, 104 S.Ct. at 1146. See also, Matter of Matt v. Larocca, 71 N.Y.2d 154, 159, 524 N.Y.S.2d 180, 518 N.E.2d 1172 (answers elicited upon threat of loss of public employment are deemed compelled

and inadmissible in evidence in a subsequent prosecution); People v. Avant, 33 N.Y.2d 265, 271, 352 N.Y.S.2d 161, 307 N.E.2d 230 (1973)(no '"difference of constitutional magnitude between the threat of job loss to an employee of the state, and a threat of loss of contracts to a contractor'") (quoting Lefkowitz v. Turley, 414 U.S. 70, 83-84, 94 S.Ct. 316, 326, 38 L.Ed.2d 274 (1973)). See also, United States v. Harloff, 807 F.Supp. 270, 280-81 (W.D.N.Y. 1992); People v. Corrigan, 80 N.Y.2d 326, 329, 590 N.Y.S.2d 174, 604 N.E.2d 723 (1992). But these cases are rare outside the public employment context. In the ordinary case a defendant must exercise his privilege if he or she wishes; no automatic 'immunity' arises except in cases such as are described above. Immunity is in this state almost entirely a creature of statute except in the public employment/ contract context described above. Cf., Matter of Brockway v. Monroe, 59 N.Y.2d 179, 188, 189-90, 464 N.Y.S.2d 410, 451 N.E.2d 168 (1983); id. 59 N.Y.2d at 190-91, 464 N.Y.S.2d 410, 451 N.E.2d 168 (Jasen, J. dissenting).

Inasmuch as defendant presents no reason to suspect that he was threatened with revocation of probation if he failed to answer the questions that prompted his admissions to the treatment provider and the probation officer, Minnesota v. Murphy, 465 U.S. at 435, 437-38, 104 S.Ct. at 1146, 1148, and because he makes no contention that the inquiries put to him were not relevant to his probationary status, id. 465 U.S. at 435-36 & esp. n. 7, 104 S.Ct. at 1146-47 & esp. n. 7, defendant fails to bring his case within the 'classic penalty situation' in which the failure to invoke the self-incrimination privilege is excused. Id. 465 U.S. at 435, 104 S.Ct. at 1146. For these reasons, defendant's reliance on Donhauser is unavailing to him.

People v. Bercume, 6 Misc.3d 420, 789 N.Y.S.2d 664 (N.Y.Sup. 2004).

DeFoy also places significant reliance on the Ninth Circuit's decision in United States v. Antelope, 395 F.3d 1128, 1138 (9th Cir. 2005). In that case, it was held that, because a defendant retains his right against self-incrimination, if a supervised release condition mandating polygraph testing does not provide for immunity, then the defendant may invoke his privilege and refuse to answer any incriminating questions. In reaching this conclusion, the court observed that "[h]ere we have the 'classic penalty situation'

contemplated in [Minnesota v. Murphy, 465 U.S. 420 (1984)]; [the inmate's] supervised release ended because he would not make potentially self-incriminating statements as required by" the conditions of his supervised release.  See United States v. Antelope, 395 F.3d at 1138-1141.  Yet, in the present situation, DeFoy's chances for release would have been improved by making the statements required by the program, and he could have still made the argument –based on the Fifth Amendment– that his statements could not be used in any future criminal proceeding because they had been compelled.  See Allison v. Snyder, 332 F.3d at 1080 ("Plaintiffs would be free to ask the court to suppress evidence offered against them").  See also Minnesota v. Murphy, supra.  Thus, DeFoy's reliance on United States v. Antelope is unavailing, and his general reliance on the "penalty cases" fails to establish a violation of his Fifth Amendment rights.

Finally, although not argued as such, the fact that DeFoy might be able to establish that the Board has consistently treated all parole eligible inmates who refuse sex offender treatment in the same manner does not establish a violation of DeFoy's –or other any inmates'– constitutional rights.  Because an inmate has no constitutionally protected right or interest in parole and no protected Fifth Amendment right or interest in the refusal of prescribed sex offender treatment, the Board may properly consider the inmate's refusal when making a determination of that inmate's suitability for parole. Simply because the Board treats all who refuse to participate in such prescribed programming in a similar fashion does not establish a violation of DeFoy's Fifth Amendment rights.

Finally, insofar as DeFoy is specifically seeking review of the Board's denial of parole in 1997 (or any subsequent Board decision) based on the particular facts and

circumstances of that determination, <u>see</u> Petitioner's Motion for Summary Judgment, at 1-11, such a claim is not appropriate for this Court. As observed in <u>Anderson v. Pennsylvania Board of Probation and Parole</u>, 2006 WL 1149233 (M.D.Pa. 2006):

> the Board is the sole determiner as to whether an inmate is rehabilitated and able to serve the remainder of his sentence on parole. <u>Myers v. Ridge</u>, 712 A.2d 791, 794 (Pa. Cmwlth. 1998)("It is for the Board alone to determine whether or not a prisoner is sufficiently rehabilitated to serve the remainder of his sentence outside the confines of prison."); <u>Carter v. Muller</u>, 45 F.Supp.2d 453, 457 (E.D.Pa. 1999)(quoting 61 P.S. § 331.19 ("considering a prisoner's participation in treatment is entirely consistent with the Parole Board's duty to 'procure information as full and complete as may be obtainable with regard to the character, mental characteristics, habits, antecedents, connections, and environment' of the prospective parolee.")); <u>see</u> <u>also</u> <u>Weaver v. Pennsylvania Bd. of Probation and Parole</u>, 688 A.2d 766, 775 (Pa. Commw. Ct. 1997)("the Board's requirement that he receive treatment and be 'cured' prior to being released on parole ⋯ is a legitimate requirement imposed by the Board to ensure that a prisoner is suitable for parole").

<u>Anderson v. Pennsylvania Board of Probation and Parole</u>, 2006 WL 1149233, at *2.

The Board is only precluded from relying on constitutionally impermissible considerations such as "race, religion or ethnicity" when making parole decisions. <u>Id.</u> No such reasons are advanced by DeFoy. Consequently, because "it has been repeatedly recognized that Pennsylvania state law does not confer its inmates with a legally protected interest in parole eligibility…. it cannot be concluded that the Board's [ ] decision to deny [ ] parole, and require [ participation] in a sex offender's program was based upon constitutionally impermissible reasons." <u>Id.</u>, at 3. Thus, absent a constitutionally based predicate, there is no basis for federal review of or intervention in the Board's decision to deny DeFoy parole in 1997. Accordingly, the Petition for Writ of Habeas Corpus should be dismissed and a Certificate of Appealability should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, the Petition for Writ of Habeas Corpus should be DISMISSED and a Certificate of Appealability should be DENIED.

Respectfully submitted,

THOMAS W. CORBETT, JR.
Attorney General


    s/ Scott A. Bradley

Office of Attorney General        Scott A. Bradley
6th Floor, Manor Complex        Senior Deputy Attorney General
564 Forbes Avenue        Attorney I.D. No. 44627
Pittsburgh, PA 15219
Phone: (412) 565-3586        Susan J. Forney
Fax:    (412) 565-3019        Chief Deputy Attorney General

Date: February 5, 2007