IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT LEE DeFOY | ) |
| | ) |
| Petitioner | ) |
| | ) |
| v. | ) C.A. No. 00-110 Erie |
| | ) |
| JOHN M. MCCULLOUGH, et al., | ) |
| | ) |
| Respondents. | ) |

**PETITIONER ROBERT LEE DeFOY'S REPLY TO STATE RESPONDENTS'
BRIEF IN OPPOSITION TO PETITIONER'S MOTION FOR SUMMARY JUDGMENT**

AND NOW, comes the Petitioner, Robert Lee DeFoy, by his attorney, Thomas W. Patton, Assistant Federal Public Defender, and files this Motion for Summary Judgment. In support thereof Counsel states:

THE STATE HAS WAIVED ANY STATUTE OF LIMITATIONS DEFENSE

The Commonwealth's response claims that Mr. DeFoy "has never challenged this 1997 Board Action in either state of federal court." That is not accurate. In the Amended Petition Mr. DeFoy raised his Fifth Amendment argument that requiring him to admit guilt to be paroled violated his right not to incriminate himself. Mr. DeFoy's Motion to Amend Petition for Writ of Habeas Corpus stated that "Mr. DeFoy moves to amend that petition to allege that he has been denied parole for the 1973 conviction based upon laws that were not in effect at the time of his conviction in violation of the *ex post facto* clause of the United States Constitution, his failure to incriminate himself in violation of the Fifth Amendment of the United States Constitution, and the arbitrary and capricious findings of the Pennsylvania Board of Probation and parole [sic] in violation of the Fourteenth Amendment of the United States Constitution." (Dkt. # 18 p. 1) The Motion to Amend then laid out the entire history of the Board's revocation of Mr. DeFoy's parole

for his armed robbery conviction based upon his conviction of involuntary deviate sexual intercourse, corruption of minors, and statutory rape. The Motion to Amend details the three instances the Board denied Mr. DeFoy reparole on the armed robbery charge, the 1997 denial, the 1998 denial, and the 2000 denial. (Dkt # 18 p. 2-6)

In the Motion to Amend's legal discussion of the Fifth Amendment claim, it argues that the Board's requirement that Mr. DeFoy participate in a sex offender program that required him to admit his guilt to the IDSI, statutory rape, and corruption of minors charges amounted to compelled self-incrimination. To support this claim the Motion stated:

> In fact, at the time of Mr. DeFoy's first parole hearing on August 12, 1997, he had been granted a new trial by Judge Cassimatis. So, the board's first refusal to parole Mr. DeFoy was based on the fact that he refused to participate in a sex offender program that required him to admit his guilt of the IDSI, statutory rape and corruption of a minor charges, when he had been granted a new trial on the IDSI, statutory rape and corruption of a minor charges. It is hard to image [sic] a more stark example of the State coercing a person to incriminate themselves.

(Dkt # 18 p. 16) Clearly, Mr. DeFoy's Amended Petition[1] challenged the 1997 denial of parole based on the claim that the denial violated Mr. DeFoy's Fifth Amendment right to not be a witness against himself. The Commonwealth's Response to Amended Habeas Corpus Petition in no way indicates that its response is limited to the 1998 denial of reparole.

When this Court held a hearing in this case on May 5, 2003, during the discussion of the Fifth Amendment claim and how Mr. DeFoy's participation in the sex offender treatment program could result in self-incrimination, counsel for Mr. DeFoy argued, in part, "[a]nd you'll recall that at the time that he was being denied parole, he had been granted a new trial part of that time, and

---

[1] This Court granted the Motion to Amend. (Dkt # 19)

so if he would have participated in the program, made admissions, you know, getting a new trial wouldn't have been much use to him, because they would have been able to use those admissions against him. . . . . So that there was definitely–he could have, by participating, if he would have made admissions, he would have set himself up for incriminating himself for any new trial . . . ." (Dkt # 25 pp. 37-38)  Again, Mr. DeFoy was clearly arguing that the denial of reparole in 1997 violated his Fifth Amendment rights.

The discovery conducted in the case makes the point as well.  The initial exchange of discovery occurred by letter from Commonwealth counsel dated March 28, 2005.  A copy of the letter is attached as Petitioner's Exhibit FFF.  The letter accompanied "various documents related to Mr. DeFoy's most recent parole decisions involving his Robbery conviction and sentence. These documents include the Board's Parole Decision Making Guidelines Forms as well as the Department of Corrections' Review Sheets."  The Parole Decision Making Guidelines Forms (Petitioner's Exhibit AAA attached to the Motion for Summary Judgment)  and the Department of Corrections' Review Sheets for the 1997 denial of reparole (Petitioner's Exhibit A attached to the McCullough Deposition) were included in these documents. Attached as Petitioner's Exhibits GGG and HHH respectively are Requests for Admissions served by Mr. DeFoy on the Commonwealth and the Commonwealth's response.[2]  Requests 1A through 1E, 2E through 2G, and 2I through 2J deal exclusively with the 1997 denial of parole.  The Commonwealth responded to each of these Requests for Admissions on December 20, 2005.  At no time did the Commonwealth claim any surprise that Mr. DeFoy was seeking discovery regarding the 1997 denial of parole or claim that

---

[2]The voluminous documents attached to the original Requests are not being included.

discovery on that issue was inappropriate due to Mr. DeFoy's alleged failure to challenge that denial of parole.

It has been crystal clear since Mr. DeFoy filed his Motion to Amend on May 14, 2001, that he was challenging the 1997 denial of reparole. Now, almost six years later, after the case has had one trip to the United States Court of Appeals for the Third Circuit and the United States Supreme Court in which the Commonwealth sought a favorable ruling on its exhaustion claim, and following extensive discovery, the Commonwealth seeks to raise a statute of limitations defense. That affirmative defense, however, has been waived.

A statute of limitations defense is not jurisdictional and may be waived by failure to raise the defense in a timely manner. Day v. McDonough, 126 S.Ct. 1675, 1680 (2006). While the Supreme Court held in Day that district courts may raise a statute of limitations defense *sua sponte*, it made clear that district courts were not required to do so, and stressed that "the court must assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and 'determine whether the interests of justice would be better served' by addressing the merits or by dismissing the petition as time barred." Id. at 1684 (quoting Granberry v. Green, 481 U.S. 129, 136, 107 S.Ct. 1671, 1676 (1987)).

The unique facts of this case demonstrate that the interests of justice would be better served by addressing the merits of Mr. DeFoy's amended petition. The amended petition which raised this issue has been pending for five years and nine months. The amended petition, and all of Mr. DeFoy's actions since the filing of the amended petition have made it clear that he was challenging all of the denials of reparole following his convictions for IDSI, statutory rape, and corruption of a minor. Furthermore, the Commonwealth has already had one chance to litigate an affirmative

defense to this Court, the Third Circuit, and the United States Supreme Court.  It should not be given the opportunity to litigate its potential defenses piecemeal, holding one in reserve while it litigates another.  As the Third Circuit has explained:

> Affirmative defenses must be raised as early as practicable, not only to avoid prejudice, but also to promote judicial economy.  If a party has a successful affirmative defense, raising that defense as early as possible, and permitting a court to rule on it, may terminate the proceedings at that point without wasting precious legal and judicial resources.

Robinson v. Johnson, 313 F.3d 128, 137 (3rd Cir. 2002).  From the filing of the amended petition onward Mr. DeFoy has argued that denying him parole because he would not admit his guilt to an offense while he had been granted a new trial on that offense violated the Fifth Amendment.  If the Commonwealth believed that argument was time barred it should have raised that argument five and a half years ago.  See Venters v. City of Delphi, 123 F.3d 956, 967-969 (7th Cir. 1997) (defendant's failure to raise statute of limitations defense until response to plaintiff's motion for summary judgment resulted in waiver).  Allowing the Commonwealth to litigate a statute of limitations defense now would give it a second bite at the apple, having previously pursued and lost its original affirmative defense.

## MR. DeFOY'S CLAIM IS NOT MOOTED BY SUBSEQUENT PAROLE HEARINGS

The Commonwealth cites three unreported district court cases claiming that Mr. DeFoy's challenge to the 1997 denial of reparole is moot.  The Commonwealth is wrong.  The argument is based on the rationale that the remedy for any constitutionally defective parole consideration would be ordering a new review by the Board so if the Board has already done subsequent parole hearings the remedy is moot.  Gauche v. Lavan, 2005 WL 1324859, *11 n.2 (M.D. Pa. 2005).  Or, as this Court has stated the reasoning "since the remedy available under Mickens-Thomas I, for an ex post

facto violation would be a new hearing before the Board applying the appropriate standard, challenges to parole denials occurring prior to the last denial . . . are moot." <u>Bartholomew v. Pennsylvania Board of Probation and Parole</u>, 2006 WL 1669899, * 1 (W.D. Pa. 2006). This Court statement of the mootness argument contains an important qualifier that is that the remedy would be a new hearing before the Board **applying the appropriate standard.** It the Board continues to employ the same constitutionally defective analysis in each hearing, a constitutional challenge has not been mooted. Repeated violations of an inmate's constitutional rights does not moot the original constitutional violation. The Third Circuit's opinion in <u>Mickens-Thomas I</u> makes this very point. The Third Circuit's opinion discusses in detail the Board's denial of parole in 1997, 1998, and 2000 and its finding that in each of those considerations the Board violated the ex post facto clause by applying new parole standards adopted in 1996 to Mickens-Thomas' parole consideration. <u>Mickens-Thomas v. Vaughn</u>, 321 F.3d 374, 380-391 (3rd Cir. 2003). The ultimate holding in <u>Mickens-Thomas I</u> was an affirmance of the district court's order remanding the case to the Board to apply its pre-1996 parole policies to determine if Mickens-Thomas should be paroled. <u>Id</u>. at 393.

In <u>Mickens-Thomas v. Vaughn</u>, 355 F.3d 294 (3rd Cir. 2004) ("<u>Mickens-Thomas II</u>"), the Third Circuit granted unconditional habeas relief when it found that on remand the Board had refused to apply its pre-1996 parole policies and had acted vindictively in relying upon factors to deny parole that had not previously played a role in the Board's decisions. <u>Id</u>. at 309-10.

Under <u>Mickens-Thomas I</u> and <u>II</u>, the proper remedy in this case for the Board's unconstitutional conduct in denying reparole in 1997 is a remand for a hearing using the factors at issue at the time of the 1997 parole consideration and based upon the facts as they existed in 1997. To do otherwise, as recognized in <u>Mickens-Thomas II</u>, allows the Board to benefit from its prior

6

unconstitutional practices.

## AINSWORTH V. STANLEY CONFLICTS WITH McKUNE V. LILE

The Commonwealth places great reliance upon the First Circuit's holding in Ainsworth v. Stanley, 317 F.3d 1 (1st Cir. 2002) ("Ainsworth II"). The First Circuit originally held in Ainsworth v. Risley, 244 F.3d 209, 221 (1st Cir. 2001) ("Ainsworth I") that the New Hampshire sex offender program did not violate inmates' Fifth Amendment rights relying upon an analysis that employed the Supreme Court's opinion in Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254 (1987). The Supreme Court granted certiorari, vacated the First Circuit's opinion, and remanded the case to the First Circuit for reconsideration in light of McKune. 536 U.S. 953, 122 S.Ct. 2652 (2002). On remand, the First Circuit recognized that Justice O'Conner's concurring opinion constituted the opinion of the Court. Ainsworth II, 317 F.3d at 4. Having reached this conclusion, however, the First Circuit claimed to be unable to find any clear guidance from Judge O'Conner's concurring opinion and decided to simply follow its previous holding. Id. Thus, although neither the plurality opinion, concurring opinion, or dissenting opinion in McKune identified Turner v. Safley as providing the proper framework for analyzing the constitutionality of a sex offender program applied to inmates, the First Circuit stuck to its rationale from Ainsworth I and found that Turner v. Safley did provide the framework to apply when deciding the constitutionality of prison sex offender programs.

To put it mildly, the First Circuit thumbed its nose at the Supreme Court. Rather than make any attempt to apply Justice O'Conner's concurring opinion, which it acknowledged was the Supreme Court's opinion in McKune, the First Circuit insisted on applying a legal standard not adopted by any of the members of the Supreme Court. That is not an option available to an inferior

court in our hierarchical Federal court system.  Neither this Court nor the First Circuit is free to ignore pertinent Supreme Court case law.  <u>Ainsworth II</u> uses a constitutional frame work not endorsed by any member of the Supreme Court, making it of no use to this Court.

<u>CHAVEZ V. MARTINEZ IS NOT APPLICABLE TO HABEAS CORPUS CASES</u>

The Commonwealth argues that the Supreme Court's opinion in <u>Chavez v. Martinez</u>, 538 U.S. 760, 123 S.Ct. 1994 (2003) establishes that no Fifth Amendment violation occurred because no statements of Mr. DeFoy have been introduced against him in court.  This same argument was made in <u>United States v. Antelope</u>, 395 F.3d 1128, 1140-41 (9th Cir. 2005), and rejected by the Ninth Circuit.  The critical fact overlooked by the Commonwealth, and the United States in <u>Antelope</u>, is that <u>Chavez</u> was a § 1983 civil rights case seeking monetary damages.  In <u>Chavez</u> a majority of the Court found that a violation of the Fifth Amendment occurs when compelled statements are introduced against a defendant at a criminal trial.  <u>Chavez</u>, 538 U.S. at 767, 123 S.Ct. at 2001 (plurality opinion), 538 U.S. at 777, 123 S.Ct. at 2006 (concurring, creating majority).  However, both the plurality opinion and Justice Souter's concurring opinion make clear that the Court was not altering its "penalty" jurisprudence concerning the penalizing of a citizen for invoking his Fifth Amendment privilege.  538 U.S. at 772 n.3, 123 S.Ct. at 2004 (plurality opinion) ("That the privilege is a prophylactic one does not alter our penalty cases jurisprudence, which allows such privilege to be asserted prior to, and outside of, criminal proceedings."); 538 U.S. at 777-78, 123 S.Ct. 2007 (Souter, J. concurring) ("extensions of the bare guarantee may be warranted if clearly shown to be desirable means to protect the basic right against the invasive pressures of contemporary society.  In this light, we can make sense of a variety of Fifth Amendment holdings: . . . precluding threats or impositions of penalties that would undermine the right to immunity.")

8

(internal citations and quotations omitted).

Of the cases relied upon by the Commonwealth on this point, the only Third Circuit cases, Thorpe v. Grillo, 80 Fed.Appx. 215 (3rd Cir. 2003), and Renda v. King, 347 F.3d 550 (3rd Cir. 2003), were § 1983 cases, not habeas petitions. Burkholder v. Wolfe, 2007 WL 90427 (M.D. Pa. 2007), Folk v. Attorney General of Commonwealth of Pennsylvania, 425 F.Supp.2d 663, 667 (W.D. Pa. 2006), and Sullivan v. Pennsylvania Board of Probation and Parole, 2006 WL 1050526 (W.D. Pa. 2006), are habeas cases that rely upon Chavez to find no Fifth Amendment violation because no compelled statement was used against the petitioners in a criminal case. None of these cases, however, discusses the fact that all six of the Justices which formed the majority in Chavez regarding the Fifth Amendment issue agreed that the Chavez opinion did not alter the Court's prior penalty cases jurisprudence but merely held that monetary damages could not be awarded unless a "core" Fifth Amendment violation occurred. The complete lack of any discussion of this fact makes these cases worthless. The Commonwealth's position, and that adopted by the district court cases discussed above, requires this Court to conclude that the Supreme Court overturned all of its penalty cases despite the fact that the Court plurality and Justice Souter's concurring opinion expressly state the opposite. This, lower courts are not allowed to do. Rodriguez de Quijas v. Shearson/American Express Inc., 490 U.S. 477, 484, 109 S.Ct. 1917 (1989) ("If a preceding of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its won decisions."); Agostini v. Felton, 521 U.S. 203, 237, 117 S.Ct. 1997 (1997) ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent.").

## OHIO ADULT PAROLE AUTHORITY V. WOODARD DOES NOT ASSIST THE COMMONWEALTH

The Commonwealth argues that the Supreme Court's opinion in Ohio Adult Parole Authority v. Woodard, 523 U.S. 272, 118 S.Ct. 1244 (1998), establishes that there was no compulsion in this case. But Justice O'Connor rejected this very argument in her opinion for the Court in McKune. In that opinion Justice O'Connor stated

> Although I do not think the penalties respondent face were sufficiently serious to compel his testimony, I do not agree with the suggestion in the plurality opinion that these penalties could permissibly rise to the level of those in cases like McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971) (holding that statements made in the mitigation phase of a capital sentencing hearing may be used as evidence of guilt), Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (holding that plea bargaining does not violate the Fifth Amendment privilege against self-incrimination), and Ohio Adult Parole Authority v. Woodard, 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998) (holding that there is no right to silence at a clemence interview). See ante, at 2028-2030. The penalties potentially faced in these cases–longer incarceration and execution–are far greater than those we have already held to constitute unconstitutional compulsion in the penalty cases.

McKune v. Lile, 536 U.S. 24, 52, 122 S.Ct. 2017, 2034 (2002) (O'Connor, J. concurring).

Justice O'Connor's specific rejection of Woodard as the guidepost for establishing a Fifth Amendment violation eviscerates the Commonwealth's reliance on that case. The Third Circuit's unpublished opinion in Forsyth v. Walters, 38 Fed.Appx. 734 (3rd Cir. 2002), relied upon by the Commonwealth, was decided on May 3, 2002, about a month prior to the Supreme Court's decision in McKune. Accordingly, what little persuasiveness Forsyth may have had as an unpublished opinion was eliminated by McKune.

## PEOPLE V. BERCUME IS NOT APPLICABLE

The Commonwealth relies in part on People v. Bercume, 6 Misc.3d 420, 789 N.Y.S.2d 664

(N.Y.Sup. 2004). But that case has no applicability here because Mr. DeFoy invoked his right to remain silent. <u>Bercume</u> is a case that deals with a situation in which the defendant does not invoke his right to remain silent but rather answers questions and then later argues that his answers should not be admissible against him because they were coerced. Indeed, the quote from <u>Bercume</u> that appears on page 22 of the Commonwealth's response explains in its first two sentences the difference between the situation in which the individual invokes his right to remain silent and the situation in which the individual does not invoke the right to remain silent but later tries to suppress his statements as being coerced. Mr. DeFoy's case involves the former situation, and <u>Bercume</u> involves the latter. Accordingly, <u>Becume</u> is of no help to the Commonwealth.

### DENYING MR. DeFOY PAROLE BECAUSE HE WOULD NOT INCRIMINATE HIMSELF ON PENDING CHARGES VIOLATED HIS FIFTH AMENDMENT RIGHT <u>NOT TO BE A WITNESS AGAINST HIMSELF</u>

Nothing in the Commonwealth's response alters the fact that when the Board considered Mr. DeFoy for reparole in June 1997, through a fair criminal process, his convictions and sentence for the IDSI, statutory rape, and corruption of a minor had been vacated and a new trial ordered. And, at the time of his interview with Mrs. Cook, Mr. DeFoy had been granted bail on the pending charges. Refusing reparole on the armed robbery sentence at this point due to Mr. DeFoy's refusal to admit his guilt to the IDSI, statutory rape, and corruptions of a minor charges went well beyond the criminal process into a stark attempt by the Commonwealth to compel testimony. In essence, the Commonwealth demanded that Mr. DeFoy admit his guilt to a pending charge as a condition of being paroled on an unrelated charge. That is the quintessential government attempt to compel testimony. <u>Antelope</u>, 395 F.3d at 1137-38 (revoking supervised release because defendant convicted of possessing child pornography would not admit to committing other crimes violated

Fifth Amendment).

Nothing in the Commonwealth's response alters the fact that the only basis for refusing Mr. DeFoy reparole in 1997 was his refusal to participate in Sex Offender Treatment. The Parole Decision Making Guidelines form recommended release, the Department of Corrections recommended release, and the only factors listed as countervailing the guidelines was a negative psychiatric report, which stated Mr. DeFoy had no history of mental illness or treatment but needed to participate in Sex Offender Treatment, an unexplained, unfavorable recommendation from Board staff, the refusal to participate in Sex Offender Treatment, and a negative attitude. (Petitioner's Exhibit AAA p. 3)

Justice O'Connor's concurring opinion in McKune makes clear that when the government attempts to compel testimony, "any penalty that is capable of compelling a person to be a witness against himself is illegitimate." McKune, 536 U.S. at 53, 122 S.Ct. 2017. Justice O'Conner's opinion and Justice Steven's opinion make clear that increased incarceration, or the threat thereof, is a penalty that is capable of compelling a person to be a witness against himself.

Justice O'Conner's insistence that an inmate accept the consequences of a conviction resulting from a fair criminal process applies equally to the Commonwealth. Mr. DeFoy obtained an order vacating his convictions and granting a new trial through a fair criminal process created by the Commonwealth. The Commonwealth, through the Board, was not free to ignore the results of this fair criminal process at its whim. At the time the Board considered Mr. DeFoy for reparole in July 1997, the Board knew that Mr. DeFoy had been granted a new trial on the IDSI, statutory rape, and corruption of a minor charges, and yet it refused to reparole Mr. DeFoy, in contradiction to its own guidelines, because Mr. DeFoy would not admit he was guilty of the very offenses for

which he had been granted a new trial. These actions went well beyond the criminal process, indeed ignored the criminal process, and appear, starkly, as a government attempt to compel Mr. DeFoy to be a witness against himself.

The proper remedy for the Board's violation of Mr. DeFoy's Fifth Amendment rights is to enter an order reparoling Mr. DeFoy effective August 12, 1997, the date the Board issued its ruling on Mr. DeFoy's reparole consideration. Mickens-Thomas v. Vaughn, 355 F.3d 294, 309 (3rd Cir. 2004). At the very least, the Board must be ordered to conduct a new hearing considering the facts as they stood at the time of the 1997 reparole consideration and make a ruling based upon those facts that does not include punishing Mr. DeFoy from legitimately invoking his right to not be a witness against himself.

WHEREFORE, petitioner, Robert Lee DeFoy, respectfully requests that this Honorable Court issue a writ of habeas corpus ordering the Pennsylvania Department of Corrections to release Mr. DeFoy from imprisonment on his armed robbery and larceny sentence effective August 12, 1997.

    Respectfully submitted,
/s/ Thomas W. Patton
Thomas W. Patton
Assistant Federal Public Defender
P.A. I.D. No. 88653