IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT LEE DeFOY,<br>       Petitioner, | )<br>)<br>) | |
| v. | ) | C.A. No. 00-110 Erie |
| JOHN M. McCULLOUGH, et al.<br>       Respondents. | )<br>)<br>) | District Judge McLaughlin<br>Magistrate Judge Baxter |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is respectfully recommended that Petitioner's Motion for Summary Judgment [Document # 48] be denied, that the Petition for Writ of Habeas Corpus be dismissed, and that a certificate of appealability be denied.

**II.    REPORT**

    **A.     Relevant Procedural and Factual History**

On April 12, 2000, Petitioner filed this *habeas corpus* petition, *pro se*, pursuant to 28 U.S.C. § 2254, alleging that he is being detained in violation of his Constitutional rights. [Document # 1]. Petitioner is a state prisoner incarcerated at the State Correctional Institution at Houtzdale, Pennsylvania. He was convicted of Armed Robbery and Larceny in the Erie County Court of Common Please, and was sentenced to 10 to 20 years imprisonment on January 3, 1973. (Document # 1, Exhibit A at p. 2). He was released on parole on April 27, 1983, but was ordered to serve 18 months backtime later that year as a technical parole violator. (Document # 1, Exhibit B). He was re-paroled on September 17, 1985. (Document #1, Exhibit C).

On July 16, 1992, Petitioner was convicted of Involuntary Deviate Sexual Intercourse, Statutory Rape, and Corruption of Minors, in the Court of Common Pleas of York County, Pennsylvania, and was sentenced on January 25, 1993, to serve 6 ½ to 13 years imprisonment on the 1992 convictions. (Document # 1, Exhibit E). On November 10, 1992, the Pennsylvania Board of Probation & Parole ("PBPP") revoked his parole on the robbery and larceny sentence of 1973 and

ordered Petitioner to serve 40 months of backtime and participate in sex offender treatment. (Document # 1, Exhibit F).

On March 27, 1997, Petitioner's 1992 conviction was vacated by the York County Court, and a new trial was ordered. (Document # 1, Exhibit I). On August 14, 1997, the PBPP issued an Order denying Petitioner parole on his 1973 sentence due, in part, to his failure to participate in the sex offender treatment program. (Document # 1, Exhibit K). On September 3, 1997, the Pennsylvania Superior Court reversed the York County Court's grant of a new trial, and, on May 15, 1998, the Pennsylvania Supreme Court denied Petitioner's Petition for Allowance of Appeal. (Document # 18, Exhibits EE and FF).

On July 29, 1998, the PBPP again denied Petitioner parole on his 1973 sentence, indicating that Petitioner would be reviewed in or after June 2000. (Document # 1, Exhibit N). At that time, the PBPP indicated that it would consider whether Petitioner had successfully completed a sex offender treatment program. (Id.). Petitioner filed a "Nunc Pro Tunc Petition for Review" in the Commonwealth Court of Pennsylvania on October 27, 1998, in which he raised the following objections:

1. He was not timely given notice of the denial of parole;

2. He should not have been required to complete the sexual education program when his current parole was not for a sexual offense;

3. Petitioner is being punished twice for the same offense;

4. The reasons given for denying parole are unsupported;

5. The current sentence is beyond the presumptive range;

6. The Board failed to give individualized review, and the denial reflects a new Board policy of denying parole to all violent offenders;

7. The sentence has now become cruel and unusual punishment;

8. The lack of specific reasons for the Board's order denies petitioner due process;

9. The Board abused its discretion.

(Document #1, Exhibit M). The Commonwealth Court denied the petition on December 23, 1998, on the basis that "denial of parole is not appealable." (Id.). Petitioner's subsequent petition for allowance of appeal was denied by the Supreme Court of Pennsylvania on April 14, 1999.

Petitioner thereafter filed the instant petition and asserted that because he had not been properly credited for time served, he had served a sentence beyond the statutory maximum for his 1973 conviction. The Commonwealth responded to the petition, arguing that Petitioner's sentence had been properly calculated (Document # 11). Petitioner filed a reply (Document # 12), the Commonwealth filed an amended response (Document # 13), and Petitioner responded again with additional materials for the record (Document ## 14 and 15). All of these filings argued the sentence calculation issue.

On January 23, 2001, this Court appointed the Assistant Federal Public Defender to represent Petitioner [Document # 16], and an amended petition was filed [Document # 18]. In his amended petition, Petitioner raised three additional claims: (1) an ex post facto violation occurred when the PBPP required him to participate in a sex offender program as a condition of obtaining parole for his 1973 armed robbery and larceny convictions; (2) the requirement that Petitioner participate in a sex offender program violates his right to due process; and (3) Petitioner was denied parole as a punishment for exercising his right against coerced self-incrimination. The Commonwealth responded to the amended petition [Document # 21], and Petitioner, through counsel, filed a reply. [Document # 22]. A hearing was held on April 29, 2003, at which counsel presented argument to the Court.

After the hearing, counsel for the Commonwealth by letter informed the Court that the PBPP had issued a decision on May 8, 2003, noting that Petitioner's maximum date on his 1973 sentence was changed from June 7, 2001, to August 7, 2000. It was noted that this change did not affect the minimum and maximum terms of Petitioner's later conviction, for which he is still incarcerated.

On July 1, 2003, this Court issued a Report and Recommendation recommending that Petitioner's initial claim be dismissed as moot, and that the three new claims contained in Petitioner's amended petition be dismissed for failure to exhaust state court remedies. With regard

3

to the exhaustion issue, in particular, this Court determined that, based upon precedent existing at the time, it appeared that Petitioner had an available state court remedy in the form of a petition for writ of mandamus addressed to the Commonwealth Court of Pennsylvania.  Due to the uncertainty regarding this issue, however, this Court also recommended that a certificate of appealability be granted on the question of "whether constitutional claims concerning the denial of parole in Pennsylvania, other than those premised upon the *ex post facto* Clause, must be presented to the state courts in order to satisfy the exhaustion requirement. [Document # 26].  By Order dated July 25, 2003, District Judge Sean J. McLaughlin adopted this Court's Report and Recommendation, dismissed the Petition, and granted the recommended certificate of appealability. [Document # 28].

Petitioner appealed District Judge McLaughlin's Order to the Third Circuit Court of Appeals, by Notice of Appeal dated August 18, 2003. [Document # 29].  On February 4, 2005, the Third Circuit Court filed its Opinion and Order, holding that "claims of constitutional violations in the denial of parole in Pennsylvania need not be presented to the state courts via a petition for writ of mandamus in order to satisfy the requirement of exhaustion." DeFoy v. McCullough, 393 F.3d 439, 445 (3d Cir. 2005).  Accordingly, the Third Circuit reversed District Judge McLaughlin's Order dismissing Petitioner's claims as unexhausted, and remanded this case for further proceedings to address the merits of the Petition.

After the parties conducted discovery, Petitioner filed a Motion for Summary Judgment [Document # 48], focusing on the denial of his parole in August 1997 based upon his failure to complete sex offender treatment.  In Petitioner's view, the August 1997 parole denial represents the strongest argument that his Fifth Amendment rights were violated because this denial occurred between the time that he was granted a new trial in March 1997 and the Superior Court's reversal of that decision in September 1997.  In other words, in the August 1997 denial, the Parole Board refused to grant him parole based on his failure to participate in a sex offender program that required him to admit his guilt to the sex offenses for which he had been granted a new trial.  Respondents have filed a response to Petitioner's motion, claiming, in part, that Petitioner's challenge to the denial of parole in August 1997 is barred by the applicable statute of limitations. [Document # 49].

Petitioner has filed a reply to Respondents' response, contending, among other things, that Respondents waived any statute of limitations defense they may have had. [Document # 51].

The Petition and Petitioner's motion are now ripe for consideration.

### B.     Discussion
#### 1.     Statute of Limitations

Respondents argue that Petitioner's challenge to the PBPP's denial of parole in August 1997 is barred by the applicable one year statute of limitations. In response, Petitioner contends that Respondents effectively waived their right to raise a statute of limitations defense at this juncture because they failed to assert the defense at any time prior to the filing of their brief in opposition to Petitioner's pending motion for summary judgment on February 5, 2007.

In particular, Petitioner argues that "it has been crystal clear since [he] filed his Motion to Amend on May 14, 2001, that he was challenging the 1997 denial of parole." (Document # 51, Petitioner's Reply Brief, at p. 5). This overstates the case. Although, in his Amended Complaint, Petitioner did make reference to the August 1997 parole denial, which is now the only denial at issue in his pending summary judgment motion, the gist of his claim was the generalized assertion that he "ha[d] been denied parole as a punishment for exercising his right against coerced self-incrimination..." (Id. at pp. 16-18). This assertion encompassed the 1997, 1998, and 2000 parole denials and was met by Respondents' exhaustion defense, which successfully resulted in the dismissal and closure of this case on July 25, 2003. (See Document # 28). It was only after this case was re-opened, discovery was conducted, and the pending motion for summary judgment was filed on January 9, 2007, that the August 1997 parole denial became the focal point of Petitioner's constitutional attack. In direct response to this more focused attack, Respondents promptly raised their statute of limitations defense. Thus, the Court finds that Respondents had not waived their right to raise a statute of limitations defense prior to this stage in the proceeding, and the Court will consider the merits of this defense.

The applicable statute of limitations is set forth at 28 U.S.C. § 2244(d), which reads as follows:

> (d) (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of--
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> © the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

A federal court must undertake a three-part inquiry in analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year limitations period. First, the court must determine the date that the petitioner's direct review concluded and the judgment became "final" for purposes of triggering the one-year period under § 2244(d)(1)(A). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to section 2244(d)(2). Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented.

Here, Petitioner is not seeking review of his underlying conviction but, instead, seeks review of administrative decisions denying him parole. The one-year limitations period normally runs from the expiration of the time to seek direct review. 28 U.S.C. §2244(d)(1)(A). Pennsylvania does not, however, provide for direct review of parole decisions. Defoy, supra; Coady v. Vaughn, 770 A.2d

287, 289 (Pa. 2001). As a result, the limitations period begins to run from the date of the Board's decision denying parole. Barnhart v. Kyler, 318 F.Supp.2d 250, 262 note 11(M.D.Pa. 2004). In order to present a timely challenge to the August 1997 parole denial, therefore, Petitioner would have needed to file the instant petition within one year of the Board's decision, or by August 14, 1998. This he did not do. Furthermore, nothing in the record indicates that Petitioner is entitled to take advantage of any of the exceptions to the one-year limitations period. Specifically, he has failed to show that his claims are based on a constitutional right newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; nor has he shown that his claims are based on a factual predicate that could not have been discovered through the exercise of due diligence. 28 U.S.C. §2254(d)(1)(C-D). Finally, there is no indication that the doctrine of equitable tolling should be applied here.[1] Consequently, Petitioner is barred from challenging the August 1997 parole denial.

### 2. Mootness

As an alternative to their statute of limitations argument, Respondents contend that, because the appropriate remedy in this case would be a new hearing before the PBPP, all challenges to prior parole denials are moot. In support of this contention, Respondents cite, *inter alia*, two decisions that were recently rendered by this Court - Bartholomew v. Pennsylvania Board of Probation and Parole, 2006 WL 1669899 (W.D.Pa. June 9, 2006) and McCole v. Pennsylvania Board of Probation and Parole, 2006 WL 2792212 (W.D.Pa. Sept. 26, 2006). In each of these cases, the petitioner raised an *ex post facto* claim challenging multiple parole denials. Before considering the merits of these

---

[1] The one-year limitation in §2244(d) is a statute of limitations, not a jurisdictional bar, and may be equitably tolled. Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 618 (3d Cir. 1998). "Equitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims. Mere excusable neglect is not sufficient." Id. at 618-19 (internal citations, quotations, and punctuation omitted). Petitioner does not assert that any extraordinary circumstances beyond his control prevented him from filing a timely habeas petition concerning the August 1997 parole denial.

claims, this Court held in each case that "since the remedy available under *Mickens-Thomas I* for an ex post facto violation would be a new hearing before the Board applying the appropriate standard, challenges to parole denials occurring prior to the last denial ... are moot." Bartholomew at * 1; McCole at * 2 (citations omitted).[2]  Since the appropriate relief in this case would also be a new hearing before the PBPP, and since the last parole denial occurred in October 2000, Petitioner's challenge to the August 1997 parole denial, as well as the parole denial in July 1998, is moot.

### 3.     Merits

Notwithstanding the foregoing, assuming, *arguendo*, that Petitioner's challenge to the parole denials in August 1997 and July 1998 are not moot and/or barred by the applicable statute of limitations, Petitioner's Fifth Amendment claim still fails on the merits.

Petitioner claims that his Fifth Amendment right against self-incrimination has been violated because, as a prerequisite to obtaining consideration for parole, he was required to complete a sex offender treatment program that would have compelled him to admit to committing sex offenses of which he denies guilt.  Petitioner alleges that his refusal to participate in the sex offender treatment program was the primary reason given for the parole denials in August 1997, July 1998, and October 2000.

The Fifth Amendment right against self incrimination is violated when compelled statements are used against a person in a criminal case. Chavez v. Martinez, 538 U.S. 760, 766-68, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003) (plurality opinion); Renda v. King, 347 F.3d 550, 559 (3d Cir.2003). Thus, "[t]he constitutional privilege against self-incrimination has two primary interrelated facets: the Government may not use compulsion to elicit self-incriminating statements, and the Government may not permit the use in a criminal trial of self-incriminating statements elicited by compulsion." Murphy v. Waterfront Comm'n, 378 U.S. 52, 57 n. 6 (1964).

---

[2] This Court's reference to "Mickens-Thomas I" in Bartholomew and McCole referred to the Third Circuit Court's decision in Mickens-Thomas v. Vaughn, 321 F.3d 374 (3d Cir. 2003).

### a.     Compulsion

In McKune v. Lile, 536 U.S. 24, 41, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002), the court considered a similar claim concerning a prison treatment program that required participating prisoners to disclose prior sexual misconduct, whether charged or uncharged. In determining whether "compulsion" had occurred, the plurality opinion focused on the consequences suffered by a prisoner who refuses to make the required disclosures. In McKune, the consequences included a change in the prisoner's security status, transfer from a minimum security unit to a maximum security unit, and a change from a two-person cell to a four person cell in a more dangerous area of the prison. 536 U.S. at 30-31. The Court concluded that the consequences to the prisoner, while adverse, were not sufficient to constitute compulsion. In reaching this conclusion, the Court cited Ohio Adult Parole Authority v. Woodward, 523 U.S. 272, 286 (1998), where the Court found no unconstitutional compulsion when a death row inmate was made to choose between incriminating himself at his clemency interview or having adverse inferences drawn from his silence, and Murphy, supra, where a parolee was asked about uncharged criminal conduct and confessed out of fear that his refusal to answer would have resulted in the revocation of parole and 16 months incarceration.

In this case, the Court recognizes that Petitioner's refusal to participate in the sex offender treatment program adversely influenced the PBPP's decisions to deny him parole in 1998, 1999, and 2000. In fact, it may even be assumed, for the sake of argument, that Petitioner's failure to participate in the sex offender program directly resulted in the denial of parole, as Petitioner contends. However, if the threat of additional incarceration (Murphy) or carrying out a death sentence (Woodward) is not sufficient to establish "compulsion" for purposes of the Fifth Amendment, then the consequence suffered by Petitioner here, which amounted to the denial of parole, also does not rise to the level of compulsion. See Thorpe v. Grillo, 80 Fed. Appx. 215, 220 (3d Cir. 2003)(No Fifth Amendment violation where prisoner's "refusal to admit his guilt and the resulting inability to participate in the treatment program did not extend his term of incarceration or automatically deprive him of consideration for parole."); Folk v. Attorney General of the Commonwealth of Pa., 425 F.Supp.2d 663 (W.D.Pa. 2006) (Gibson, J.)(no compulsion for purposes of Fifth Amendment where consequence of failing to participate were decreased chance of parole);

Wolfe v. Pennsylvania Department of Corrections, 334 F.Supp.2d 762, 773 (E.D.Pa. 2004) (No Fifth Amendment violation where participation in program was voluntary and consequences were not severe enough to be compulsion); Boddie v. New York State Division of Parole, 288 F.Supp.2d 431, 441-42 (S.D.N.Y.2003) (reaching same conclusion under New York's parole statute).

Simply stated, Petitioner was "not entitled to parole, just to consideration of parole." Thorpe, 80 Fed. Appx. At 220.  It is beyond dispute that Petitioner received consideration for parole in 1997, 1998, and 2000.  Furthermore, denial of parole did not extend the term of Petitioner's incarceration, it simply required him to serve his maximum sentence.  Thus, Petitioner's argument that his situation falls within the "'penalty' jurisprudence concerning the penalizing of a citizen for invoking his Fifth Amendment privilege" is misplaced. (Document # 51 at p. 8).  See, e.g., Randall v. Wilson, 2006 WL 3196539 at * 8 (W.D.Pa. 2006)("Petitioner is serving a lawfully-imposed sentence; if parole is granted, he would obtain a benefit; if it is denied, he is in no worse position than he was before"); Doe v. Sauer, 186 F.3d 903, 906 (8th Cir. 1999)("Notwithstanding the prohibition on the state of penalizing a person who invokes his Fifth Amendment right, 'prison officials may constitutionally deny benefits to a prisoner who, by invoking his privilege against self-incrimination, refuses to make statements necessary for his rehabilitation, as long as their denial is based on the prisoner's refusal to participate in his rehabilitation and not his invocation of his privilege'")(citation omitted).

Equally misplaced is Petitioner's reliance on United States v. Antelope, 395 F.3d 1128 (9th Cir. 2005), to buttress his argument that this case falls within the so-called "penalty" jurisprudence. In Antelope, the Ninth Circuit Court held that the "privilege against self-incrimination was violated because [the petitioner] was sentenced to a longer prison term for refusing to comply with" Montana's Sexual Abuse Behavior Evaluation and Recovery program ("SABER"), which required him to complete a sexual history autobiography and undergo a polygraph verifying his full sexual history.  395 F.3d at 1138.  Unlike the present case, Antelope involved a petitioner who had his supervised release revoked and received an additional sentence of ten months in prison as a result of his refusal to comply with SABER's disclosure requirements.  Thus, the holding in Antelope resulted directly from the fact that the petitioner was penalized for invoking his Fifth Amendment privilege by having his conditional liberty revoked and receiving an additional prison term.  No such

"penalty" was assessed against the Petitioner in this case as a result of his failure to participate in the sex offender program.

Finally, in his pending motion, Petitioner has made a concerted effort to focus attention on the August 1997 parole denial because, at the time he was considered for parole in July 1997, he had been granted bail and a new trial on the sex offense charges for which he was originally required to complete the sex offender program. Thus, Petitioner contends that "[r]efusing reparole on [his remaining] armed robbery sentence at this point due to [Petitioner's] refusal to admit guilt to the [sex offense charges] went well beyond the criminal process into a stark attempt by the Commonwealth to compel testimony." (Document # 48 at p. 16; Document # 51 at p. 11). Petitioner goes on to argue that, "[i]n essence, the Commonwealth demanded that [Petitioner] admit his guilt to a pending charge as a condition of being paroled on an unrelated charge. That is the quintessential government attempt to compel testimony." (Document # 48 at p. 16).  This contention is misguided. It bears repeating that the sole consequence of Petitioner's refusal to participate in the sex offender treatment program was the denial of parole, which, as discussed above, does not rise to the level of a "penalty" in violation of the Fifth Amendment. Thus, there was nothing compelling Petitioner to admit his guilt to the pending sex offense charges.

For the foregoing reasons, this Court finds that Petitioner has failed to demonstrate that the Government used compulsion to elicit self-incriminating statements in violation of his Fifth Amendment rights.

### b.     Use in a Criminal Proceeding

Even if Petitioner could prove that he was somehow compelled to make self-incriminating statements by the requirement that he complete sex offender treatment, he cannot show that he was compelled to be a witness against himself **in a criminal proceeding**. See United States v. Patane, 42 U.S. 630, 637 (2004)("the core protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself *at trial*")(emphasis added); Withrow v. Williams, 507 U.S. 680, 691 (1993)(characterizing the Fifth Amendment privilege against self-incrimination as a "'fundamental *trial* right'")(citation omitted)(emphasis in original).

In this case, Petitioner never provided any incriminating statements, and neither his silence nor any incriminating statements were ever used against him at trial. In fact, the grant of a new trial on Petitioner's sex offense charges was ultimately overturned on appeal. Thus, Petitioner's fear of self-incrimination never came to fruition, and was unwarranted in any case. Indeed, if an admission was truly compelled from Petitioner, as he is required to show in order to establish the first prong of a Fifth Amendment violation, such an admission would be "inadmissible in a subsequent trial for a crime other than that for which he has been convicted." Minnesota v. Murphy, 465 U.S. 420, 426 (1984). Thus, not only was there no incriminating statement used against Petitioner in a criminal proceeding, there was no reasonable expectation that such a statement could be used against him, as any admission obtained by compulsion would be suppressed at trial.

Based on the foregoing, it is beyond dispute that no compelled statement was used against Petitioner in a criminal proceeding, as he is required to show in order to establish a Fifth Amendment violation.

### C.   Certificate of Appealability.

Section 102 of AEDPA, 28 U.S.C. § 2253©, codifies standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." In the case at bar, Petitioner has failed to demonstrate that he has been denied any of his constitutional rights. Accordingly, a certificate of appealability should be denied.

## III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that Petitioner's Motion for Summary Judgment [Document # 48] be denied, that the Petition for Writ of Habeas Corpus be dismissed, and that a certificate of appealability be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and ©, and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the

date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.  See e.g., Nara v. Frank, ___ F.3d ___, 2007 WL 1321929 (3d Cir. May 8, 2007).

                                      /s/Susan Paradise Baxter
                                      SUSAN PARADISE BAXTER
                                      Chief U.S. Magistrate Judge

Dated: September 5, 2007

cc:      The Honorable Sean J. McLaughlin
         United States District Judge